UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,

                Plaintiff,

        v.                                       Civil No. 16-cv-4922-JGK

HOME HEALTH CARE SERVICES OF NEW YORK INC.
d/b/a "HCS Healthcare," AGNES SHEMIA and JOHN
DOES #1 – 10.

                Defendants.
───────────────────────────────────────

# MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
# MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE

**HODGSON RUSS LLP**
*Attorneys for Defendants*
Paul I. Perlman
Peter C. Godfrey
Sarah N. Miller
The Guaranty Building
140 Pearl Street
Buffalo, New York  14202
Telephone:  (716) 856-4000

# TABLE OF CONTENTS

Page No.

**Summary of Facts** ...........................................................................................2

    A.    HCS and Its Home Health Aide Employees ...............................2

    B.    Each Aide's Job Differs Depending on the
Patient's Care Plan and Living Environment................................3

    C.    HCS's Policies and Procedures.................................................4

**Argument**........................................................................................................5

    I.    HYPOLITE HAS NOT MADE ANY SHOWING THAT SHE IS "SIMILARLY SITUATED" TO AIDES WITH RESPECT TO WHETHER THE COMPANIONSHIP SERVICES EXEMPTION APPLIED PRIOR TO OCTOBER 13, 2015 .........................................................................7

    A.    The Companionship Exemption Prior to October 13, 2015 ......................8

    B.    Plaintiff Makes No Showing That Aides Are "Similarly Situated" Based On Exemption Status, Which Is a Lawful Policy....................................10

    C.    Resolution of Aides' Overtime Claims Would Require Highly Individualized Determinations Rendering Conditional Certification Inappropriate ...............................................................................14

    D.    HCS Has Paid Its Aides Overtime From October 13, 2015 to the Present .............................................................18

    II.    HYPOLITE MAKES NO SHOWING THAT AIDES ARE "SIMILARLY SITUATED" BASED ON AN ILLEGAL POLICY REGARDING COMPENSATION FOR SLEEP AND MEAL TIME ........................................18

    A.    Hypolite Fails To Demonstrate Any Unlawful Policy ...........................18

    B.    Hypolite Fails to Establish the Requisite Factual Nexus........................20

    C.    Resolution of Hypolite's Sleep and Meal Compensation Claim Requires Highly-Individualized Determinations Rendering Conditional Certification Inappropriate ...............................................................................22

    III.    PLAINTIFF HAS FAILED TO MEET HER BURDEN WITH RESPECT TO HER TRAVEL TIME CLAIM...........................................................22

    IV.    IF A COLLECTIVE IS CONDITIONALLY CERTIFIED, THE PARTIES HAVE AGREED ON A FORM OF NOTICE AND ON A CONSENT FORM ..25

**Conclusion** ....................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adair v. Wisconsin Bell, Inc.*,
   2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008).....................................................5

*Ali v. New York City Health and Hosps. Corp.*,
   2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013)...........................................6, 10, 21

*Barfield v. New York City Health & Hosps. Corp.*,
   2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 17, 2005)...................................................21

*Cowell v. Utopia Home Care, Inc.*,
   2016 U.S. Dist. LEXIS 104495 (E.D.N.Y. Aug. 8, 2016)  ..............6, 9, 13, 14, 15, 16, 17, 22

*Davis v. Abercrombie & Fitch Co.*,
   2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct. 22, 2008).......................................................7

*Eng-Hatcher v. Sprint Nextel Corp.*,
   2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009)...................................................13

*Fernandez v. Wells Fargo Bank*,
   2013 U.S. Dist. LEXIS 124692 (S.D.N.Y. Aug. 28, 2013)...................................................21

*Flores v. Osaka Health Spa, Inc.*,
   2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006)....................................................21

*Fraticelli v. MSG Holdings, L.P.*,
   2014 U.S. Dist. LEXIS 63167 (S.D.N.Y. May 7, 2014) ...................................................7, 21

*George v. Companions of Ashland, Inc.*,
   2016 U.S. Dist. LEXIS 120706 (N.D. Ohio Sept. 7, 2016)...................................................16

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2016) ...................................................................................8, 11, 12

*Guillen v. Marshalls of MA, Inc.*,
   2012 U.S. Dist. LEXIS 91639 (S.D.N.Y. June 30, 2012) .................................................11, 13

*Hoffmann-LaRoche, Inc. v. Sperling*,
   493 U.S. 165 (1989) .................................................................................................5, 17

*Home Care Ass'n of Am. v. Weil*,
   799 F.3d 1084 (D.C. Cir. 2015) ....................................................................................9

*Jasper v. Home Health Connection, Inc.*,
   2016 U.S. Dist. LEXIS 71616 (S.D. Ohio June 1, 2016) ................................................. 16, 17

*Jenkins v. TJX Cos., Inc.*,
   853 F. Supp. 2d 317 (E.D.N.Y. 2012) ....................................................................... 6, 10, 13

*Korenblum v. Citigroup, Inc.*,
   2016 U.S. Dist. LEXIS 94220 (S.D.N.Y. July 19, 2016) .................................................. 5, 6

*Marmolejos v. Lae Tires & Rims, Inc.*,
   2013 U.S. Dist. LEXIS 176438 (S.D.N.Y. May 1, 2013) ..................................................... 21

*Martin v. Sprint/United Mgmt. Co.*,
   2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016) .......................................................... 25

*Morgan v. Family Dollar Stores*,
   551 F.3d 1233 (11th Cir. 2008) ............................................................................................ 6

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ............................................................................... 5, 6, 8, 20

*Romero v. H.B. Auto Grp., Inc.*,
   2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) ......................................................... 7

*Rudd v. T.L. Cannon Corp.*,
   2011 U.S. Dist. LEXIS 21061 (S.D.N.Y. Jan. 4, 2011) ......................................................... 5

*Sanchez v. JMP Ventures, L.L.C.*,
   2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. Jan. 27, 2014) ..................................................... 21

*Severin v. Project OHR, Inc.*,
   2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012) .................................. 6, 9, 14, 15, 16

*Torres v. Nature Coast Home Care LLC*,
   2016 U.S. Dist. LEXIS 139745 (M.D. Fla. Oct. 7, 2016) .................................................... 17

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*,
   2009 U.S. Dist. LEXIS 33622 (E.D.N.Y. April 22, 2009) ..................................................... 9

*Warman v. Am. Nat'l Standards Inst.*,
   2016 U.S. Dist. LEXIS 85521 (S.D.N.Y. June 27, 2016) ................................................. 7, 20

*Winfield v. Citibank, N.A.*,
   843 F. Supp. 2d 397 (S.D.N.Y. 2012) ................................................................................ 22

**State Cases**

*Andryeyeva v. New York Health Care, Inc.*,
   45 Misc. 3d 829 (N.Y. Sup. Ct. Kings Cnty. 2014) ............................................................ 17

**Federal Statutes**

29 U.S.C. 213(a)(15) .................................................................................................8

29 U.S.C. § 216(b) ................................................................................................5, 10

FLSA ............................................................................................1, 2, 5, 7, 8, 10, 14, 17

FLSA § 207 ..........................................................................................................7

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................7, 16, 17

**Regulations**

29 C.F.R. § 531.35 ..................................................................................................24

29 C.F.R. § 552.6 (1974)........................................................................8, 9, 14, 15, 23

29 C.F.R. § 785.22 .............................................................................................18, 19

Defendants Home Health Care Services of New York Inc. d/b/a "HCS Healthcare," and Agnes Shemia (collectively, "HCS") submit this Memorandum of Law in opposition to the "Motion For Approval of Collective Action Notice" submitted by the named plaintiff Allison Hypolite (the "plaintiff" or "Hypolite").

Hypolite's motion seeks an order permitting this case to proceed as a collective action on behalf of "all current and former employees of [HCS] (a) who are or were formerly employed by [HCS] as home health aides at any time since June 24, 2010 to the entry of judgment in this case . . ., (b) who were non-exempt employees within the meaning of the FLSA, who were not paid minimum wages and/or overtime wages . . . for hours worked in excess of forty . . . per workweek . . . ."  Pl. Br. at 2; *see* Declaration of Paul I. Perlman, dated November 23, 2016 ("Perlman Dec."), Ex. 4 (Amended Complaint ("AC")) ¶ 6 at page 4.[1]  Plaintiff's declaration is the only support for her motion.  *See* Declaration of Allison Hypolite In Support of Motion for Collective Action Approval, dated October 12, 2016 ("Hypolite Dec.").  No other individual has

---

[1] The AC defines the proposed "Collective Action Period" as June 24, 2010 to the entry of judgment in this case.  *See* AC ¶ 6 (page 4); Pl. Br. at 2.  The proposed Notice of Lawsuit With Opportunity to Join submitted by plaintiff on her motion is addressed to all "[c]urrent and former employees of [Defendants] employed as home health aides at any time from June 24, 2013 to the present."  *See* Declaration of William C. Rand, Esq., Ex. A.  Plaintiff's memorandum mentions both proposed periods.  *Compare* Pl. Br. at 2 *with* Pl. Br. at 15.  The parties have conferred and agree that should the Court grant plaintiff's motion, the look-back period would extend backwards three years from the date of the Court's Order certifying a collective ("look-back period").  *See* Perlman Dec. Exs. 1, 2 (agreed-upon Notice and Consent).

filed a consent to opt-in.  For the reasons set forth below, Hypolite's motion must be denied in its entirety.[2]

### Summary of Facts[3]

**A.     HCS and Its Home Health Aide Employees**

Since 2004, HCS has provided home health care services to individuals living in the metropolitan New York City area.  *See* Shemia Dec. ¶ 1.  HCS and its Home Health Aides ("aides") provide in–home care that enables patients to remain in their homes, instead of having to reside in a nursing home or other long-term care facility.  *See id.*  In the period since June 2013, HCS has employed approximately 6,600 home health aides.  *See id.* ¶ 12.  When an aide arrives at a patient's home, they telephone HCS and punch in codes to clock in.  Aides follow the same process when they leave a patient's home at the end of the work period.  *See id.* ¶ 4.

---

[2] In her declaration, Ms. Hypolite makes reference to several issues that have relevance to only her state law claims.  Since the current motion relates only to whether an FLSA collective should be conditionally certified, those state law matters are irrelevant here.  *See* Hypolite Dec. ¶ 19 (vacation and sick day pay); ¶ 20 (notice of medical benefits), ¶ 42 (health insurance); ¶ 43 (vacation); ¶¶ 45, 48-49 (N.Y. Wage Parity Act); and ¶ 52 (N.Y. Wage Theft Prevention Act).

[3] For a complete recitation of the facts, see the Declaration of Agnes Shemia, dated November 17, 2016 ("Shemia Dec."); the Declaration of Victor Gavela, dated November 17, 2016 ("Gavela Dec."); the Declaration of Reggie Thomas, dated November 16, 2016 ("Thomas Dec."); and the Declaration of Onique Cummings, dated November 16, 2016 ("Cummings Dec.").

**B.**  **Each Aide's Job Differs Depending on the**
<u>**Patient's Care Plan and Living Environment**</u>

Each aide has separate patients, although some patients will have more than one aide over time.  *See id.* ¶ 12.  The jobs that the aides hold are individualized, and the duties of each are tailored to the individual needs of each patient.  *See id.* ¶¶ 12-17.  Prior to assigning an aide to a patient, HCS or a referring agency develops a unique care plan for the patient that identifies the tasks that the aide will perform.  *See id.* ¶¶ 2, 12.  No care plan includes performing services for anyone other than the patient.  *See id.* ¶¶ 8, 17, and Exs. 2, 3. During the 2013–2015 period, HCS served approximately 2,200 patients, each with his or her own care plan.  *See id.* ¶ 12.

The tasks performed by an aide for each patient vary, as does the frequency with which each patient requests that each task be performed.  *See id.* ¶ 17 and Ex. 4.  The size of each patient's living space also varies, so that the time needed to dust, vacuum, and/or mop a given room (e.g., dining area) varies from patient to patient.  *See id.* ¶ 15.  Patients use HCS's aides for different numbers of days per week and different numbers of hours per day.  *See id.* ¶ 16.

When a patient lives alone, which is the case for most of HCS' patients, all of the living space is the patient's, and, therefore, all of the aide's duties are necessarily performed for the patient's benefit.  *See id.* ¶ 14.  When a patient lives with family members, the aide prepares meals for the patient, cleans areas used by the patient, does the patient's laundry, and changes the patient's linens.  *See id.*  Family members prepare their own meals, clean the areas not used by the patient (e.g. the family members' own bathrooms and bedrooms), and do their own laundry and linens.  *See id.*  Performing work for family members is not part of any patient's care plan. *See id.*

**C.**     <u>**HCS's Policies and Procedures**</u>

When an aide becomes employed by HCS, he or she is provided with a manual that sets forth HCS' policies and procedures. *See id.* ¶ 3.  HCS also conducts in–service training for aides, where policies are explained.  Hypolite attended such in-service training sessions. *See id.* The HCS Policy Manual, a copy of which was provided to the aides, made it clear that the aides were to perform tasks *for the patient*, and not for others. *See id.* ¶ 7 and Ex. 1 at 54.  The Policy Manual also instructed the aides to "CALL THE OFFICE IMMEDIATELY TO NOTIFY YOUR COORDINATOR IF . . . The patient, the patient's doctor, or family asks you to do something that is not on the plan of care." *Id.*, Ex. 1 at 60.

The Policy Manual also sets forth HCS' policy on sleep and meal periods during live–in 24-hour shifts:

> <u>**LIVE–IN SLEEP AND MEAL PERIODS:**</u>
>
> . . . Specifically, under this policy, you are permitted 8 hrs. for sleep, 5 hrs of which must be uninterrupted, and a total of 3 hrs for meals during each 24 hour shift you work.
>
> In the event that work prohibits you from receiving 5 hrs of uninterrupted sleep or a total of 3 hrs for meal periods, you must immediately notify your case coordinator at HCS in writing using our certification form. . . .

*See id.*, Ex. 1 at 20.  As the policy states, if an aide did not get the requisite sleep or meal periods, they were required to report that by submitting a written Sleep and Meal Period Exemption Certification form. *Id.* ¶ 25.  Ms. Hypolite never submitted a Certification form to HCS. *See id.*

HCS provides gloves and face masks to its aides. *See id.¶* 19. In addition, aides are not required to use hand sanitizer, but may wash their hands instead. *See id.* ¶ 20. HCS never required its aides to purchase any of these items. *See id.* ¶ 22.

During the period from October 13, 2015 to date, all HCS aides have been paid overtime for weekly hours in excess of 40, at one and one-half times the aide's regular hourly rate. *See* Gavela Dec. ¶ 6.

### **Argument**

District Courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). In determining whether to issue court-authorized notice, courts must be "mindful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs." *Rudd v. T.L. Cannon Corp.*, 2011 U.S. Dist. LEXIS 21061, at *17 (S.D.N.Y. Jan. 4, 2011) (citing *Adair v. Wisconsin Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008)). After all, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action." *Adair*, 2008 U.S. Dist. LEXIS 68942, at *9.

To justify notice, and before subjecting an employer to the burdens of a collective action, plaintiffs must demonstrate that they are "'similarly situated' to the members of the collective and that they "together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *see Korenblum v. Citigroup, Inc.*, 2016 U.S. Dist. LEXIS 94220, at *8 (S.D.N.Y. July 19, 2016). "[W]hether a compensation policy is unlawful

frequently turns on the duties, pay rates, and working schedules of the employees it covers."
*Korenblum*, 2016 U.S. Dist. LEXIS 94220, at *8.

Plaintiff's burden on this motion "is not non-existent and the factual showing, even if modest, must still be based on some substance" and not mere "unsupported allegations." *Myers*, 624 F.3d at 555.  "It is axiomatic that, even at this preliminary stage, the Court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." *Ali v. New York City Health and Hosps. Corp.*, 2013 U.S. Dist. LEXIS 44091, at *6 (S.D.N.Y. Mar. 27, 2013) (quoting *Jenkins v. TJX Cos., Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)).  The plaintiff must make a showing that "'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions'. . . who are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).  "In other words, although a court does not adjudicate the merits of a claim at the first stage, the elements of, and defenses to, the claim inform the analysis of whether employees are similarly situated." *Korenblum*, 2016 U.S. Dist. LEXIS 94220, at *9.

Two courts in this Circuit have recently denied conditional certification to home health aides, on grounds directly applicable here—whether or not each home health aide was, prior to October 13, 2015, exempt under the federal companionship exemption.  *See Cowell v. Utopia Home Care, Inc.*, 2016 U.S. Dist. LEXIS 104495 (E.D.N.Y. Aug. 8, 2016); *Severin v. Project*

*OHR, Inc.*, 2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012).[4]  Despite the existence of

these two recent on-point cases, plaintiff fails to disclose their existence to this Court.

In addition to these "purple cow" cases, courts in this district regularly deny conditional

certification when plaintiffs fail to proffer "'substantial allegations' of a factual nexus between

the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA

violation." *Romero v. H.B. Auto Grp., Inc.*, 2012 U.S. Dist. LEXIS 61151, at *23-*24 (S.D.N.Y.

May 1, 2012) (quoting *Davis v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 86577

(S.D.N.Y. Oct. 22, 2008)); *see, e.g.*, *Warman v. Am. Nat'l Standards Inst.*, 2016 U.S. Dist.

LEXIS 85521 (S.D.N.Y. June 27, 2016); *Fraticelli v. MSG Holdings, L.P.*, 2014 U.S. Dist.

LEXIS 63167 (S.D.N.Y. May 7, 2014).

I.   **HYPOLITE HAS NOT MADE ANY SHOWING THAT SHE
     IS "SIMILARLY SITUATED" TO AIDES WITH RESPECT
     TO WHETHER THE COMPANIONSHIP SERVICES
     EXEMPTION APPLIED PRIOR TO OCTOBER 13, 2015**

Hypolite claims that HCS "adopted and adhered to a policy effectively requiring their

employees to work in excess of 40 hours per week without paying overtime . . . in violation of

FLSA § 207."  Pl. Br. at 6; *see also* AC ¶ 75; Hypolite Dec. ¶ 38 ("Defendants hired at least 40

similar home health aides/maids, who also were not paid their overtime at the full time and one

---

[4] The *Severin* opinion and order dated June 20, 2012 denied the plaintiffs' motion for class

certification pursuant to Fed. R. Civ. P. 23, and not conditional certification.  However, the court

had previously denied the plaintiffs' motion for conditional certification in an unpublished oral

opinion, and the relevant language is quoted in the June 20, 2012 opinion and order.  *See*

Perlman Dec., Ex. 3 (transcript of oral decision).

half rate.").  In order to proceed with a conditionally certified collective action, Hypolite must

make a modest factual showing that she and the other aides "together were victims of a common

policy or plan *that violated the law.*" *Myers*, 624 F.3d at 555 (emphasis added); *see also Glatt v.*

*Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (vacating order conditionally

certifying nationwide collective).  As discussed below, Hypolite's declaration and the amended

complaint wholly fail to demonstrate that HCS adopted and adhered to any policy that violated

the law.  Given the absence of any illegal policy, resolution of the putative collective members'

overtime claims would necessarily require thousands of highly individualized, fact-intensive

inquiries—an enormous undertaking that defeats the purpose of collective actions.

**A.**      **The Companionship Exemption Prior to October 13, 2015**

The FLSA's companionship exemption provides that the statute's minimum wage and

overtime pay provisions do not apply to "any employee employed in domestic service

employment to provide companionship services for individuals who (because of age or infirmity)

are unable to care for themselves . . . ."  29 U.S.C. 213(a)(15).  If an employee is exempt under

this provision, the FLSA minimum wage and overtime requirement does not apply, and there is

no FLSA claim.  Prior to October 13, 2015, the FLSA's executing regulation defined

"companionship services" as "those services which provide fellowship, care, and protection for a

person who, because of advanced age or physical or mental infirmity, cannot care for his or her

own needs."  29 C.F.R. § 552.6 (1974) (amended 2015).[5]  "Companionship services" included

---

[5] In late 2014, the Department of Labor ("DOL") amended 29 C.F.R. § 552.6 to eliminate the

federal companionship exemption for certain domestic service workers, including home care

aides employed by third-party employers.  In January 2015, the District Court for the District of

"*household work related to the care of* the aged or infirm person such as meal preparation, bed making, washing of clothes, *and other similar services*." *Id.* (emphasis added). In a widely-cited opinion letter, the Department of Labor opined that exempt tasks include "cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning." DOL Opinion Letter Fair Labor Standards Act, 1995 DOLWH LEXIS 22, at *1-*2 (Mar. 16, 1995) ("1995 DOL Opinion Letter"); *see Cowell*, 2016 U.S. Dist. LEXIS 1044495, at *10-*11 (citing 1995 DOL Opinion Letter); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, 2009 U.S. Dist. LEXIS 33622, at *12-*13 (E.D.N.Y. April 22, 2009) (same).

   In addition to household work *related to the care of the patient*, exempt companionship services also included "the performance of *general* household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6 (1974) (amended 2015) (emphasis added). "General household work" is household work *unrelated* to the "fellowship, care, and, protection" of a patient. *Id.*

   When applying the exemption, courts distinguish between *household work* related to the "fellowship, care, and protection" of a patient, which is always exempt, and *general* household work *unrelated* to the provision of care, which is exempt only if it does not exceed 20% of the total weekly hours worked. *See Cowell*, 2016 U.S. Dist. LEXIS 104495, at *9-*11; *Severin*,

_____

Columbia vacated the new rule, concluding that the DOL exceeded its rule-making authority. On appeal, the D.C. Circuit Court of Appeals found that the new rule was valid, and reversed the district court. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015). The new rule became effective on October 13, 2015. As of that date, the companionship services exemption no longer applies to home health aides employed by third-party agencies.

2012 U.S. Dist. LEXIS 85705, at *9 ("[T]he applicability of the exemption to a particular home attendant is an individualized, fact-specific determination of whether . . . the home attendant performed general household work more than 20 percent of the time, and of course any . . . household work that is related to the fellowship, care or protection of their client wouldn't negate the exemption.") (internal quotation marks omitted).

**B.    Plaintiff Makes No Showing That Aides Are "Similarly Situated" Based On Exemption Status, Which Is a Lawful Policy**

Hypolite does not demonstrate a common facially illegal policy applicable to all aides.  Hypolite appears to believe that she can establish the requisite "factual nexus" by baldly claiming that HCS "adopted and adhered to a policy effectively requiring their employees to work in excess of 40 hours per week without paying over time . . . in violation of [the FLSA]." *See* Pl. Br. at 6; *see also id.* at 11-12.[6]  To the extent Hypolite attempts to rely on the fact that HCS aides were classified as exempt under the companionship exemption prior to October 13, 2015, her argument fails.  It is well-settled that "the mere classification of a group of employees — even a large or nationwide group — as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Ali*, 2013 U.S. Dist. LEXIS 44091, at *6-*7; *see Jenkins*, 853 F. Supp. 2d at 322.  Rather, "the relevant practice that binds FLSA plaintiffs together is the one that is alleged to have violated the statute

---

[6] Hypolite lacks personal knowledge regarding HCS' policies and procedures during periods that she was not working for HCS (between December 2010 and October 29, 2013, and from April 29, 2016 to the present).  *See* Hypolite Dec. ¶ 1.

itself." *Guillen v. Marshalls of MA, Inc.*, 2012 U.S. Dist. LEXIS 91639, at *3 (S.D.N.Y. June 30, 2012); *see Glatt*, 811 F.3d at 540 (plaintiff must establish that there is "common proof" that the employer *mis*classified, rather than merely classified, employees as exempt). Because HCS lawfully treated its aides as exempt prior to October 13, 2015 under the FLSA's companionship exemption — and there is no *common proof* they were *mis*classified — there is no basis for conditional certification here.

As an initial matter, Hypolite's declaration demonstrates that *she* performed *exempt* household work. Hypolite Dec. ¶¶ 27-36. Hypolite admits that her job responsibilities included preparing meals (*id.* ¶¶ 27-32); making beds (*id.* ¶ 33); vacuuming, dusting, cleaning the bathroom, mopping the kitchen floor, scrubbing kitchen counters, cleaning pots and pans, loading/unloading the dishwasher, and taking out the garbage (*id.* ¶ 34); doing laundry (*id.* ¶ 35); and cleaning the refrigerator and putting away groceries at least once per week (*id.* ¶ 36). All of these tasks were performed for the benefit of, and the care and protection of, *the patient*. *See* Shemia Dec. ¶¶ 5-7. *See also* Hypolite Dec. ¶ 36 (discussing meal preparation for the "customers"). These were the very "companionship services" that were contemplated by the pre-October 13, 2015 companionship exemption, and they are not subject to the 20% weekly cap on "general household work." There is nothing problematic about Hypolite's performance of such duties.

And Hypolite's declaration fails to show that she or any other aide performed non-exempt general household work for more than 20% of the workweek and were not paid overtime. In fact, Hypolite *does not even claim that she or any other aide* spent more than 20% of any workweek performing non-exempt *general* household work *unrelated* to the care and protection of any patient. Hypolite's bald claim that she spent "at least 30% of [her] time

directly performing household work" fails to factually demonstrate that she performed *any* non-exempt general household work, let alone that such work constituted more than 20% of any workweek she worked. Hypolite Dec. ¶ 37. First, she only claims she performed "household work," which is exempt. She does not claim that she performed any *general* household work unrelated to the care and protection of a patient. Second, none of the work Hypolite performed was "general household work." All of the tasks she identified were performed for the care and protection of the patient, as confirmed by the fact that most of her patients lived alone. Third, Hypolite's declaration does not state that she performed any general household tasks for the care of people other than the patient, such as family members. And because of this, she does not identify how much time per week she spent performing tasks for each patient versus people other than the patient. Finally, Hypolite fails to identify which tasks she performed for each patient, or how frequently she performed each task for each patient, according to each patient's individual care plan. *Id.*; *see* Shemia Dec. ¶¶ 9-11.

What's more, Hypolite fails to point to any patient care plan, HCS policy, or other HCS document requiring her to perform "general household work" unrelated to the care of her patients. HCS policies — as well as each patient care plan — made clear that aides were to perform tasks *for the patient*, and not for others. *See* Shemia Dec. ¶¶ 7-8 and Exs 2, 3. Additionally, performing work for family members was *not* part of *any* patient care plan that Hypolite or any other aide was required to follow. *See id.* ¶ 14. Indeed, Hypolite was specifically and expressly instructed to *refuse* to perform work not in her patients' care plans. The HCS Policy Manual, a copy of which was provided to Hypolite and all other aides, instructed aides to "CALL THE OFFICE IMMEDIATELY TO NOTIFY YOUR COORDINATOR IF . . . The patient, the patient's doctor, or family asks you to do something

that is not on the plan of care." *Id.* ¶ 8.  Hypolite does not claim that anyone ever asked her, or any other aide, to perform general household tasks for members of any patient's family that were unrelated to the care of the patient, or that she ever called a HCS coordinator regarding such a request.  Nor does Hypolite allege that she was verbally instructed by HCS to perform work not prescribed by any patients' care plan, or in contravention of HCS' written policies.  Thus, Hypolite wholly fails to make a "modest" showing — or any showing at all — that she and other aides together were victims of any HCS policy that *violated the law.  See Guillen*, 750 F. Supp. 2d at 479 (denying motion for conditional certification and holding that "there is virtually no basis on which to conclude that [assistant store managers] nationwide are similarly situated to [named plaintiff] with respect to his allegation that he spent the majority of his time performing non-managerial tasks."); *Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262, at *11 (S.D.N.Y. Nov. 13, 2009) (denying motion for conditional certification where plaintiff could only show a common presumptively legal policy, and had no support for her allegations of an illegal *de facto* policy other than her own deposition testimony); *Jenkins*, 853 F. Supp. 2d at 324-25 (denying motion for conditional certification and holding that aside from conclusory allegations, plaintiff failed to provide any factual support for the contention that other assistant store manager at HomeGoods' stores primarily performed non-exempt tasks).

Hypolite has made no showing of a common policy that violated the law, whether facially or *de facto* illegal.  *See Cowell*, 2016 U.S. Dist. LEXIS 104495, at *17. Accordingly, there is no basis to conditionally certify a collective of aides with respect to Hypolite's minimum wage and overtime claims prior to October 13, 2015.

**C.     Resolution of Aides' Overtime Claims Would**
**Require Highly Individualized Determinations**
**Rendering Conditional Certification Inappropriate**

Because there is no illegal HCS policy regarding payment of overtime, collective

resolution of the FLSA overtime claims here would necessarily require *thousands* of highly

individualized, fact-intensive inquiries to determine whether *each* aide performed more than 20%

general household work unrelated to the patient's care during *each* workweek.  These

individualized inquiries, which vary shift-to-shift, patient-to-patient, and aide-to-aide, clearly are

not susceptible to a collective resolution.  *See Severin*, 2012 U.S. Dist. LEXIS 85705, at *9;

*Cowell*, 2016 U.S. Dist. LEXIS 104495, at *18-*21.

The existence or non-existence of the companionship exemption must be determined

separately for each aide on a workweek-by-workweek basis.  29 C.F.R. § 552.6 (1974) (amended

2015).  Determining the type and frequency of an aide's workweek duties depends on the

individual needs of each aide's patient, the patient's plan of care, and the patient's home

environment.  Shemia Dec. ¶¶ 12-17.   For example, some patients may have an aide perform a

certain task while others do not have an aide perform that task.  *See id.* ¶ 17 and Exs. 2, 3.

Similarly, one patient might have an aide perform a certain task daily, while another patient

might have an aide perform that task weekly or "as needed."  *See id.* ¶ 17 and Exs. 2, 3, 4.  Also,

the amount of household work performed by each aide for each patient varies depending on the

size of each patient's living space.  *See id.* ¶ 15.

Because patients use aides for different numbers of days per week and different numbers

of hours per day, the percentage of "general" housework performed (e.g. housework not related

to the patient's care), if any, would vary aide-to-aide and workweek-to-workweek.  Shemia Dec.

¶ 16.  And, if an aide worked for more than one patient in a particular workweek, one would

14

need to account for the combined total of general housework performed during that week (if any) versus the combined total hours worked for those patients.  *Id.*  These are "very fact-specific inquires" that are not "susceptible . . . to a similarly-situated person analysis."  *Severin*, 2012 U.S. Dist. LEXIS 85705, at *9; *see Cowell*, 2016 U.S. Dist. LEXIS 104495, at *20-*22.

In *Severin v. Project OHR, Inc.*, the court denied plaintiffs' motion for conditional certification of a class of aides, on grounds that the aides' highly individualized jobs barred a common resolution regarding whether they were properly classified as exempt under the companionship exemption, which would be "a complete bar to liability."  2012 U.S. Dist. LEXIS 85705 at *8-*9.  The court found that the aides' jobs were "individualized," and not susceptible to a similarly-situated analysis, because "[t]hey each have separate patients or clients; they have to tailor their duties – indeed their hours – everything to the needs of the individual client . . . ." *Id.* at *8-*9.  Thus, plaintiffs would be required to "establish, on an individual plaintiff-by-plaintiff basis, that somehow they performed general household work more than 20 percent of the time." *Id.* at *8-*9.  The *Severin* court listed the "many" fact-specific inquiries that were not "susceptible . . . to a similarly-situated person analysis," including:

> what kind of household work was performed; was it related to the fellowship, care and protection of the client; if it was not so directly related such that it could be considered general household work, did it constitute more than 20 percent of the time that the individual spent in that client's home or environment.

*Id.* at *9.

In *Cowell v. Utopia Home Care, Inc.*, the court followed the reasoning in *Severin* and denied plaintiff's motion to conditionally certify a class of aides who alleged they were not paid overtime, on grounds that "the unique and individualized Plans of Care that are prepared for Utopia patients, and which Utopia aides are required to follow, result in 'very fact-specific inquires' that are not 'susceptible . . . to a similarly-situated person analysis that would support

15

the issuance of a collective action notice.'"  2016 U.S. Dist. LEXIS 104495, at *19 (quoting *Severin*, 2012 U.S. Dist. LEXIS 85705, at *9).  Like HCS, Utopia aides' duties were defined by, and limited to, the care items identified in each individual patient's Plan of Care.  *Id.* at *17. Each Utopia Plan of Care was tailored to each patient and depended on, among other things, (1) the patient's condition and needs; (2) the number of authorized hours; (3) the size, characteristics and condition of the patient's residence; and (4) whether the patient lived with family members or others.  *Id.* at *17-*20.  The court held that "[p]laintiff has failed to establish that, given the specific needs of the individual patient or patients to whom the aides are assigned, their duties constituted 'general household work' such that they would 'negate the [companionship services] exemption' as opposed to work 'related to the fellowship, care or protection of their client.'"  *Id.* at *17 (quoting *Severin*, 2012 U.S. Dist. LEXIS 85705, at *9).  The Court should follow the reasoning set forth in *Severin* and *Cowell* to deny Hypolite's motion.

Not surprisingly, Hypolite ignores the decisions in *Severin* and *Cowell*.  Instead, she cites opinions from outside this Circuit to argue that courts "regularly certify collective classes of home health aides."  Pl. Br. at 2.  But plaintiff's case law is inapposite and, in any event, does not bind this court.  For example, *George v. Companions of Ashland, Inc.*, 2016 U.S. Dist. LEXIS 120706 (N.D. Ohio Sept. 7, 2016) involved a motion to decertify a Rule 23 class and not a motion for collective action notice.  The court noted that the parties had *stipulated* to class certification and a collective action, and that the class included employees who worked as home health aides "*from October 13, 2015 to the present*" who were not paid overtime.  *Id.* at *1-*3 (emphasis added).  Similarly, in *Jasper v. Home Health Connection, Inc.*, 2016 U.S. Dist. LEXIS 71616 (S.D. Ohio June 1, 2016), the court conditionally certified home health aides and other similar employees employed *between October 13, 2015 and the present* who worked more than

forty hours in a week during that period without receiving overtime.  *Id.* at *13.  Additionally, the defendant in *Jasper* did not oppose conditional certification.  *Id.* at *4.  In *Torres v. Nature Coast Home Care LLC*, 2016 U.S. Dist. LEXIS 139745 (M.D. Fla. Oct. 7, 2016), the court conditionally certified a class of non-exempt aides who were not paid overtime, where the record reflected, unlike here, that home health aides "performed similar tasks for [the defendant's] clients."  *Id.* at *9-*10.  Moreover, the holding in *Torres* is contrary to precedent set forth by courts in the Second Circuit (i.e., *Severin* and *Cowell*).  Finally, plaintiff's case, *Andryeyeva v. New York Health Care, Inc.*, 45 Misc. 3d 829 (N.Y. Sup. Ct. Kings Cnty. 2014), is irrelevant on this motion because the issue there was certification of a Rule 23 class with respect to the plaintiff's New York State Labor Law claims.  The plaintiff did not allege any FLSA claims.

Finally, granting Hypolite's motion would fail to promote judicial efficiency, one of the underlying policies of the collective action mechanism.  *See Hoffman-LaRoche Inc.*, 493 U.S. 165, 170 (1989) (the collective action process is intended to enable the "efficient resolution in one proceeding of common issues of law and fact.");  *Cowell*, 2016 U.S. Dist. LEXIS 104495, at *20-*21.  Considering the number of weeks and patients at issue, a class of up to 6,600 aides would "leave the Court having to conduct thousands of mini-trials to resolve the nature of each [patient care plan], the reason for each task assigned in each [patient care plan] in order to determine whether it counts for the purpose of the twenty percent calculation, how much time was regularly spent on each task, and then the total amount of time spent on all tasks in order to determine whether each class member is ultimately exempt."  *Cowell*, 2016 U.S. Dist. LEXIS 104495, at *21.  Such an outcome "is exactly what the collective action mechanism was designed to avoid."  *Id.*  Plaintiff's motion must be denied.

**D.**   **HCS Has Paid Its Aides Overtime From October 13, 2015 to the Present**

From October 13, 2015 to date, all aides have been paid overtime for weekly hours in excess of 40, at one and one-half times their regular hourly rate.  *See* Gavela Dec. ¶ 6.  Hypolite fails to demonstrate that she was in fact not paid overtime during this period, and, in any event, her conclusory and unsupported allegations fail to establish any factual nexus between herself and any other aide.  *See* cases discussed in Section II.B, *infra*.  Hypolite's motion with respect to her overtime claims from October 13, 2015 to the present should be denied.

**II.**      **HYPOLITE MAKES NO SHOWING THAT**
             **AIDES ARE "SIMILARLY SITUATED"**
             **BASED ON AN ILLEGAL POLICY REGARDING**
             **COMPENSATION FOR SLEEP AND MEAL TIME**

Hypolite alleges that she and similar aides who worked 24-hour shifts were "illegally" paid for only 13 of the 24 hours worked, because they allegedly did not receive meal breaks or five hours of uninterrupted sleep.  *See* AC ¶¶ 1, 24, 59, 63, 66; Pl. Br. at 1-2, 7-9.  As discussed below, Hypolite has failed to meet her "modest" burden showing that she and other aides together were subjected to a common policy that violated the law.

**A.**   **Hypolite Fails To Demonstrate Any Unlawful Policy**

As an initial matter, for the period before October 13, 2015, all aides who were exempt under the federal companionship exemption were lawfully exempt from minimum wage and overtime and are thus not entitled to any additional pay for hours worked in excess of 40 per week, irrespective of whether they received requisite sleep and meal periods in accordance with HCS' policy.  *See* Section I, *supra*.  In any event, HCS lawfully paid its aides for 13 hours of a 24-hour shift during the entire look-back period.  Under 29 C.F.R. § 785.22, an employer and employee can agree, under certain conditions, to exclude sleep and meal time from "hours worked" during shifts of 24 hours or more.  Specifically, "the employer and the employee may

agree to exclude bona fide meal periods *and* a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a) (emphasis added).  29 C.F.R. § 785.22(b) further provides that "if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time." 29 § C.F.R. 785.22(b).

In accordance with 29 C.F.R. § 785.22, HCS implemented a policy on sleep and meal periods during live–in 24 hour shifts.  The policy, a copy of which was provided to all aides, provides that aides "are permitted 8 hrs. for sleep, 5 hrs of which must be uninterrupted, and a total of 3 hrs for meals during each 24 hour shift you work."  Shemia Dec. Ex. 1 at 20.  The policy further directs aides that if they do not receive requisite sleep and meal periods, they "***must immediately notify [their] case coordinator*** at HCS in writing using our certification form." *Id.* (emphasis added).  Thus, under the policy, HCS aides are required to report any instances where they did not get the requisite uninterrupted sleep or meal periods by submitting a written Sleep and Meal Period Exemption Certification form.  *See id.* ¶ 25.  If a form was submitted, HCS would make accommodations for the aide to ensure adequate sleep time.  *See id.* ¶¶ 24-25, 28.  Ms. Hypolite never submitted a form.  *See id.* ¶ 25.

Hypolite claims that she repeatedly complained to her supervisor Reggie Thomas, her assistant manager Onique Cummings, and Agnes Shemia about "not being able to get sleep" (Hypolite Dec. ¶ 10) and "not getting money for [her] work hours during the night." *Id.* ¶ 12-13; *see id.* ¶ 11.  Hypolite's statements are completely false.  Ms. Shemia, Ms. Cummings, and Mr. Thomas never spoke with Hypolite about her ability or inability to sleep while working live-in

shifts.  Shemia Dec. ¶¶ 24-25; Cummings Dec. ¶¶ 2-4; Thomas Dec. ¶¶ 3-5.[7]  Similarly, Ms.

Shemia, Ms. Cummings, and Mr. Thomas never spoke with Hypolite about compensation issues

relating to her night work hours.  *Id.*  Finally, Hypolite *never* submitted a Certification form as

required by the policies (Shemia Dec. ¶ 25), nor did she ever inform any HCS supervisor that she

was unable to receive meal breaks or uninterrupted sleep time.  Thomas Dec. ¶¶ 3-5.

**B.**    **Hypolite Fails to Establish the Requisite Factual Nexus**

Even assuming Hypolite's claims to be true (they are not), she does not sufficiently

demonstrate that any other aide was subject to the same alleged policy.  The following

statements by Hypolite constitute her *sole* basis for the alleged "factual nexus":

- HCS employed "at least 40 other" aides and "such individuals have only been paid
  for 13 hours of work when they work a 24 hour overnight shift and were not paid for
  all at their hours worked during 24 hour assignments during which they were not able
  to get 5 hours of uninterrupted sleep, and have not been paid overtime . . . ."  Hypolite
  Dec. ¶¶ 40-41; *see id.* ¶ 51.

- "I have spoken to other [HCS aides] including Babe, Rama, and Anna, who have told
  me that they also received only pay for 13 hours of a 24 hour shift even though they
  worked during the full shift and did not get 5 hours of uninterrupted sleep and also
  were not paid . . . overtime . . . ." *Id.* ¶ 49.

It is well-settled that Hypolite cannot rely on such "unsupported assertions" to satisfy her modest

burden at this stage.  *Myers*, 624 F.3d at 555; *see, e.g.*, *Warman*, 2016 U.S. Dist. LEXIS 85521,

---

[7] In paragraphs 6, 7, and 8 of Hypolite's declaration, she refers to situations in 2010 and 2014

when she claims to have received inadequate sleep time.  During these time periods, the federal

companionship exemption was in effect, so that amount of sleep is relevant only if a particular

aide is found to have been non-exempt during a particular workweek.  This is an individual,

highly fact-dependent determination, which is why a collective should not be conditionally

certified.

at *13-*14; *Fraticelli*, 2014 U.S. Dist. LEXIS 63167, at *8 (denying motion for conditional

certification and refusing to credit unsupported and conclusory assertions in plaintiffs'

affidavits); *Sanchez v. JMP Ventures, L.L.C.*, 2014 U.S. Dist. LEXIS 14980, at *5-*6 (S.D.N.Y.

Jan. 27, 2014) (denying motion for conditional certification and holding that plaintiff's "list of

generalized allegations that have been molded into a declaration which reads similarly to the

complaint" are "precisely the kind of unsupported assertions and conclusory allegations that

courts in this District have found to be insufficient to conditionally certify a class."); *Marmolejos

v. Lae Tires & Rims, Inc.*, 2013 U.S. Dist. LEXIS 176438, at *4 (S.D.N.Y. May 1, 2013)

(denying motion for conditional certification where plaintiff's declaration "contain[ed] no

information about other employees and no information indicating that Defendants had a common

plan or policy of denying their employees' their lawful wages."); *Ali*, 2013 U.S. Dist. LEXIS

44091, at *8 ("uncorroborated, anecdotal hearsay about the hours Plaintiff believes others

worked" is insufficient to warrant conditional certification); *Flores v. Osaka Health Spa, Inc.*,

2006 U.S. Dist. LEXIS 11378, at *8 (S.D.N.Y. Mar. 16, 2006) (plaintiff's "understanding" that

co-workers worked the same 12 hour shift as she did, did not provide sufficient factual

information warranting conditional certification); *Barfield v. New York City Health & Hosps.

Corp.*, 2005 U.S. Dist. LEXIS 28884, at *3 (S.D.N.Y. Nov. 17, 2005).

Hypolite's statements based on her conversations with "Babe, Rama, and Anna," none of

whom have filed consents to opt-in or submitted declarations on this motion, do not satisfy her

burden. *See, e.g.*, *Fernandez v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 124692, at *51

(S.D.N.Y. Aug. 28, 2013) (plaintiffs failed to show a policy to deny overtime pay where

"plaintiffs' declarations omit[ed] key details concerning the identities of speakers and

participants, and even approximate dates, when instructions allegedly were issued concerning

21

off-the-clock work and denial of overtime").  Finally, Hypolite does not allege that any other

aide did not receive three hours for meal time, or that any other aide "complained" to HCS about

inadequate sleep or meal time.  There simply is no basis to find any "factual nexus" here.[8]

**C.    Resolution of Hypolite's Sleep and Meal
      Compensation Claim Requires Highly-Individualized
      Determinations Rendering Conditional Certification Inappropriate**

Because Hypolite has failed to show that she and others were together the victims of a

common illegal policy, collective resolution of her claims would require highly individualized

inquiries into, for each of HCS's 6,600 aides: (1) whether the aide worked a 24-hour or longer

shift; (2) the sleeping arrangements provided during each shift; (3) whether the aide received five

hours of uninterrupted night's sleep during each 24-hour or longer shift; (4) whether the aide

received bona fide meal periods during each 24-hour shift; (5) whether the aide ever informed

HCS that they did not receive requisite sleep or meal periods; and (6) whether the aide was

exempt from overtime prior to October 13, 2015.  *See, e.g.*, *Cowell*, 2016 U.S. Dist. LEXIS

104495, at *21; *see also* Section I, *supra*.  Conditional certification would be futile under the

circumstances.

**III.     PLAINTIFF HAS FAILED TO MEET HER BURDEN
         WITH RESPECT TO HER TRAVEL TIME CLAIM**

Hypolite claims, with no supporting legal authority, that "[s]he and the other home health

aides were never paid for [their] time traveling between clients" in violation of the law.  She also

claims that HCS's "policy was not to pay for travel time between clients."  Hypolite Dec. ¶¶ 16-

---

[8] Hypolite cites this Court's decision in *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397

(S.D.N.Y. 2012) in support of her motion.  Pl. Br. at 3.  But the Court distinguished that case

from cases where, like here, the movants failed to meet their evidentiary burden.  *Id.* at 406-07.

17; *see id.* ¶¶14-15; AC ¶ 2, 33, 35-36; Pl Br. at 9-10.  Hypolite fails to establish that she and any other aide together were victims of a policy regarding travel time pay that *violated the law*.

First, Hypolite fails to show that federal law required HCS to compensate her for travel time.  For the period before October 13, 2015 (the date the companionship exemption was discontinued), she and all other aides were lawfully classified as exempt.  As such, Hypolite is not entitled to any additional compensation for time spent traveling prior to that date.  *See* 29 C.F.R. § 552.6 (1974) (amended 2015).  For the period after, Hypolite was fully paid for all back-to-back 24-hour shifts, including travel time.  Between October 13, 2015 and April 24, 2016 (Hypolite's last date of employment), she worked eight back-to-back 24-hour shifts for two different patients.  *See* Gavela Dec. ¶ 2.  In each instance, Hypolite left the first shift either 2¼ or 2½ hours early to travel to the second patient's location.  *See id.*  Thus, the first 24-hour shift consisted of approximately 21½ hours with the patient and 2½ hours for travel, and the second 24-hour shift consisted of 24 hours with the patient.  *See id.*  These 24-hour shifts *included* her travel time.  HCS paid Hypolite for 13 hours for each 24-hour shift in accordance with federal law.  *See* Section II, *supra.*  If these hours resulted in overtime for the week, Hypolite was paid one and one-half times her $10 hourly rate.[9]  *See* Gavela Dec. ¶ 2.  Other than these instances, Hypolite did not work for more than one patient in a day after October 13, 2015, and thus could not have had unpaid travel time.  *See id. ¶* 3.

---

[9] Approximately 63.6% of HCS aides never worked even a single 24-hour shift.  *See* Gavela Dec. ¶ 5.  In the period after October 13, 2015, only 230 aides worked back-to-back 24-hour shifts and they were paid for 13 hours in each 24-hour shift, as described above.  *Id.* ¶ 4.

Even if Hypolite could show that HCS violated the law with respect to her, the unsupported statements in her declaration do not show any factual nexus between herself and any other aide. *See* Hypolite Dec. ¶¶ 16-17. Hypolite does not give any details about any aide, other than herself, who allegedly did not get paid for their travel time. Nor does she state that she has personal knowledge of any other aide working for more than one patient in a day where travel from one patient to another was involved, or if the travel time occurred prior to October 13, 2015. In addition, Hypolite lacks personal knowledge regarding HCS's payment for travel time during periods that she was not working for HCS (between December 2010 and October 29, 2013, and from April 29, 2016 to the present). Hypolite's bare, uncorroborated statements are utterly insufficient to meet her modest burden on this motion. *See* Section II, *supra*.

In the absence of any illegal policy, collective resolution of Hypolite's travel time claims would require thousands of highly individualized inquiries to determine whether *each* aide was entitled to payment for travel time. These inquiries, which would vary aide-to-aide and shift-to-shift, are not susceptible to a collective resolution.[10]

---

[10] It does not appear that Hypolite seeks to collectively pursue her claim regarding reimbursement for gloves, face masks, and hand sanitizer. It is HCS's policy to provide gloves and face masks, and HCS did not require the use of hand sanitizer. *See* Shemia Dec. ¶¶ 18-22. HCS is not required to reimburse Hypolite for hand sanitizer. *See* 29 C.F.R. § 531.35. Hypolite does not claim that any other aide was required to purchase these supplies, or that they were not reimbursed by HCS. Hypolite Dec. ¶ 44.

IV.     **IF A COLLECTIVE IS CONDITIONALLY CERTIFIED,**
        **THE PARTIES HAVE AGREED ON A FORM OF NOTICE**
        **AND ON A CONSENT FORM**

Following the filing of plaintiff's motion, counsel have agreed upon a form of Notice and of Consent if the Court conditionally certifies a collective.  *See* Perlman Dec., Exs. 1, 2 (agreed-upon Notice and Consent).  Among the provisions agreed upon was that the look-back period would extend backwards three years from the date of the Court's Order certifying a collective, and not backwards from the date of the Complaint.  This is the normal look-back period.  *See, e.g.*, *Martin v. Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 352, at *50-53 (S.D.N.Y. Jan. 4, 2016).  Of course, if the Court further restricts the period of any collective — for example, by excluding any period prior to October 13, 2015 — the form of Notice will need to be modified.

<u>Conclusion</u>

For the reasons discussed above, plaintiff's motion must be denied in its entirety.


Dated:  November 23, 2016



**HODGSON RUSS LLP**


By: _____ s/ Paul I. Perlman _____
                    Paul I. Perlman
            Paul I. Perlman
            Peter C. Godfrey
            Sarah N. Miller
    The Guaranty Building
    140 Pearl Street
    Buffalo, New York  14202
    Telephone:  (716) 856-4000
    *pperlman@hodgsonruss.com*
    *pgodfrey@hodgsonruss.com*
    *smiller@hodgsonruss.com*


25