UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

ALLISON HYPOLITE, *Individually and
on Behalf of All Other Persons
Similarly Situated*,                              16-cv-04922 (JGK)

                         Plaintiff,              OPINION AND ORDER

        - against –

HEALTH CARE SERVICES OF NEW YORK
INC. ET AL,

                         Defendants.

————————————————————————

JOHN G. KOELTL, District Judge:

        The plaintiff, Allison Hypolite, on behalf of a putative

class has moved this Court to grant a conditional certification

and provide notice to a proposed class pursuant to § 216(b) of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[1]

The defendants, Home Health Care Services of New York Inc. d/b/a

HCS Healthcare ("HCS") and Agnes Shemia ("Shemia"), oppose the

motion. The defendants have also moved to strike portions of the

reply papers filed by the plaintiff.

        The plaintiff seeks conditional certification of a class

consisting of all current and former employees of the defendants

(a) who are or were formerly employed by the defendants as home

health aides at any time since June 24, 2010 to the entry of

---

[1] The plaintiff asserts state law claims against the defendants,
which are not presently before the Court. The interspersed
issues in the plaintiff's briefing related to those state law
claims are irrelevant to conditional certification and need not
be addressed.

judgment in this case (the "Collective Action Period"); and (b) who were non-exempt employees within the meaning of the FLSA, who were not paid minimum wages and/or overtime wages at rates not less than one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per workweek.

For the following reasons, the plaintiff's conditional certification motion is **denied in part and granted in part,** and the defendants' motion to strike is **denied**.

## I.

The defendants' motion to strike portions of the plaintiff's reply memorandum and the Rand Reply Declaration is without merit. Pursuant to a stipulation entered into after the parties had begun briefing the conditional certification motion, the parties agreed that the plaintiff could rely on newly produced factual material --- specifically, payroll information --- in her reply papers and that the defendants could file a sur-reply. See Dkt. 39. The defendants protest that the plaintiff's reply papers exceeded the scope of the stipulation, but the reply papers were fair comment on the payroll information and the arguments raised by the defendants in their opposition papers. Moreover, the defendants filed a sur-reply, which cured any potential prejudice. Accordingly, the defendants' motion to strike is **denied.**

## II.

Under § 216(b) of the FLSA, employees may maintain actions to recover unpaid wages collectively where the employees are "similarly situated" and give consent in writing "to become . . . a party [to the action] and such consent is filed [with the Court]." 29 U.S.C. § 216(b). "District courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt in as represented plaintiffs." Klimchak v. Cardrona, Inc., No. 09 Civ. 4311, 2011 WL 1120463, at *4 (E.D.N.Y. Mar. 24, 2011) (quoting Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010)). The Court of Appeals for the Second Circuit has endorsed a two-step method of certification in an opt-in collective action under the FLSA. Myers, 624 F.3d at 554-55. At the first step, the Court must determine whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," id. at 555, thus issuing a "conditional certification" of the collective action, see Schwerdtfeger v. Demarchelier Mgmt., Inc., No. 10 Civ. 7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011); Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("Orders authorizing notice are often referred

3

to as orders 'certifying' a collective action, even though the
FLSA does not contain a certification requirement.").

In exercising its discretion at the conditional
certification stage, "the court does not resolve factual
disputes, decide substantive issues going to the ultimate
merits, or make credibility determinations." Cunningham v. Elec.
Data Sys. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)
(citations omitted). The plaintiffs need only make a "modest
factual-showing that they and potential opt-in plaintiffs
together were victims of a common policy or plan that violated
the law." Myers, 624 F.3d at 555 (citations and internal
quotation marks omitted).

If the plaintiffs demonstrate that "similarly situated"
employees exist, the Court should conditionally certify the
class, order that appropriate notice be given to putative class
members, and the action should continue as a "collective action
throughout the discovery process." Cunningham, 754 F. Supp. 2d
at 644. "At the second stage, the district court will, on a
fuller record, determine whether a so-called 'collective action'
may go forward by determining whether the plaintiffs who have
opted-in are in fact 'similarly situated' to the named
plaintiffs. The action may be 'de-certified' if the record
reveals that they are not, and the opt-in plaintiffs' claims may
be dismissed without prejudice." Myers, 624 F.3d at 555; see

also <u>Winfield v. Citibank, N.A.</u>, 843 F. Supp. 2d 397, 401-02
(S.D.N.Y. 2012).

**III.**

The following facts are taken from the parties'
submissions.

HCS provides home health care services to clients living in
the New York City metropolitan area. <u>See</u> Shemia Decl. ¶ 1.
Shemia is the Administrator of HCS. Shemia Decl. ¶ 1.

Since about June 2013, HCS has employed approximately 6,600
home health aides. Shemia Decl. ¶ 12. HCS's home health aides
provide in-home care services to HCS's clients. Shemia Decl.
¶ 1. Home health aides may work with more than one client over
the course of their employment with HCS. Am. Compl. ¶ 2; Shemia
Decl. ¶ 12. However, typically a single home health aide works
with a single client at any given time. Am. Compl. ¶ 2; Shemia
Decl. ¶ 12. From approximately 2013 through 2015, HCS served
around 2,200 clients. Shemia Decl. ¶ 12.

Before assigning a home health aide to a client, HCS or a
referring agency develops an individualized care plan for the
client. <u>See</u> Shemia Decl. ¶¶ 2, 8, 12, 17; Shemia Decl., Ex. 2
(Examples of Care Plans). The tasks each home health aide
performs for each client vary, as does their frequency,
according to the specific needs of the client. Shemia Decl. ¶
17. The HCS Policy Manual, a copy of which was provided to HCS's

5

home health aides, states that home health aides should "CALL

THE OFFICE IMMEDIATELY TO NOTIFY YOUR COORDINATOR IF . . . The

patient, the patient's doctor, or family asks you to do

something that is not on the plan of care." Shemia Decl., Ex. 1

(The HCS Policy Manual) at 60; see also Shemia Decl. ¶¶ 3, 7.

The HCS Policy Manual also provides:

> **LIVE-IN SLEEP AND MEAL PERIODS:**
>
> Specifically, under this policy, you are permitted 8
> hrs. for sleep, 5 hrs of which must be uninterrupted,
> and a total of 3 hrs for meals during each 24 hour
> shift you work.
>
> In the event that work prohibits you from receiving 5
> hrs of uninterrupted sleep or a total of 3 hrs for
> meal periods, you must immediately notify your case
> coordinator at HCS in writing using our certification
> form . . . .

Shemia Decl., Ex. 1 at 20. The plaintiff --- who is the

only named plaintiff; no other potential class members have

joined the litigation --- worked for the defendants as a home

health aide from about January 2, 2010 until about December 20,

2010, and from about April 15, 2014 until about April 29, 2016.

Hypolite Decl. ¶ 1. The plaintiff alleges that the defendants

have a policy of refusing to pay their home health aides

overtime wages for any hours worked in excess of 40 hours in a

given workweek in violation of FLSA § 207. Am. Compl. ¶ 75.

The plaintiff alleges that several of the defendants'

practices violated the FLSA. The plaintiff alleges that home

health aides worked 24 hour shifts, but were only compensated
for 13 of those hours. Am. Compl. ¶ 1. The plaintiff alleges
that home health aides that worked for more than one client in a
shift were not compensated for any travel time, Hypolite Decl.
¶¶ 14-17; that she had to eat her meals on-the-job, for which
she was not compensated, Hypolite Decl. ¶ 24; and that she was
not properly compensated for sleeping time because she could not
sleep for five uninterrupted hours without being awakened by her
clients, and because her sleeping arrangements were
uncomfortable. Hypolite Decl. ¶ 6.

   Although her job title was "home health aide," the
plaintiff classifies herself as a "home health aide/maid"
because her daily duties for HCS's clients included "cleaning
the entire house" (including dusting, vacuuming, scrubbing, and
mopping), cooking, doing laundry, preparing three meals a day
and snacks, making the bed, cleaning pots and pans,
loading/unloading the dishwasher, and garbage removal. Hypolite
Decl. ¶¶ 27-34. In addition, the plaintiff claims that she at
least once a week flipped bed mattresses, cleaned refrigerators,
and arranged her client's groceries. Hypolite Decl. ¶¶ 35-37.
The plaintiff claims that she spent at least 30% of her time
working in a "maid capacity" by performing such household work.
Hypolite Decl. ¶ 37.

## IV.

Pursuant to § 207 of the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1). However, "[t]he FLSA contains several express statutory exemptions from the overtime payment requirement." Harper v. Gov't Emps. Ins. Co., 754 F. Supp. 2d 461, 463 (E.D.N.Y. 2010); see also 29 U.S.C. § 213(a). To be exempt from the FLSA's overtime pay requirements, "an employee's 'primary duty' must be the performance of exempt work." 29 C.F.R. § 541.700(a). Whether an employee is exempt "depends less on [the employee's] title, and more on the actual duties performed." Harper, 754 F. Supp. 2d at 463.

The FLSA's overtime pay provisions do not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age of infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary [of Labor]) . . . ." 29 U.S.C. § 213(a)(15). During a portion of the proposed Collective Action Period, the FLSA's implementing regulations provided that:

> [T]he term companionship services shall mean those
> services which provide fellowship, care, and
> protection for a person who, because of advanced age

8

or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.

29 C.F.R. § 552.6 (1975) (the "Home Health Aide Exemption"). Home health aides were thus excluded from the FLSA's overtime provisions unless the aide could show that the aide's general household work exceeded 20% of the total weekly hours worked. See, e.g., Cowell v. Utopia Home Care, Inc., No. 14-CV-736 (LDW)(SIL), 2016 WL 4186976, at *4 (E.D.N.Y. Aug. 8, 2016). Home health aides employed by third party employers were also exempt from the FLSA. See Severin v. Project Ohr, Inc., No. 10 CIV. 9696 (DLC), 2012 WL 2357410, at *5 (S.D.N.Y. June 20, 2012). The Home Health Aide Exemption has since been narrowed; however, the parties dispute the date of the change.

After a notice and comment period, in October 2013, the Department of Labor (the "DOL") issued new interpretive regulations --- specifically, the "Third Party Employer" regulation, 29 C.F.R. § 552.109 (2015), and a revised definition of "Companionship services," 29 C.F.R. § 552.6 (2015) --- intended to narrow the Home Health Aide Exemption, which would bring more home health aides within the scope of the FLSA. See Application of the Fair Labor Standards Act to Domestic Service,

9

78 Fed. Reg. 60454 (Oct. 1, 2013) (codified at 29 C.F.R. Pt. 552). The regulations were to take effect on January 1, 2015. 78 FR 60454-01.

Before that date, a group of plaintiffs challenged the new rules on the basis that the DOL had misinterpreted the FLSA and exceeded its rulemaking authority. The United States District Court for the District of Columbia agreed, vacating the Third Party Employer regulations and the revised definition of Companionship services. See Home Care Ass'n of Am. v. Weil, 76 F. Supp. 3d 138, 140 (D.D.C. 2014); Home Care Ass'n of Am. v. Weil, 78 F. Supp. 3d 123 (D.D.C. 2015). On appeal, the Court of Appeals for the District of Columbia vacated the district court's vacatur orders. Home Care Ass'n of Am. v. Weil, 799 F.3d 1084, 1087 (D.C. Cir. 2015). After that decision, the DOL issued guidance stating:

> The Department's Final Rule amending regulations regarding domestic service employment, 78 FR 60454, which extends FLSA protections to most home care workers, had an effective date of January 1, 2015. The Department has not begun enforcement of the Final Rule both because of its time-limited non-enforcement policy, 79 FR 60974 (October 9, 2014), and because it is a party to a federal lawsuit regarding the amended regulations in which the U.S. District Court for the District of Columbia issued opinions and orders vacating the rule's major provisions. . . . The Court of Appeals opinion will become effective when that court issues a mandate directing the district court to enter a new judgment in favor of the Department. Although it is not yet known on what date the mandate will issue, the Department will not bring enforcement actions against any employer for violations of FLSA

obligations resulting from the amended domestic service regulations for 30 days after the date the mandate issues.

Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement, 80 Fed. Reg. 55029 (Sept. 14, 2015) (codified at 29 CFR Part 552).

The plaintiff argues that the Home Health Aide Exemption was narrowed on January 1, 2015 when the new interpretative rules were originally scheduled to take effect, while the defendants argue that the Exemption was narrowed when the Court of Appeals for the District of Columbia issued its mandate on October 13, 2015. The overwhelming majority of well-reasoned opinions have concluded that the Home Health Aide Exemption was narrowed on January 1, 2015. See, e.g., Kinkead v. Humana, Inc., 206 F. Supp. 3d 751, 755 (D. Conn. 2016); Evans v. Caregivers, Inc., No. 3:17-CV-0402, 2017 WL 2212977, at *3 (M.D. Tenn. May 19, 2017); Guerrero v. Moral Home Servs., Inc., No. 16-23051-CIV, 2017 WL 1155885, at *3 (S.D. Fla. Mar. 27, 2017); Dillow v. Home Care Network, Inc., No. 1:16-CV-612, 2017 WL 749196, at *4 (S.D. Ohio Feb. 27, 2017); Cummings v. Bost, Inc., 218 F. Supp. 3d 978, 987 (W.D. Ark. 2016); Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y, 215 F. Supp. 3d 805, 810 (S.D. Iowa 2016); Collins v. DKL Ventures, LLC, 215 F. Supp. 3d 1059, 1067 (D. Colo. 2016); but see Bobbi Lee v. Caregivers for

Indep., LLC, No. 16-cv-946, 2017 WL 2666413, at *5 (S.D. Ohio
June 21, 2017).[2]

The reasoning of these cases is persuasive. "[T]he 'general
rule of long standing' [is] that 'judicial precedents normally
have retroactive as well as prospective effect.'" Margo v.
Weiss, 213 F.3d 55, 60 (2d Cir. 2000) (citations and internal
quotation marks omitted). "The ruling of the Supreme Court or of
a federal court of appeals within its geographical jurisdiction
'is the controlling interpretation of federal law and must be
given full retroactive effect in all cases still open on direct
review and as to all events, regardless of whether such events
predate or postdate [the] announcement of the rule.'" Kinkead,
206 F. Supp. 3d at 754 (quoting Harper v. Virginia Dep't of
Taxation, 509 U.S. 86, 97 (1993)). The vacatur order of the
Court of Appeals for the District of Columbia nullified and
voided the vacatur orders of the United States District Court
for the District of Columbia, as if they never happened. See
Lewis-Ramsey, 215 F. Supp. 3d at 810.

The defendants argue that they relied upon the original
vacatur orders in deciding how much to pay their home health
aides, but "any such reliance would not justify a non-

---

[2] As noted by the court in Guerrero, 2017 WL 1155885, at *2 n.6
(collecting cases), several courts have indicated a date for the
change without substantively analyzing the issue. See also,
e.g., Cowell, 2016 WL 4186976, at *4 n.1 (stating that the
effective date was January 1, 2015).

retroactive application of the D.C. Circuit's ruling." Kinkead, 206 F. Supp. 3d at 754; see also Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91, n.7 (2d Cir. 2009) (despite the fact that "the parties relied on [prior overruled decisions] when structuring their transactions, the Supreme Court has held that a reliance interest is insufficient to overcome the presumption of retroactivity"); Guerrero, 2017 WL 1155885, at *4 ("The more equitable holding is that any party involved in ongoing litigation should be prepared to be responsible for the implications of a retroactive ruling not in its favor at the appellate level." (quoting Dillow, 2017 WL 749196, at *4)). Moreover, the DOL announced the rule changes in 2013, giving the defendants "ample notice of the obligations to be imposed by the new rule." Kinkead, 206 F. Supp. 3d at 755. While the defendants argue otherwise, the fact that the DOL has in its discretion decided to delay enforcement of the rules has no effect on when the rules actually became effective or on private enforcement actions. Guerrero, 2017 WL 1155885, at *4 (citing Lewis-Ramsey, 215 F. Supp. 3d at 810); see also Swede v. Rochester Carpenters Pension Fund, 467 F.3d 216, 220-21 (2d Cir. 2006).

The recent decision in Bobbi Lee, 2017 WL 2666413, is representative of the position of the minority of courts that have concluded that the Court of Appeals for the District of Columbia's vacatur order does not have retroactive effect. Bobbi

13

Lee relied heavily upon the retroactivity analysis by the court
in MCI Telcoms. Corp. v. GTE Northwest. Inc., 41 F. Supp. 2d
1157, 1161-67 (D. Or. 1999). Similar to this case, at issue in
that case were FCC regulations that the Court of Appeals for the
Eighth Circuit had vacated and stayed before they could take
effect; the vacatur and stay orders were later reversed by the
Supreme Court. See id. at 1161 (citing AT & T Corp. v. Iowa
Utilities Bd., 525 U.S. 366, 371 (1999); Iowa Utilities Bd. v.
F.C.C., 96 F.3d 1116 (8th Cir. 1996) (per curiam)). MCI declined
to apply the FCC regulations from the date that they were
originally scheduled to take effect because the "court
perceive[d] a crucial distinction between applying a new
interpretation of a law that admittedly was in effect during the
relevant time period, versus applying a substantive regulation
that never was in effect to begin with," a distinction which
Bobbi Lee, 2017 WL 2666413, at *5 (quoting MCI, 41 F. Supp. 2d
at 1163), and the minority have found persuasive. See Bangoy v.
Total Homecare Sols., LLC, 15-CV-573, 2015 WL 12672727, at *3
(S.D. Ohio Dec. 21, 2015); see also Sanchez v. Caregivers
Staffing Servs., Inc., No. 15-CV-01579, 2017 WL 380912, at *3
(E.D. Va. Jan. 26, 2017), appeal docketed, No. 17-1244 (4th Cir.
Feb. 23, 2017).

    The distinction drawn by MCI, however, has been rejected by
the Court of Appeals for the Ninth Circuit and the Court of

Appeals for the Fourth Circuit, which each held that the FCC rules at issue took effect as of the date originally scheduled notwithstanding the initial, though erroneous, stay and vacatur orders. See US W. Commc'ns, Inc. v. Jennings, 304 F.3d 950, 956-58 (9th Cir. 2002) (reversing U.S. W. Commc'ns, Inc. v. Jennings, 46 F. Supp. 2d 1004, 1009 (D. Ariz. 1999), which had relied on MCI for the proposition that the FCC regulations did not take effect until the stay and vacatur orders were reversed); GTE S., Inc. v. Morrison, 199 F.3d 733, 740-41 (4th Cir. 1999) ("[T]he Supreme Court's determination that the FCC has jurisdiction to issue pricing rules would appear to compel the conclusion that the FCC always had such jurisdiction and that the rules apply as of the effective date originally scheduled."). MCI is therefore not persuasive.

Accordingly, the Home Health Aide Exemption was narrowed on January 1, 2015. It is undisputed that the defendants did not attempt to comply with the revised regulation on January 1, 2015. Rather, the defendants only began to comply by paying HCS's employees overtime in accordance with the revised regulation on October 13, 2015. Hence, for the period of January 1, 2015 to October 13, 2015, the plaintiff has demonstrated that she and others like her were treated in a similar fashion under a common policy, namely, the defendants' refusal to apply the revised Home Health Aide Exemption pursuant to which the

defendants began paying overtime to the plaintiff and others like her as of October 13, 2015. While the defendants argue that there are still insuperable differences among members of that collective class, that argument was not developed in the papers and must await further development after notice is given to the potential members of the collective class.

For the period before January 1, 2015, the plaintiff cannot demonstrate the factual nexus between herself and the proposed class of potential opt-in plaintiffs. The plaintiff's FLSA claims for that period are primarily predicated on demonstrating that she was not subject to the pre-January 1, 2015 version of the Home Health Aide Exemption, see 29 C.F.R. § 552.6 (1975), because she spent more than 20% of her time performing general household work unrelated to the provision of care.

Under that version of the Home Health Aide Exemption, "[C]ourts distinguish[ed] between household work performed during the course of providing 'fellowship, care, and, protection' for a patient and 'general household work' unrelated to the provision of care." Cowell, 2016 WL 4186976, at *4 (collecting cases). Certain activities, such as cleaning the bathroom or dry cleaning, fell within the former category and were exempt, while certain other "heavy cleaning" activities, such as garbage removal and cleaning refrigerators, fell within

the latter category and were not exempt. See id. (citing DOL, Opinion Letter, FLSA, 1995 WL 1032475, at *1 (Mar. 16, 1995)).

The inquiry of whether the pre-January 1, 2015 Home Health Aide Exemption applied to the plaintiff, let alone whether it applied to any opt-in plaintiff, is thus highly "fact-specific." Severin, 2012 WL 2357410, at *3. Judge Cote in Severin, 2012 WL 2357410, at *3, and Magistrate Judge Locke in Cowell, 2016 WL 4186976, at *6, each concluded that conditional certification was not warranted in cases involving materially similar facts.[3] The plaintiff makes no meaningful effort to distinguish these cases, which are on point.

The plaintiff asserts that, during the proposed Collective Action Period, the defendants "employed at least 40 other individuals, like [the plaintiff], in positions as home health aides/maids," Hypolite Decl. ¶ 40, but provides no basis from which to conclude that any other potential opt-in plaintiffs are similarly situated with respect to the Home Health Aide Exemption. See Ali v. N.Y. City Health & Hosps. Corp., No. 11 CIV. 6393 (PAC), 2013 WL 1245543, at *2 (S.D.N.Y. Mar. 27, 2013)

---

[3] Judge Cote in Severin, 2012 WL 2357410, denied the plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. That Opinion and Order discusses her rationale for her previous denial of a motion for conditional certification in an unpublished oral opinion dated December 16, 2012. See id. at *2-3; Perlman Decl., Ex. 3 (transcript of oral opinion in Severin denying motion for conditional certification); see also Cowell, 2016 WL 4186976, at *6 n.2.

("[T]he mere classification of a group of employees --- even a large or nationwide group --- as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." (citation omitted)). The plaintiff has offered no evidence about the work distribution of other home health aides employed by the defendants. As in Severin and Cowell, "The kinds of jobs that the [home health aides] hold are individualized . . . . They each have separate patients or clients; they have to tailor their duties [and] their hours . . . to the needs of the individual client[s] . . . ." Cowell, 2016 WL 4186976, at *6 (quoting Severin, 2012 WL 2357410, at *3).

Based on the submissions, there is no feasible way to determine which potential opt-in plaintiffs would be subject to the pre-January 1, 2015 Home Health Aide Exemption. See Severin, 2012 WL 2357410, at *3. The plaintiff does not even provide a basis to determine whether she herself spent in excess of 20% of her time performing the type of "heavy cleaning" activities that would make her exempt from the Exemption because she fails to distinguish between "heavy cleaning" activities and other types of "household" activities that fell within the Exemption. See Hypolite Dec. ¶ 37.

18

Accordingly, conditional certification for the period
before January 1, 2015, would not "promote judicial efficiency,
one of the underlying policies of the collective action
mechanism." Cowell, 2016 WL 4186976, at *7 (citing Lynch v.
United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367 (S.D.N.Y.
2007)). Instead, a hypothetical class of thousands of
plaintiffs, as the court in Cowell observed,

> would leave the Court having to conduct thousands of
> mini-trials to resolve the nature of each Plan of
> Care, the reason for each task assigned in each Plan
> of Care in order to determine whether it counts for
> the purpose of the twenty percent calculation, how
> much time was regularly spent on each task, and then
> the total amount of time spent on all tasks in order
> to determine whether each class member is ultimately
> exempt. Such an outcome is exactly what the collective
> action mechanism was designed to avoid.

Id. Nor has the plaintiff met her modest factual burden at
this stage of demonstrating that other home health aides were
(allegedly like herself) at any point during the proposed
Collective Action Period not properly compensated for on-the-job
travel, sleep, or meal time. The plaintiff's declaration and
pleadings are self-focused; they offer no nonspeculative basis
to assess the defendants' compensation practices with respect to
any other home health aide. The plaintiff's purported
conversations with three other home health aides are recounted
in conclusory fashion. Hypolite Decl. ¶ 49. Such
"uncorroborated, anecdotal hearsay about the hours [the

19

plaintiff believes others worked]" is insufficient to justify conditional certification. Ali, 2013 WL 1245543, at *3; see also, e.g., Sanchez v. JMP Ventures, L.L.C., No. 13 CIV. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) ("[A] list of generalized allegations that have been molded into a declaration [that] reads similarly to the complaint . . . . are precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient to conditionally certify a class."); Fernandez v. Wells Fargo Bank, N.A., No. 12 CIV. 7193 (PKC), 2013 WL 4540521, at *17 (S.D.N.Y. Aug. 28, 2013) ("[P]laintiffs' declarations omit key details concerning the identities of speakers and participants, and even approximate dates, when instructions allegedly were issued concerning off-the-clock work and denial of overtime.").

Nor has the plaintiff met the showing at this stage that she and other home health aides "together were victims of a common policy or plan that violated the law," Myers, 624 F.3d at 555, for the period after October 13, 2015. At oral argument, the plaintiff conceded that the evidence shows that, in reaction to the mandate issued by the Court of Appeals for the District of Columbia in Weil, the defendants began paying their home health aides overtime in compliance with the FLSA. See Rand

Reply Decl., Ex. B (paystubs from the period reflecting that the defendants were paying FLSA overtime).

However, the plaintiff has met her burden for the period between January 1, 2015 and October 13, 2015. For that period, the defendants concede that they did not pay their home health aides overtime under the FLSA despite the new regulation promulgated by the DOL, which by its terms became effective on January 1, 2015. The defendants apparently relied on the vacatur orders of the United States District Court for the District of Columbia. See Defs.' Sur-reply Mem. at 3-4; see also Rand Reply Decl., Ex. A (paystubs from the period reflecting that the defendants were not paying FLSA overtime). The defendants' reliance on the vacatur orders was misplaced.

Accordingly, the motion for conditional certification is **granted** for the period from January 1, 2015 to October 13, 2015. The parties represent that they agreed upon a notice form pending the outcome of this motion. See Perlman Decl., Ex. 1; see also Perlman Decl., Ex. 2. The parties must amend the proposed notice form to be consistent with the conditional certification period of January 1, 2015 to October 13, 2015.

In her papers, the plaintiff asked that the defendants conspicuously post any notice and disclose in both electronic and paper format the names and last-known addresses of current

21

and former home health aides who are potential plaintiffs. The defendants did not oppose the requests.

The parties should meet and confer to determine if there are any other disputes concerning the terms of the notice or its method of dissemination. If there are disagreements, the parties should send a letter to the Court. The parties should send any such letter, and the proposed amended notice, to the Court within **fourteen (14)** days of the entry of this Opinion and Order. Alternatively, the parties should submit a proposed stipulation setting out the proposed notice and the terms of its distribution.

The plaintiff asks that the notice period be extended to six years for those home health aides who might have state law claims against the defendants. Because the plaintiff has only mustered facts sufficient to justify a more recent and limited collective action period, that request is denied.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the plaintiff's motion for conditional certification is **denied in part and granted in part** and the defendants' motion to strike is **denied**. The Clerk is directed to close all pending motions.

**SO ORDERED.**

```
Dated:    New York, New York
          June 23, 2017         _____/s/_____
                                     John G. Koeltl
                             United States District Judge
```