William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,

                                        Plaintiffs,

        v.                                                      Case No. 1:16-cv-04922
                                                                (JGK) (JLC)

HOME HEALTH CARE SERVICES OF NEW YORK
INC. d/b/a "HCS Healthcare", AGNES SHEMIA, and
JOHN DOES #1-10,

                                        Defendants.

---

# PLAINTIFFS' MOTION ON CONSENT FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE INCENTIVE AWARD

Dated: November 16, 2018

                        William C. Rand, Esq. (WR-7685)
                        LAW OFFICE OF WILLIAM COUDERT RAND
                        501 Fifth Avenue, 15th Floor
                        New York, New York 10017
                        (Phone) (212) 286-1425; (Fax) (646) 688-3078
                        Attorney for Plaintiffs

## TABLE OF CONTENTS

Page

I.   INTRODUCTION…………..…………………………………………………………..   1

II.  ATTORNEYS' FEES AND EXPENSES………………………………………………….   1

III. ARGUMENT…………………………………………………………………………   2

    A.   It is Appropriate to Certify the Settlement Class for Purposes

    of the Settlement………………………………………..………………………………….   2

    B.   The Settlement Meets the Standards for Judicial Approval of

    Class Action Settlements and Should Be Approved……………………………….   4

    C.   Likelihood of Success at Trial…………………………………………….   6

    D.   The Range of Possible Recovery and the Recovery Achieved ………………   6

    E.   The Complexity, Expense, and Duration of the Litigation…………………...   8

    F.   The Substance and Amount of Opposition to the Settlement………………...   9

    G.   The Stage of Proceedings at Which Settlement Was Achieved………………   10

    H.   The Notice Program Approved by the Court was Effectuated………………...   10

IV.  CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED……………………....   11

    A.   Negotiated Attorney's Fee Agreements Are Favored In
    Class Action Settlements…………………………………………..……………   18

    B.   The Quality of Representation…………………………………………………...   20

    C.   The Agreed-Upon Fee Is Reasonable Under a Percentage/Lodestar
    Cross-Check Analysis……………………………………………………………   21

    D.   Class Counsel's Expenses Were Reasonably and Necessarily Incurred…........   30

V.   THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS ARE
    REASONABLE.………………………………………………………………………   30

VI.  CONCLUSION……………….…………………………………………………………   31

i

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

In re Alloy Inc. Sec. Lit.
    2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004)………………………………………….   14

Amchen Prods. v. Windsor
    521 U.S. 591, 501, 620 (1997)………………………………………………………   2

In re Am. Bank Note Holographic, Inc. Sec. Litig.
    127 F. Supp. 418 (S.D.N.Y. 2001)…………………………………………………   16

In re Arakis Energy Corp. Sec. Litig.
    199 WL 1021819 (E.D.N.Y. 1999)…………………………………………………   16

Behrens v. Wometco Enterprises, Inc.
    118 F.R.D. 538 (S.D. Fla. 1988), aff'd 899 F. 2d 21 (11th Cir. 1990)……………   4

Berry v. School Dist. of City of Benton Harbor
    184 F.R.D. 93, 98 (W.D. Mich. 1998)………………………………………………   6

M. Berenson Co. v. Faneuil Hall Marketplace, Inc.
    671 F. Supp. 819, 829 (D. Mass. 1987)……………………………………………   18

Blanchard v. Bergeron
    489 U.S. 87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989)………………………………   14

Blum v. Stenson
    465 U.S. 886, 895 n.11,900 (1984)…………………………………………………   13

In re Boesky Secs. Litig.,
    888 F. Supp. 551, 562 (S.D.N.Y. 1995)……………………………………………   29

Cagan v. Anchor Sav. Bank FSB
    1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990)……………………………   8

Carroll v. United Compucred Collections, Inc.
    399 F. 3d 620, 625-626 (6th Cir. 2005)……………………………………………   2

Chambless v. Masters, Mates, & Pilots Pension Plan
    885 F. 2d 1053, 1058,1059 (2d Cir. 1989)…………………………………………   13

City of Riverside v. Rivera,
    477 U.S. 561 (1986)……………………………………………………………………   14

Cohan v. Columbia Sussex Mgmt., LLC,
    2018 U.S. Dist. Lexis 170192 (Sept. 28, 2018 E.D.N.Y.)…………………………..   23

Coleman v. DeFranco Pharmacy, Inc.,
    2018 U.S. Dist. LEXIS 129140, 2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018)..   21

In re Continental Illinois Securities Litigation,
    962 F. 2d 566,568-570 (7th Cir. 1992)…………………………………………..   19

In re Copley Pharmaceutical, Inc.,
    1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998)……………….……………………   21

Cotton v. Hinton,
    559 F. 2d 1326, 1331 (5th Cir. 1977)………………………………………………   4,5

Cowan v. Prudential,
    728 F. 2d 522 (2d Cir. 1991)……………………………………………………   15

Detroit v. Grinnell Corp.,
    495 F.2d 448, 470 (2d Cir. 1974)…………………………………………………   17

Dolgow v. Anderson,
    472, 494 (E.D.N.Y. 1968)……………………………………………………………   18

Dornberger v. Metropolitan Life Ins. Co.,
    203 F.R.D. 118. 125 (S.D.N.Y. 2001)……………………………………………   31

Dunlap-McCuller v. Riese Org.,
    980 F. 2d 153 (2d Cir. 1992)………………………………………………………   15

Escobar v. Fresno Gourmet Deli Corp.,
    No. 16-CV-6816 (PAE), 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016)…….   21

Fears v. Wilhelmina Model Agency, Inc.,
    2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005)……………………..   31

In re Four Seasons Sec. Laws Litig.,
    58 F.R.D. 19, 36, 37 (W.D. Okla. 1972)…………………………………………   7

Frank v. Eastman Kodak Co.,
    228 F.R.D. 174, 187 (W.D.N.Y. 2005)……………………………………………   31

In re General Motors Corp. Liab. Litig. (GM Pick Up Trucks),
    55 F. 3d 768, 812 813,813-822 (3d Cir. 1995)………………...…………………   12-16

Gierlinger v. Gleason,
160 F. 3d 858, 882 (2d Cir. 1998)…………………………………………………….. 15

Goldberger  v. Integrated Resources, Inc.,
209 F. 3d 43,47,50,51,53 (2d Cir., 2000)…………………………………….. passim

Grant v. Martinez,
973 F. 2d 96, 101 (2d Cir. 1997)………………………………………………..... 14

Hall v. Cole,
412 U.S. 1,5 n.7 (1973)………………………………………………………… 17

Hanlon v. Chrysler Corp.,
150 F. 3d 1011 (9th Cir. 1998)………………………………………………… 2

Hensley v. Eckerhart,
461 U.S. 424, 437 (1983)……………………………………………………… 19

Hernandez v. JRPAC Inc.,
2017 WL 66325 (S.D.N.Y. Jan. 6, 2017)……………………………………… 29

Hicks v. Morgan Stanley & Co.,
01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29)
(S.D.N.Y. Oct. 24, 2005)……………………………………………………28, 30

Johnson v. Brennan,
2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)……24-29

Johnson v. Georgia Highway Express, Inc.,
488 F. 2d 714, 720 (5th Cir. 1974)……………………………………………….. 19

Kaplan v. Rand,
192 F.3d 60, 70 (2nd Cir. 1999)……………………………………………… 17

In re King Res. Co Sec. Litig.,
420 F. Supp. 610, 625 (D. Colo. 1976)………………………………………… 6

Kopet v. Esquire Realty Co.,
 523 F. 2d 1005, 1008 (2d Cir. 1975)……………………………………………. 17

Lazy Oil Co. v. Witco Corp.
95 Fed. Supp. 2d 290 (W.D. Pa. 1997)…………………………………………… 8

In re Lloyd's Am. Trust Fund Litig.
2002 WL 3166577 (S.D.N.Y. Nov. 26, 2002)………………………………… 16-18

In re Lupron ® Mktg. and Sales Practices Litig.
        No. 01-CV-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14
        (D.Mass. Aug. 17 2005)……………………………………………………………        20

Malchman v. Davis,
        761 F. 2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986)……….        19

Maley v. Del Global Tech. Corp..
        186 F. Supp. 2d 358,369,373 (S.D.N.Y. 2002)…………………………………20, 23, 29

Manners v. American General Life Ins. Co.
        1999 U.S. Dist. LEXIS 22880 at *55 (M.D. Tenn., Aug. 11, 1999)………………        6

Matheson v. T-Bone Rest., LLC
        2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)…………………………………………..        12

McBean v. City of New York,
        233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003 (S.D.N .Y.2006)……………        20

McDaniel v. Cnty. of Schnectady
        595 F.3d 411 (2d Cir. 2010)……………………………………………………………        12

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, et al.
        450 F.3d 91 (2d Cir. 2006)……………………………………………………………        13

Miele v. New York State Teamsters Conference Pension & Ret. Fund,
        831 F. 2d 407, 409 (2d Cir. 1987)……………………………………………………        13

In re NASDAQ Market-Makers Antitrust Litig.
        187 F.R.D. 465, 484,485,489 (S.D.N.Y. 1998)…………………………………14-15, 30

Orchano v. Advanced Recovery, Inc.,
        107 F. 3d 94, 98-99 (2d Cir. 1997)……………………………………………………        15

In re Orthopedic Bone Screw Products Liab. Litig.,
        176 F.R.D. 158, 185 (E.D. Pa. 1997)…………………………………………………        10

In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,
        148 F. 3d 283,318,319 (3rd Cir. 1998)…………………………………………….......        2

In re Prudential Sec. Inc. Ltd., P'ships Litig.,
        985 F. Supp. 410, 417  (S.D.N.Y. 1997)…………………………………………...        17

Quartino v. Tiffany & Co.,
        166 F. 3d 422,426 (2d Cir. 1999)…………………………………………………..  14-15

Ressler v. Jacobson,

822 F. Supp. 1551, 1553 (M.D. Fla. 1992……………………………………………. 7

In re RJR Nabisco, Inc. Sec. Litig.
No. 88 Civ. 7905 (MBM), 1992 WL 210138,
(S.D.N.Y. Aug. 24 1992) 1992 U.S. Dist. LEXIS 12702……………..…………15,18,30

Ruiz v. McKaskle
724 F. 2d 1149 (5th Cir. 1984)……………………………………………..… 5

Savoie v. Merchants Bank,
166 F. 3d 456, 460 (2d Cir. 1999)………………………………………………… 20

Spann v. AOL Time Warner,
02 Civ. 8238 (DLC) (S.D.N.Y., 2005)……………………………………………14, 31

Steiner v. Williams,
99 Civ. 10186 (JSM),  2001 WL 604035 (S.D.N.Y. 2001)………………………… 15

Strougo v. Bassini
258 F. Supp. 2d 358 (S.D.N.Y. 2002)……………………………………………….. 15

Susquehanna Corp. v. Korholz
84 F.R.D. 316, 322 (N.D. Ill. 1979) ……………………………………………... 6

TBK Partners, Ltd. v. Western Union Corp.,
675 F. 2d 456, 463-64 (2d Cir. 1982)……………………………………………….. 7

Teachers' Ret. Sys. v. A.C.L.N., Ltd.,
Master File No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *11
(S.D.N.Y. May 14, 2004)…………………………………………………………….. 16

In re Twinlab Corp. Sec. Litig.,
187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002)…………………………………………….. 16

In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,
724 F. Supp. 160 (S.D.N.Y. 1989)………………………………………………….... 15

In re United States Oil and Gas Litig.,
967 F. 2d 489, 493 (11th Cir. 1992)………………………………………………… 4

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
396 F.3d 96, 121 (2d Cir. 2005)…………………………………………………22, 28

In re Warner Comms.Sec. Litig.,
618 F. Supp. 735, 749 (S.D.N.Y. 1985)……………………………………………… 20

Weiss v. Mercedes-Benz of N. Am. Inc.,

899 F. Supp. 1297, 1304 (D.N.J. 1995), aff'd 66 F.3d 314 (3d Cir. 1995)............   30

Whitford v. First Nationwide Bank
        147 F.R.D. 135 (W.D. Ky. 1992)……………………………………………………..   6

Williams v First Nat'l Bank,
        216 U.S. 582, 585 (1910)…………………………………………………………….   4

Willix v. Healthfirst, Inc.,
        2011 U.S. Dist. LEXIS 21102, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)…….  23,27

In re Worldcom, Inc. ERISA Lit.,
        339  F. Supp. 2d 561 (S.D.N.Y. 2005)…………………………………………..   15

Young v. Katz
        447 F. 2d 432, 433 (5th Cir. 1971)…………………………………………………..   5

Zhi Li Zhong v. Rockledge Bus Tour Inc.,
        18 Civ. 454 (RA), 2018 U.S. Dist. LEXIS 131829, 2018 WL 3733951
        (S.D.N.Y. Aug. 6, 2018)……………………………………………………………   21

**STATUTES, RULES AND REGULATIONS**

Class Action Fairness Act
28 U.S.C. § 1712 (b) (2)……………………………………………………………………   20

Fair Labor Standards Act (FLSA)………………………………………………………  passim

Federal Rules of Civil Procedure
Rule 23.. …………………………………………………………………………………..  passim

29 U.S.C.  §216 (b)…………………………………………………………………………..   14

N.Y. Lab. Law §198…………………………………………………………………………   14

**PLAINTIFFS' MOTION ON CONSENT FOR FINAL APPROVAL OF
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AN AWARD OF
ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND
REPRESENTATIVE INCENTIVE AWARD**

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Allison Hypolite

("Plaintiff" or "Named Plaintiff") applies to this Court for Final Approval of Settlement,

Certification of Settlement Class, An Award of Attorney's Fees and Expenses and a

Representative Incentive Award in this class action wage litigation as more specifically set forth

previously in Plaintiffs' Application for Preliminary Approval ("Plaintiffs' Motion for

Preliminary Approval").

## I.      INTRODUCTION

Plaintiffs submit this memorandum in support of this motion for formal approval of the

settlement reached in this litigation.  By order dated July 17, 2018, the Hon. Judge John G.

Koeltl, United States District Court, Southern District of New York, granted preliminary

approval to the settlement and conditionally certified this matter as a class action ("Preliminary

Order").  The settlement is in the sum of $4,000,000.

## II.     ATTORNEY'S FEES AND EXPENSES

William C. Rand, acting as Class and Collective Counsel, seeks a legal fee award in the

amount of 30% of the settlement amount equal to One Million and Two Hundred Thousand

Dollars ($1,200,000) and reimbursement of his expenses equal to $6,165.  This amount will be

paid to Plaintiffs' Counsel if the Court approves the fairness of the settlement agreement and the

fees and expenses.  Defendants have agreed to pay these fees and expenses and have agreed not

to oppose the fairness of the fee.  See Paragraph 7(a) of the Settlement Agreement.

## III.     ARGUMENT

### A.     It Is Appropriate To Certify the Settlement Class for Purposes of the Settlement

Certification of the Settlement Class is appropriate to effectuate a settlement of Plaintiff's and Settlement Class Members' claims against Defendants.  Indeed, the benefits of the Settlement can be realized only through the certification of a Settlement Class, and the Supreme Court of the United States has emphatically confirmed the viability of such settlement classes. See e.g., Amchem Prods. v. Windsor, 521 U.S. 591 (1997).  So, too, have the federal appeals courts. See e.g., Carroll v. United Compucred Collections, Inc., 399 F.3d 620, 625-626 (6th Cir. 2005); In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions, 148 F.3d 283 (3d Cir. 1998); Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998).

As Plaintiffs have detailed in Plaintiffs' motion for preliminary approval of the Settlement, the Settlement Class readily meets the criteria of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  The Class is sufficiently numerous, the commonality requirement also is easily met, as well as typicality.  The claims of the representative Plaintiff and each of the Class Members is predicated on the alleged failure of Defendants to pay them minimum, regular and/or overtime wages.  In order to prevail, therefore, the named Plaintiff and each member of the Class will be required to make the same factual presentation and legal argument with respect to the common questions of liability, regardless of the individual circumstances which may affect their ability to prove individual causation and amount of damages on an individualized basis.

The adequacy requirement also is satisfied easily. The representative Plaintiff has zealously pursued the claims against the Defendants for their alleged wrongful conduct.  Given the identical aspects of claims among the Plaintiff and the Class Members set forth above, there

2

is no potential for conflicting interests in this action.  The Plaintiff possesses the same interests

and has suffered the same injury as other Class Members.  Plaintiff and Class Members are

seeking to vindicate identical interests.  At the same time, Class Counsel has diligently pursued

the interests of Plaintiff and the Class.  Class Counsel is a well regarded member of the legal

community, has broad experience in class action lawsuits and, in particular, has broad experience

in complex wage and hour litigation.

The predominance requirement of Rule 23(b)(3) is met as well.  For example, all of

Plaintiff's and Class Members' claims for compensatory relief are founded upon a common legal

theory of Defendants' failure to comply with the NY Labor Law and/or the FLSA.  Here, where

Plaintiff's and the Class Members' claims are premised upon their employment by Defendants

and alleged labor law violations, and where each has the opportunity to obtain the same type of

relief under the Settlement or to exercise the right to pursue litigation outside the Settlement,

there can be little doubt that predominance is sufficiently demonstrated and that certification is

appropriate.

Finally, it is clear that resolution of the Plaintiff's and Settlement Class Members' Claims

by class wide settlement is superior to individual adjudication of the Settlement Class Members'

claims for compensatory relief.  In particular, the Settlement provides Plaintiff and Settlement

Class Members with an ability to obtain predictable, certain and defined compensatory relief

promptly and contains well defined administrative procedures to assure due process in the

application of the Settlement to each individual claimant including, the right to "opt-out."  By

contrast, individualized litigation carries with it great uncertainty, risk and costs, and provides no

guarantee that the injured Plaintiff and Settlement Class Members will obtain necessary and

timely compensatory relief at the conclusion of the litigation process.  Settlement also will

relieve judicial burdens that would be caused by repeated adjudication of the same issues in

many individualized trials against Defendants.

For these reasons, and given that the Court already has conditionally certified the Settlement Class, the Court should finally certify the Settlement Class.

**B.**     **The Settlement Meets the Standards for Judicial Approval of Class Action Settlements and Should Be Approved.**

The Settlement before this Court, reached through arms-length negotiations, resolves this dispute and provides Settlement Class Members with relief that potentially equals or surpasses what could be achieved through trial.  The Settlement should therefore be readily approved by the Court, especially considering the well-settled policy favoring the settlement of cases. Williams v. First Nat'l Bank, 216 U.S. 582, 585 (1910) ("[c]ompromises of disputed claims are favored by the courts.").  This policy applies with particular force to class-action lawsuits, the complexity and expenses of which impose special burdens borne by the judicial system as well as the litigants.  In re United States Oil and Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); see also, Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").  Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice…" Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 538 (S.D. Fla. 1988) aff'd, 899 F.2d 21 (11th Cir. 1990).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class-action settlement.  "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find the settlement is fair, adequate and reasonable and not the product of collusion between the parties." Cotton, 559 F.2d at 1330.  In reaching this

determination, the "inquiry should focus upon the terms of the settlement," together with "an analysis of the facts and the law relevant to the proposed compromise." Id. Specifically, the settlement terms should be compared "with the likely rewards the class would have received following a successful trial of the case," subject to qualifications. Id.

"First, the courts, including those in this Circuit, have continuously stressed that it should not be forgotten that compromise is the essence of settlement." Id. As a result, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, "the trial judge ought not try the case in the settlement hearings," nor should the court "make a proponent of a proposed settlement justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained…." Id. To the contrary, "the court must be mindful that inherent in compromise is a yielding of absolutes and an abandonment of highest hopes." Ruiz v. McKaskle, 724 F.2d 1149 (5th Cir. 1984); see also, Young v. Katz, 447 F.2d 432, 433 (5th Cir. 1971) (explaining that a mini-trial on the underlying merits for purposes of approving a settlement "would emasculate the very purpose for which settlements are made").

Second, courts have consistently stressed that in evaluating a settlement in light of the risk of continued litigation, the district court "is entitled to rely upon the judgment of experienced counsel for the parties." Cotton, 559 F.2d at 1330; See also Behrens, 118 F.R.D. at 539 ("The Court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel"). "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." In re King Res. Co. Sec. Litig., 420 F. Supp. 610, 625 (D.Colo. 1976). Third, the courts have stressed that "litigants should be encouraged to determine their respective rights between themselves," and that "[t]here is an overriding public interest in favor of settlement." Cotton, 559 F.2d at 1331.

Finally, in considering the merits of the Settlement, the Court should take into account practical considerations such as the complexity of the case and the expense and likely duration of the litigation.  Susquehanna Corp. v. Korholz, 84 F.R.D. 316, 322 (N.D. Ill.1979).   One of those practical considerations is the vagaries of litigation and the benefits of an immediate recovery as compared "to the mere possibility of relief in the future, after protracted and expensive litigation."  In re King Resources, 420 F. Supp. at 625.  In this respect, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush."  Id.

**C.**      **Likelihood of Success at Trial**

Class Counsel has built a case with a good likelihood of success at trial.  However, as with any litigation, especially class action litigation, were this case to proceed to trial there is the risk and uncertainty that Plaintiff and the Class might not prevail on their claims and/or that their claims would not survive an appeal.  Therefore, consideration of this factor supports the approval of this Settlement.  Furthermore, it would take a significant amount of time to reach the trial, and appeals would inevitably follow, causing additional delay.

**D.**      **The Range of Possible Recovery and the Recovery Achieved**

"A court must balance the amount offered in settlement against the strength of the class action suit."  Whitford v. First Nationwide Bank, 147 F.R.D.135,143 (W.D.Ky. 1992).  Indeed, "[O]ne of the most important factors in assessing the fairness of a settlement agreement is the strength of the plaintiff's case on the merits balanced against the relief offered in the settlement." Manners v. American General Life Ins. Co., 1999 U.S. Dist. LEXIS 22880 AT * 55 (M.D. Tenn.,  Aug. 11, 1999) (Quoting Berry v. School Dist. of City of Benton Harbor, 184 F.R.D. 93,98 (W.D. Mich. 1998).  In making this determination, the Court should make only a "limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement."  Id. (quoting Ressler v. Jacobson, 822 F. Supp.

1551,1553 (M.D. Fla. 1992).

Here, estimated potential exposure for all claims, exclusive of live-in claims and the

Wage Theft Prevention Act (WTPA) claim (which is contingent on prevailing on the live-in

claim), is approximately $4,200,000.  The estimated exposure for the First Claim Allocation

(claim for overtime based on loss of companionship exemption) is approximately $1,800,000

(without liquidated/punitive dames), and the amount allocated for the First Claims settlement is

approximately $1,000,000.  The estimated exposure for the Fourth and Fifth Claims Allocations

(other labor law and Wage Parity claims) is approximately $2,300,000, and the amount allocated

for settlement of these claims is approximately $500,000.  See Rand Declaration at ¶¶26-27, 46.

The live-in claim and related WTPA claim (Second and Third Allocations) could bring

theoretical exposure many times the company's ability to pay.  However, while the theoretical

exposure is high, federal courts have consistently denied such claims, see e.g., Downie v.

Carelink, Inc., No. 16-CV-5868, 2018 WL 3585282, at *8 (S.D.N.Y. July 26, 2018) (collecting

federal authority "uniformly" rejecting such claims).  Accordingly, the risk of loss in relation to

these claims is extremely low, and the allocation of approximately $1,000,000 is therefore

reasonable.  Id.

There is no fixed point above or below which a settlement is or is not fair.  Indeed,  "[t]he

fact that a proposed settlement may only amount to a fraction of the potential recovery does not,

in and of itself, mean that the proposed settlement is inadequate; there is reason why a

satisfactory settlement could amount to a hundredth or even a thousandth part of a single percent

of the potential recovery."  Id. at *57 (quoting TBK Partners, Ltd. V. Western Union Corp., 675

F. 2d 456, 463-64 (2d Cir. 1982).

Here, as in any litigation, Plaintiffs and the Class have no guarantee of success were they

to pursue their claims to trial and there is a significant risk that a large judgment might result in a

bankruptcy filing by defendants.  Here, the significant monetary benefit to Settlement Class Members through the Settlement Fund provides them with a significant remedy for the alleged labor law violations, and provides for payment over 6 years to permit Defendants to use their earnings to accumulate monies to pay the settlement.

Settlement amounts below the claims sought have been approved by Courts, because the simple fact the proposed settlement is a small fraction of the claimed damages is not indicative of an insufficient compromise.  See e.g., Lazy Oil Co. v. Witco Corp., 95 Fed. Supp. 2d 290, 319 (W.D.  Pa. 1997) (court approved settlement amounting to 5.35 percent of damages); In re Four Seasons Sec. Laws Litig., 58 F.R.D. 19,36,37 (W.D. Okla. 1972) ($8 million settlement approved, although claims exceeded $100 million); Cagan v. Anchor Sav. Bank FSB, 1990 U.S. Dist. LEXIS 11450 at *5, (E.D.N.Y., May 17, 1990) (approving $2.3 million class settlement over objections that "best possible recovery would be approximately $121 million"); Behrens, 118 F.R.D. at 542.  ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise."), aff'd, 899 F. 2d 21 (11th Cir. 1990).

Accordingly, this factor weighs in favor of approval of the Settlement.

**E.      The Complexity, Expense, and Duration of the Litigation**

The complexity, expense, and likely duration of the litigation are major factors to be considered in evaluating the reasonableness of a settlement.  "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F. 3d 768, 812 (3d Cir. 1993).  It is undeniable that were this litigation to continue, Defendants would actively and aggressively litigate this action, conceding nothing, and asserting their various affirmative defenses.  Thus, the costs of proving the case against the Defendants would be substantial, and absent final approval

of the Settlement, these costs would quickly escalate.

Accordingly, the complexity and expense of this litigation, and the expected duration of advancing the case to trial and through appeal in the absence of settlement weigh heavily in favor of final approval of the Settlement.  <u>See</u> <u>e.g.</u>, <u>In re Prudential</u>. ("The court found that litigation would require expensive and time consuming discovery, would necessitate the use of several expert witnesses, and would not be completed for years.  Consequently, the court concluded this factor weighed in favor of settlement.  We agree.").  The proposed Settlement grants Class Members timely relief without their having to endure the risk, complexity, duration and expense inherent in continuing this action.

Accordingly, this factor is satisfied.

### F.   The Substance and Amount of Opposition to the  Settlement

This factor "attempts to gauge whether the members of the class support the settlement." <u>See</u> <u>e.g.</u>, <u>In re Prudential</u> 148 F. 3d at 318.  Importantly, Settlement Class Members' due process rights were fully protected, as their right to opt out and object of the Settlement was made a conspicuous part of the Settlement Agreement and Notice.  However, only twenty-five (25) Settlement Class Members opted out of the Settlement, suggesting that Settlement Class Members view the Settlement Agreement as eminently fair, reasonable and adequate.  In addition, there have been no objections.  When determining the measure of the class' reaction to a settlement, the Court must look to the number and "vociferousness of the objectors."  <u>In re GM Trucks</u>, 55 F. 3rd at 812.  <u>See</u>, <u>In re Orthopedic Bone Screw Products Liab. Litig.</u>, 176 F. R. D. 158, 185 (E.D. Pa. 1997) ("What is meaningful in this regard is that the relatively low objection rate militates strongly in favor of approval of the settlement.").

Accordingly, this factor is readily satisfied.

9

### G. The Stage of Proceedings at Which Settlement Was Achieved

This factor requires the court to analyze the stage of the proceedings to determine "the degree of case development that …counsel have accomplished prior to the settlement."  GM Trucks, 55 F. 3d at 813.  "In assessing this factor, the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." (citations omitted).  Essentially, the Court must ensure that the settlement agreements are not the product of a quick and uninformed decision making process.  Id.

This factor is unequivocally satisfied given Class Counsel's activities prior to entering into the Settlement Agreement.  During the period leading up to the signing of the Settlement Agreement, Plaintiffs' Counsel, among other things, communicated with the Plaintiffs about the nature of the litigation, and analyzed the evidence adduced during pretrial proceedings and settlement negotiations.

Indeed, Class Counsel's efforts justify a finding that the parties had more than an "adequate appreciation of the merits of the case before negotiating."  In re Prudential 148 F. 3d at 319 (citing GM Trucks, 55 F.3d at 813).  Thus, the concern noted in Amchen – concerning the vulnerability of a settlement claim – where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table is not at issue here.  Amchen Prods., 521 U.S. at 601, 620.  In this case, the adversarial process was stretched to its maximum throughout the litigation and negotiation period.

Because the Settlement was reached after painstaking work and analysis, this factor is met.

### H. The Notice Program Approved by the Court was Effectuated

The Administrator met all of the obligations with regard to Notice as set forth in this Court's Order of Preliminary Approval and the Settlement Agreement.  Under the program

approved by the Court and carried out by the parties, the Notice given was the best means of Notice that was practicable under the circumstances.

The Administrator mailed the Notice of Settlement to class members on August 16, 2018 and on august 23, 2018 published notice in the New York Times.  See Declaration of Claims Administrator, Jarrod Salinas.  The Administrator made skip trace efforts to find updated addresses for the returned as "undeliverable" envelopes, by in order to ascertain current addresses for each such class member.  Id. Class Counsel, upon finding an updated address or forwarding address, immediately sent an additional Class Action Notice to the new address.  Id. Updated and/or forwarding addresses were found for 932 of the returned envelopes, and additional notices were sent to these new addresses.  Id.  Ultimately, 239 of the remailed notices were returned as undeliverable.  Id..  Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), defense counsel delivered appropriate CAFA notices, by Federal Express and more than ninety (90) days before the final approval hearing, to the following authorities: the Attorney General of the United States; the Commissioner of the New York State Department of Health; and the Attorney General of the State of New York.  See Declaration of Robert Fluskey, Jr.

## IV.   CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED

Class Counsel requests that the Court award attorney's fees and expenses set forth by the parties in the Settlement Agreement.  As enumerated above, subject to Court approval, Defendants do not object to Plaintiffs' application for fees and costs to William C. Rand, Esq. in his capacity as Class Counsel in the sum of $1,200,000 of fees and $6,165 of expenses.  See Rand Declaration.

The issue of how to compensate attorneys who have been successful in obtaining a common fund for the benefit of injured class members has been fought out for a long time and in many courts. The issue seems to have been put to rest after the Supreme Court's pronouncement

in <u>Blum v. Stenson</u>, 465 U.S. 886,900 n.16 (1984), which declared that "under the 'common fund doctrine…a reasonable fee is based on a percentage of the fund bestowed on the class.'" This was followed in the seminal case on this issue in <u>In re General Motors Corp. Liab. Litig.</u>, 55 F. 3d 768, 821-22 (3d Cir. 1995) and subsequently followed in this circuit in the often cited case of <u>Goldberger v. Integrated Resources, Inc.</u> 209 F. 3d 43,50 (2d Cir. 2000).

In wage-and-hour class actions, courts employ either a "percentage of the fund" or lodestar approach to determining appropriate fees, but "[t]he trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one." <u>Matheson v. T-Bone Rest., LLC</u>, 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011) (citing <u>McDaniel v. Cnty. of Schenectady</u>, 595 F.3d 411, 417 (2d Cir. 2010)).  Moreover, courts in this Circuit have "routinely granted" requests for one-third of the fund.  <u>See</u> <u>Johnson v. Brennan</u>, No. 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) (collecting cases).

Additionally, <u>Goldberger</u> states that fees in such cases must be "reasonable" and "based on scrutiny of the unique circumstances of each case." <u>Goldberger</u> 209 F. 3d at 47,53. <u>Goldberger</u> also establishes six factors a reviewing court should consider in evaluating what constitutes a reasonable fee: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation…; (3) the risk of the litigation; (4) the quality of the representation [measured by result]; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" <u>Id.</u> at 50 (citation omitted).  Under the lodestar method, in order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials.  <u>See</u> <u>Chambless v. Masters, Mates, & Pilots Pension Plan</u>, 885 F. 2d 1053, 1058 (2d Cir. 1989).  Furthermore, a reasonable hourly rate is a rate "in line with … prevailing [rates] in the community for similar services by lawyers of reasonable comparable skill, expertise and reputation."  <u>Blum v. Stenson</u>, 465 U.S.

886, 895 n.11 (1984); Chambless, 885 F. 2d at 1058-59.  A district court can also use its knowledge of the relevant market when determining the reasonable hourly rate.  See Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F. 2d 407, 409 (2d Cir. 1987).

The Second Circuit also stated that district courts should not reduce the award of attorney's fees simply because an attorney is a solo practitioner.  McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91 at 98 n. 6 (2d Cir. 2006).  In determining the relevant "market" a court may look to rates charged by those in a similar professional situation, including looking to the rates charged by large or medium-sized law firms.  The rationale behind this practice is that a client represented by a medium-sized firm typically pays less than a large-sized firm with higher overhead costs.  Overhead costs should not determine which attorneys should be awarded a higher or lower fee.  Some highly skilled attorneys decide not to affiliate themselves with a firm for various reasons and choose to be solo practitioners.  Moreover, the inquiry into the reasonable hourly rate should focus on the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation."  Blum, 465 U.S. at 895 n.11; Chambless, 885 F. 2d at 1058-59, McDonald.

Under the Fair Labor Standards Act ("FLSA") and New York State Labor Law, a prevailing plaintiff is entitled to receive an award of reasonable attorneys' fees and costs from defendants. See 29 U.S.C. §216 (b), N.Y. Lab. Law §198.  Here, Plaintiffs are prevailing plaintiffs and should be awarded reasonable attorneys' fees.

The case at bar is a fee shifting employment law case and, as such, any rule of proportionality that would tie an attorney fee award to the amount of damages recovered has been rejected by the Second Circuit.  See Grant v. Martinez, 973 F. 2d 96,101 (2d Cir. 1997), Orchano v. Advanced Recovery, Inc., 107 F. 3d 94, 98-99 (2d Cir. 1997).  In Quartino v. Tiffany & Co., 166 F. 3d 422, (2d Cir. 1999), the Second Circuit stated that "Congress enacted fee-

13

shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."  See City of Riverside v. Rivera, 477 U.S. at 575 (plurality opinion) ("Congress did not intend for fees in civil rights cases… to depend on obtaining substantial monetary relief.").  Were we to adopt the "billing judgment" approach that the district court advocates, we would contravene that clear legislative intent by relinking the effectiveness of a civil rights plaintiff's legal representation solely to the dollar value of her claim.  As a near-unanimous Supreme Court  reiterated in Blanchard v. Bergeron, 489 U.S. 87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989), "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," id. at 96 (quoting Rivera, 477 U.S. at 574), and "we are unwilling to hold that the plaintiff's attorney should calculate the value of her client's rights in just those 'monetary terms.'"  166 F. 3d at 426.

Proportionality has been rejected as a legitimate factor for the court's consideration in assessing an appropriate fee award.  Cowan v. Prudential, 728 F. 2d 522 (2d Cir. 1991), Dunlap-McCuller v. Riese Org., 980 F. 2d 153 (2d Cir. 1992), Orchano v. Advanced Recovery, Inc., 107 F. 3d 94 (2d Cir. 1997), Quartino v Tiffany & Co., 166 F. 3d 422 (2d Cir. 1999).

In determining the reasonable hourly rate, this Court must look to the current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Gierlinger v. Gleason, 160 F. 3d 858, 882 (2d Cir. 1998).  Because Plaintiffs' Counsel's office is located in Manhattan, the Court should look to the community of Manhattan labor and employment law class action litigation attorneys for comparable market rates.

This lodestar method of compensating attorneys has also been followed in this district. Spann v. AOL Time Warner, 02 Civ. 8238 (DLC) (2005 S.D.N.Y.); In re Worldcom, Inc. ERISA Lit., 339 F. Supp. 2d 561 (S.D.N.Y. 2004); In re Alloy Inc. Sec. Lit. 03 Civ 1597 (S.D.N.Y,

2004); Strougo v. Bassini, 258 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); Steiner v. Williams, 99

Civ. 10186 (JSM), 2001 WL 604035 (S.D.N.Y. 2001); In re Am. Bank Note Holographics, Inc.

Sec. Litig., 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001); In re NASDAQ Market-Makers Antitrust

Litig., 187 F.R.D. 465, 484 (S.D.N.Y. 1998).

Nevertheless, there is strong judicial support for the percentage method as there is the

widespread recognition that it does away with "the needless complications and dubious merits of

the lodestar approach." Strougo, 258 F. Supp. 2d at 361. See also, In re Union Carbide Corp.

Consumer Prods. Bus. Sec. Litig., 724 F. Supp 160 (S.D.N.Y. 1989).  In contrast, "[t]he

percentage method directly aligns the interest of the class and its counsel and provides a

powerful incentive for the efficient prosecution and early resolution of litigation, which clearly

benefits both litigants and the judicial system." In re Lloyd's Am. Trust Fund Litig., No. 96 Civ.

1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002); see also, In re Twinlab, Corp. Sec.

Litig. 187 F. Supp 2d 80, 85 (E.D.N.Y. 2002) ("Courts favor the percentage of the fund method

because lodestar 'created an unanticipated disincentive to early settlements,' tempted lawyers to

run their hours, and 'compel[ed] district courts to engage in a gimlet-eyed review of line-item fee

audit.'") (citations omitted). It also permits the judge to focus on the quality of the lawyers'

efforts rather than on how many hours they billed. NASDAQ, 187 F.R.D. at 485.  "In addition,

the percentage method is consistent with and, indeed, is intended to mirror, practice in the private

marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with

their clients." Strougo, 258 F. Supp. 2d at 362; see also, In re RJR Nabisco, Inc. Sec. Litig., No.

88 Civ 7905 (MBM), 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("[w]hat should govern

such awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how

much is enough in a particular case, but what the market pays in similar cases").  No matter

which method is chosen, the fees awarded in common fund cases must be "reasonable" and

"based on scrutiny of the unique circumstances of each case." <u>Goldberger</u>, 209 F.3D at 47, 53.

Additionally, regardless of the method chosen, "district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" <u>In re Arakis Energy Corp. Sec. Litig.</u>, at *26 (quoting <u>Goldberger</u>, 209 F.3d at *50).

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." <u>Teachers' Ret. Sys. v. A.C.L.N., Ltd.</u>, Master File No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

<u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted); <u>Am.Bank Note Holographics</u>, 127 F. Supp. 2d at 432-433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); <u>In re Prudential Sec. Inc. Ltd. P'ships Litig.</u>, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) (Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Class Counsel in prosecuting this class action. Here, Class Counsel vigorously negotiated a very substantial settlement for the class, and undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action

16

without a guarantee of compensation or even recovery of out-of-pocket expenses.  Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Class Counsel has not been compensated for any time or expenses since this case began.  Moreover, Class Counsel would not have received any compensation or even reimbursement of expenses had this case not been successful.  Finally, the class representatives did not simply cede to Defendants' first settlement offer.  To the contrary, Class Counsel vigorously negotiated a very substantial settlement for the class.

As the Supreme Court has recognized, the rationale of the common-fund doctrines "must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests'" of those others.  Hall v. Cole, 412 U.S. 1,5 n.7 (1973) (citation omitted); see also, Kaplan v. Rand, 192 F.3d 60, 70 (2nd Cir. 1999) (noting that "'well-established [rule] that non-monetary benefits, such as …deterring future misconduct by management may support a fee award'"); Kopet v. Esquire Realty Co., 523 F.2d 1005,1008 (2d. Cir. 1975).  In the instant case, Plaintiffs alleged that the class members failed to receive overtime wages and the Defendants vigorously denied these allegations.

Since Goldberger, id., fee awards of 25% or more have been common in this Circuit. One court commented that "[i]n this district alone, there are scores of common fund cases where fees alone (i.e., where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund. See Lloyd's Am. Trust, 2002 WL 31663577, at *76 (citing cases).

While this Court cannot conceivably police what happens behind the curtain of every class action settlement outside its courtroom doors, it should recognize the efforts of those who do.  Class Counsel has repeatedly attempted to maximize the interests of the class.

Class Counsel in his role in pursuing this action and negotiating for compensation to Class Members, has provided tremendous benefits to the Class. For this effort, he should be rewarded. See Goldberger, 209 F.3d at 51 ("'There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'"); RJR Nabisco, 1992 WL 210138, at *7 ("The prospect of handsome compensation is held out as an inducement to encourage lawyers to bring such suits.'"), quoting Dolgow v. Andersen, 472, 494 (E.D.N.Y. 1968).

Respectfully, therefore, the class representative asks that her request for attorney's fees and expenses be granted.

### A.      Negotiated Attorney's Fee Agreements Are Favored In Class Action Settlements

Rule 23(h) of the Federal Rules of Civil Procedure states: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties." Fed. R. Civ. P. 23(h) (emphasis supplied).

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also, In re MDC Holdings Sec. Litig., [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement…, including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants."); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 829 (D. Mass. 1987). ("Whether a defendant is required by statute or agrees as part of the settlement of a class action

to pay the plaintiffs' attorneys fees, ideally the parties will settle the amount of the fee between themselves.") Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically and professionally arrive at a settlement as to attorney's fees.")

In affirming the award of a negotiated fee, the Second Circuit has stated:

> [W]here…the amount of the fees is important to the party paying
> them, as well as to the attorney recipient, it seems to the author of
> this opinion that an agreement 'not to oppose' an application for
> fees up to a point is essential to completion of the settlement,
> because the defendants want to know their total maximum exposure
> and the plaintiffs do not want to be sandbagged. It is difficult to see
> how this could be left entirely to the court for determination after the settlement.

Malchman v. Davis, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Id. "Markets know market values better than judges do." Id. at 570. "The object in awarding a reasonable attorney's fee…is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." Id. at 572. Here, such a negotiation was feasible, and was conducted. The fee was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might

award if the matter were litigated.

Thus, the negotiated fee is entitled to a presumption of reasonableness.

**B.**    **The Quality Of Representation**

Class Counsel was well-qualified from the outset to pursue this case.  His professional background, qualifications and experience are set forth in the declaration of William C. Rand, Esq. submitted herewith and with the Preliminary Application.  As shown by the declaration, Class Counsel has a great deal of experience in the prosecution and successful resolution of complex class actions, many involving the FLSA and NY Labor Law.

Courts routinely recognize the experience of class action counsel in determining the reasonableness of a fee award.  See In re Lupron® Mktg. & Sales Practices Litig., No. 01-cv-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14 (D. Mass. Aug. 17, 2005).  In addition, the quality of representation is commonly measured by the result obtained.  Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

Class Counsel's decision to avoid additional litigation costs and settle at this juncture also supports a finding of effective representation.  A business as usual approach to litigation, with motion practice and protracted discovery skirmishing would have resulted in cost and delay, but would not likely have resulted in greater benefits to the Settlement Class.  As a result, the Settlement Class was well-served by Class Counsel's decision to engage in early settlement discussions.  See McBean v. City of New York, 233 F.R.D. 377, 386, 2006 U.S. Dist. LEXIS 5003, at *17-18 (S.D.N.Y. 2006) (where all parties "agree upon the basic facts as they relate to the plaintiff class…class counsel's decision to forgo additional discovery in the hopes of minimizing costs and achieving a quick recovery for their clients…falls within the bounds of 'effective representation'").

Finally, the quality of opposing counsel is also an important factor for the Court to

consider in evaluating the quality of services provided by Class Counsel. See e.g., In re Warner
Comms. Sec. Litig., 618 F. Supp. 735, 749 (S.D.N.Y. 1985).  Defendants were represented by
Hodgson Russ LLP, a prestigious law firm that represents management in labor and employment
matters, whose lawyers negotiated each issue, phrase and nuance contained in the settlement.  As
the Court stated in In re Copley Pharmaceutical, Inc., 1 F. Supp. 2d 1407, 1413-14 (D. Wy.
1998), "the skill required to perform the legal service presented by the instant case was great,
particularly where class counsel were faced with opposing counsel of such high quality."
Plaintiffs' counsel has proven equal to the task of working effectively and efficiently opposite
Defendants' skilled counsel.

    **C.**    **The Agreed-Upon Fee Is Reasonable Under a Percentage/Lodestar Cross-Check Analysis**

"Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover
reasonable attorney's fees and costs incurred in successfully prosecuting wage-and-hour actions."
Escobar v. Fresno Gourmet Deli Corp., No. 16-CV-6816 (PAE), 2016 WL 7048714, at *3
(S.D.N.Y. Dec. 2, 2016). "Where plaintiffs obtain a favorable settlement in an action brought
pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees."
Andrews v. City of New York, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015).

Traditionally, in FLSA settlement cases, attorneys' fees are awarded under the
"percentage of the fund" method and one-third of the total settlement is normally considered a
reasonable fee. See Zhi Li Zhong v. Rockledge Bus Tour Inc., 18 Civ. 454 (RA), 2018 U.S. Dist.
LEXIS 131829, 2018 WL 3733951 at *4 (S.D.N.Y. Aug. 6, 2018) (Abrams, D.J.) ("one-third of
the net settlement amount . . . is an amount routinely approved under the percentage method");
Coleman v. DeFranco Pharmacy, Inc., 17 Civ. 8340 (HBP), 2018 U.S. Dist. LEXIS 129140,

2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018) (Pitman, M.J.) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.").

In class action settlement, "'where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class,' the attorneys whose considerable effort created the fund are entitled to a reasonable fee set by the Court." Steinberg v. Nationwide Mut. Ins. Co., 612 F. Supp. 2d 219, 222 (E.D.N.Y. 2009) (quoting Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000)). "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h).   In class actions when determining appropriate counsel fees, courts have used either the lodestar method or awarded fees based on a percentage of the settlement fund. Goldberger, 209 F.3d at 47. The lodestar method multiplies the hours reasonably expended on the case by a reasonable hourly rate. By comparison, the common fund method calculates the amount as a percentage of the award to the class. See McDaniel v. County of Schenectady, 595 F.3d 411, 417-422 (2d Cir. 2010).

"The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (internal quotation omitted). By contrast, the lodestar method as characterized by the Second Circuit "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits." Id. (internal quotation and brackets omitted). In the instant matter, the requested attorneys' fees are reasonable under both the percentage method and the lodestar method.

22

In common fund cases, the Second Circuit favors awarding fees according to the "percentage of the fund" method.  Viewing the fees here as a percentage of the Settlement demonstrates that the requested fee award falls well within the range of reasonable fees approved by the courts in this Circuit. See, e.g., <u>Kochilas v. Nat'l Merchant Servs., Inc.</u>, No. 1:14-cv-00311, 2015 U.S. Dist. LEXIS 135553, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (finding class counsel's request in FLSA/NYLL case for one-third of the Settlement Fund to be reasonable and consistent with class litigation in the Second Circuit) (collecting cases); <u>Massiah v. MetroPlus Health Care Plan Inc.</u>, No. 11-cv-05669, 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655, at *6 (E.D.N.Y. Nov. 20, 2012) (awarding class counsel in FLSA and NYLL case 30% of the $4,040,000 Settlement Fund); <u>Willix v. Healthfirst, Inc.</u>, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding class counsel 33 1/3 % of the $7,675,000 Settlement Fund as fair and reasonable); <u>Odom v. Hazen Transport, Inc.</u>, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (attorneys' fees representing 32.6% of the total settlement fund [*6]  held to be reasonable); <u>Stefaniak v. HSBC Bank, USA, NA</u>, No. 1-05-CV-7205, 2008 U.S. Dist. LEXIS 53872, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (finding fee awards of 33% of the settlement fund typical of class action settlements in the Second Circuit) (collecting cases); <u>Maley v. Del Global Technologies Corp.</u>, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding attorneys' fee to class counsel of 33% of $11.5 million Settlement Fund found to be fair and reasonable).

In the instant action, the requested fee award of $1,200,000 represents 30% of the $4,000,000 settlement obtained for the Class Members. Class Counsel undertook this case on a contingency fee basis, committed substantial resources to its prosecution, and risked time and effort with no ultimate guarantee that they would be compensated for those efforts.  See <u>Cohan v.</u>

Columbia Sussex Mgmt., LLC, 2018 U.S. Dist. Lexis 170192 (Sept. 28, 2018 E.D.N.Y.)
(awarding fees of $980,633.19 equal to 30% of the settlement fund).

Regardless of whether the percentage of the fund or the lodestar method is used, to
determine the reasonableness of the Plaintiffs' fee request, the Court looks to the six factors
articulated by the Second Circuit in Goldberger v. Integrated Res. Inc., 209 F.3d 43, 50 (2d Cir.
2000). These factors include: (1) the time and labor expended by counsel; (2) the magnitude and
complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5)
the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger,
209 F.3d at 50. District courts continue to be guided by the Goldberger factors. See, e.g., Paredes
v. J & B Cleaners, Inc., 18-CV-1638, 2018 U.S. Dist. LEXIS 92545, 2018 WL 2461274, at *1
(S.D.N.Y. June 1, 2018); Baffa v. Donaldson Lufkin & Jenrette Secs. Corp., No. 96 CIV 0583,
2002 U.S. Dist. LEXIS 10732, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002).

First, this action has been ongoing for more than two years at this juncture and Class
Counsel devoted tremendous time and labor to this case during that time, without any guarantee
of recovery. That work entailed many items, including substantial investigation, research
involving the exemptions to FLSA, the filing of a motion for collective action certification which
prevailed, the mailing of notice to 2,707 potential FLSA plaintiffs, formal discovery, the review
of thousands of pages of employee pay records, the calls and meetings with hundreds of class
members to answer their questions and investigate their claims. The parties also dedicated
numerous hours to negotiating a complex settlement agreement. The requested fees are also
meant to compensate Class Counsel for time that will be spent administering the settlement into
the future. See Johnson v. Brennan, 10 CIV 4712, 2011 U.S. Dist. LEXIS 105775, 2011 WL
4357376, at *16 (S.D.N.Y. Sept. 16, 2011). Class Counsel have already responded to inquiries

regarding the settlement and expect to answer more questions from class members after final approval, particularly after checks are issued, and will incur additional expense accordingly. Id.

Second, this "hybrid" action brought under both the FLSA and the New York State wage and hour statutes. "FLSA claims typically involve complex mixed questions of fact and law." Barrentine v. Arkansas-Best Frgt. Sys., Inc., 450 U.S. 728, 743, 101 S. Ct. 1437, 67 L.Ed. 2d 641 (1981). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17. This case depended on resolution of several mixed questions of fact and law.  In particular, the parties disputed the law surrounding the date when the regulations requiring full overtime for home health aides became effective and disputed issues regarding the proof required to prevail on Plaintiff's New York State law 24-hour shift class claims and whether aides obtained 8 hours of sleep, 5 hours of uninterrupted sleep and 3 one hour meal breaks during their 24 hour shifts. These mixed factual and legal questions support approval of the attorneys' fee request by Class Counsel.  Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 435737, at *17 (citing de Munecas v. Bold Food, LLC, No. 09 Civ. 440, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580 at *7-8 (S.D.N.Y. Aug. 23, 2010)).   The Court also notes that Class Counsel pursued claims on behalf of approximately 10,146 Class Members. See Rand Declaration and Administrator Declaration. "In a class action suit, as here, the large number of plaintiffs increases the complexity of the litigation." Jemine v. Dennis, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012).

Third, the risks of litigation were substantial here. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Johnson*,

2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17. Class Counsel has prosecuted this case on a contingency basis for over 2 years - taking on the risk that they would not ultimately recover anything for their time and effort. "Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources." Id. (citation omitted). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." Id. (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 471 (2d Cir. 1974)). Here, the Plaintiffs' case hinged on an analysis - and ultimately a determination - regarding the effective date of the federal regulation requiring home health aides be paid full overtime. A substantial risk is that this Court could have found that the regulation commenced only after the D.C. Circuit's reversal of the District Court's Order vacating the regulation. This type of potential finding required a realistic assessment of the risk here by Plaintiffs' counsel.  Furthermore, the Settlement is being paid out over 6 years and thus there is significant risk that the fee may not be paid in its entirety as the Defendant has limited assets.

Fourth, the Court also looks to the quality of the representation on behalf of the Class Members. To make that determination, courts review, among other things, the backgrounds of the lawyers involved in the lawsuit and the recovery obtained. See Steinberg, 612 F. Supp.2d at 223 (citing Taft v. Ackermans, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, 2007 WL 414493, at *10 (S.D.N.Y. Jan 31, 2007)). The quality of the representation in this litigation is evident from the record. Class counsel is a well known class action employment lawyer who has extensive experience and special expertise in prosecuting and settling FLSA and NYLL wage and hour cases. See Rand Decl. The Second Circuit held in Goldberger that "the quality of representation is best measured by results, and . . . such results may be calculated by comparing

26

the extent of possible recovery with the amount of actual verdict or settlement." Goldberger, 209
F.3d at 55 (internal quotation omitted).

Fifth, "[c]ourts also consider the size of the settlement to ensure that the percentage
awarded does not constitute a 'windfall.'" Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL
4357376, at *18 (citing In re Gilat Satellite Networks, Ltd., No. 02 Civ. 1510, 2007 U.S. Dist.
LEXIS 68964, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007)).  As the court in
Johnson took note, "courts in this Circuit have routinely granted requests for one-third of the
fund in cases with settlement funds substantially larger than this one." 2011 U.S. Dist. LEXIS
105775, [WL] at *19 (collecting cases). Class Counsel here have requested 30% of the
Settlement Fund as attorneys' fees rather than the standard one-third. While not determinative of
the reasonableness of the fee request, this reduction reflects Class Counsels' good faith. See Hall
v. ProSource Technologies, LLC, 14-CV-2502, 2016 U.S. Dist. LEXIS 53791, 2016 WL
1555128, at *16 (E.D.N.Y. Apr. 11, 2016). In addition, the Settlement Agreement was
distributed to each of the prospective Class Members and no one has objected to the fee request.
"The absence of any such objection, while also not dispositive of the reasonableness of the fee
request, 'does lend support for approval of the award.'" Id. (quoting Sewell v. Bovis Lend Lease
LMB, Inc., No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *12
(S.D.N.Y. Apr. 16, 2012)).   The 30% fee requested is reasonable in light of the Goldberger
factors "and consistent with the norms of class litigation in this circuit." Willix, 2011 U.S. Dist.
LEXIS 21102, 2011 WL 754862, at *7.

Sixth, as to public policy considerations, this factor weighs in favor of approval of Class
Counsels' fee request. District courts and the Second Circuit "have taken into account the social
and economic value of class actions, and the need to encourage experienced and able counsel to

undertake such litigation." <u>In re Sumitomo Copper Litig.</u>, 74 F. Supp. 2d 393, 399 (S.D.N.Y.

1999). As the court in Johnson observed:

> The FLSA and the NYLL are remedial statutes designed to protect the wages of
> workers. See A.H. Phillips v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed.
> 1095 (1945) (recognizing the FLSA's objective—ensuring that every employee
> receives "a fair day's pay for a fair day's work") (internal quotation marks
> omitted). Where relatively small claims can only be prosecuted through aggregate
> litigation, and the law relies on prosecution by "private attorneys general,"
> attorneys who fill the private attorney general role must be adequately
> compensated for their efforts. Willix, 2011 U.S. Dist. LEXIS 21102, 2011 WL
> 754862, at *6; deMunecas, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at
> *8; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7. If not,
> wage and hour abuses would go without remedy because attorneys would be
> unwilling to take on the risk. Willix, 2011 U.S. Dist. LEXIS 21102, 2011 WL
> 754862, at *6; deMunecas, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at
> *8; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7.
> Adequate compensation for attorneys who protect those rights by taking on such
> litigation furthers the remedial purpose of those statutes. Willix, 2011 U.S. Dist.
> LEXIS 21102, 2011 WL 754862, at *6; deMunecas, 2010 U.S. Dist. LEXIS
> 87644, 2010 WL 3322580, at *8; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010
> WL 2399328, at *7; see also Sand, 2010 U.S. Dist. LEXIS 1120, 2010 WL
> 69359, at *3 ("But for the separate provision of legal fees, many violations of the
> Fair Labor Standards Act would continue unabated and uncorrected.")

<u>Johnson</u>, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *19; <u>Khait v. Whirlpool Corp.</u>,

No. 06-6381, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010).

Public policy weighs in favor of approving this fee award, as is reflected in the prevailing trend

for percentage-of-fund fee awards. This process aligns the interest of the class with its counsel,

"providing a powerful incentive for the efficient prosecution and early resolution of litigation."

<u>Wal-Mart Stores</u>, 396 F.3d at 122.  All of the factors set forth in <u>Goldberger v. Integrated Res.</u>

<u>Inc.,</u> 209 F.3d at 51, therefore, weigh in favor of this reasonable fee award of 30% of the

Qualified Settlement [*15]  Fund.

The fees requested are reasonable under the lodestar method. Courts have referred to the

lodestar comparison as a "cross-check" on the issue of reasonableness. See <u>Velez v. Novartis</u>

Pharmaceuticals Corp., No. 04 Civ. 09194, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877852, at *22 (S.D.N.Y. Nov. 30, 2010); Ersler, 2009 U.S. Dist. LEXIS 14374, 2009 WL 454354, at *7. In particular, the Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." Goldberger, 209 F. 3d at 47. "As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate." Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (citing Hicks v. Morgan Stanley & Co., No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005) (internal quotation marks omitted)). The reasonable hourly rate is defined as the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Hernandez v. JRPAC Inc., No. 14-CV-4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) (citations omitted).  The Court must then consider whether a multiplier is warranted based on certain factors, such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." In re Boesky Secs. Litig., 888 F. Supp. 551, 562 (S.D.N.Y. 1995); see Goldberger, 209 F.3d at 47. Factors 1, 3 and 4 have been addressed in the context of a percentage-of-the-fund analysis.  Factor 2 plays a role here as Defendant has low margins and few assets other than the agreements to provide health aide services.  Thus Factor 2 supports the fee.

Class Counsels' fee request here is for 30% of the Settlement Fund, equal to $1,200,000. This amount will be paid in 7 payments over 6 years.  The present value of the $1,200,000 using a discount rate of 10% equals $918,044.69.   The 10% discount rate is reasonable given the risk associated with the payments.  This $918,044.69 represents a lodestar multiplier of 2.67 (based on 624.1 hours at an hourly rate of $550, which is reasonable given Rand's more than 20 years of

experience)(hours include 20 hours per year estimated for the next 6 years related to answering class members questions [even if these hours are excluded, the multiple is still reasonable at 3.3]).  See Rand Decl.  The time spent by Class Counsel is described in Rand's contemporaneous time records. Given the risk and complexity of this case, the 2.67 multiplier is within the range awarded by courts in the Second Circuit.

"Courts regularly award lodestar multipliers from two to six times lodestar." Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (citing In re Lloyd's Am. Trust Fund Litig., 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (stating that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y.2002) (explaining that the "modest multiplier of 4.65 is fair and reasonable"); In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 489 (S.D.N.Y.1998) (awarding multiplier of 3.97 times lodestar)); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); In re RJR Nabisco, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).

In assessing the lodestar for cross-check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." Goldberger, 209 F.3d at 50. Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Id.  Here, approval of the agreed-upon fee will not result in an excessive multiplier.

In sum, the attorneys' fees requested are reasonable under the percentage or lodestar analysis and thus should be approved.

### D.    Class Counsel's Expenses Were Reasonably and Necessarily Incurred

In addition to the time he spent, Plaintiffs' counsel incurred $6,165 in costs and expenses in the pursuit of this litigation.  See Rand Declaration.   "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged their clients."  Hicks v. Morgan Stanley & Co., 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29 (S.D.N.Y. Oct. 24, 2005).  The declaration of Plaintiffs' Counsel describes these expenses by category. These expenses were reasonably and necessarily incurred in the prosecution of this action.

Accordingly, Class Counsel respectfully requests that the Court award reimbursement of these expenses in full.

## V.    THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFF IS REASONABLE

Class Counsel requests approval of a modest incentive award to the named Plaintiff, in the amount of $5,000.  Defendants do not oppose this award as provided by the Settlement Agreement.

"Incentive awards are not uncommon in class action cases and are within the discretion of the court."  Frank v. Eastman Kodak Co., 228 F.R.D. 174,187 (W.D.N.Y. 2005).  Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation. See Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005) (collecting cases illustrating a range of incentive awards and approving an award of $25,000).  The incentive awards requested are justified in light of the plaintiffs' willingness to devote their time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred on the Settlement Class and should be approved.  See Dornberger v, Metropolitan Life Ins. Co. 203 F.R.D. 118,125 (S.D.N.Y. 2001).  See e.g., Spann v. AOL Time Warner, Inc., 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005) (granting an incentive award of

$10,000 for each named plaintiff).  Here, the Named Plaintiffs spent numerous hours working with Plaintiffs' Counsel to prosecute and settle the litigation.  Accordingly, the incentive bonuses are reasonable.

## VI.   CONCLUSION

For the foregoing reasons, Class Counsel and Defense Counsel respectfully ask that the Court grant this application in full and (i) finally certify the Class for purposes of settlement, (ii) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out in accordance with this Agreement, (iii) approve and incorporate the terms of the release for the Class Members and the terms of the release for the Named Plaintiff; (iv) enter an order permanently enjoining all Class Members who have not timely opted out from pursuing and or seeking to reopen claims that have been released by this Agreement; and (v) enter final judgment in accordance with this Agreement and dismiss the Lawsuit with prejudice, retaining jurisdiction over the settlement.  The parties request that the Court approve a final approval order and judgement in the form of Exhibit A hereto.

Dated:  New York, New York
        November 16, 2018

                            LAW OFFICE OF WILLIAM COUDERT RAND

                            S/William C. Rand
                            _____
                            William Coudert Rand, Esq. (WR-7685)
                            *Attorney for Plaintiffs*, Individually,
                            and on Behalf of All Other Persons Similarly Situated
                            501 Fifth Ave., 15th Floor
                            New York, New York 10017
                            Tel: (212) 286-1425