William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,

                              Plaintiffs,

          v.                                              Case No. 1:16-cv-04922

                                                         (JGK) (JLC)

HOME HEALTH CARE SERVICES OF NEW YORK
INC. d/b/a "HCS Healthcare", AGNES SHEMIA, and
JOHN DOES #1-10,

                              Defendants.

---

**DECLARATION OF WILLIAM C. RAND IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT**


# EXHIBIT A


# FULLY EXECUTED CLASS AND COLLECTIVE SETTLEMENT AGREEMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,


                                    Plaintiffs,


        v.                                                   Case No. 1:16-cv-04922
                                                             (JGK) (JLC)


HOME HEALTH CARE SERVICES OF NEW YORK
INC. d/b/a "HCS Healthcare", AGNES SHEMIA, and
JOHN DOES #1-10,


                                    Defendants.

_____


## CLASS ACTON AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

        This Settlement Agreement, including all exhibits attached hereto (collectively, the "Agreement"), is entered into by and between Plaintiff ALLISON HYPOLITE (the "Named Plaintiff"), together with the class of individuals and collective action members that she seeks to represent, which consists of all individuals who were employed by HOME HEALTHCARE SERVICES OF NEW YORK INC. d/b/a "HCS Healthcare" ("HCS") as home health aides between June 24, 2010 and May 1, 2018 (collectively, the "Class" or "Class Members")[1], and Defendants HCS and AGNES SHEMIA ("Individual Defendant").  HCS and the Individual Defendant may be referred to collectively as the "Defendants."  The Named Plaintiff, the Class Members, the Individual Defendant, and HCS may collectively be referred to as the "Parties."

        WHEREAS, the Named Plaintiff filed a putative class and collective action Amended Complaint in the United States District Court for the Southern District of New York (the "Court") on August 24, 2016 (the "Complaint"), captioned *Allison Hypolite v. Home Health Care Services of New York Inc. d/b/a HCS Healthcare, Agnes Shemia, and John Does #1-10* (16-cv-04922) (the "Lawsuit"); and

        WHEREAS, the Complaint asserted class claims under the New York Labor Law ("NYLL") and collective claims under the Fair Labor Standards Act ("FLSA") alleging, *inter alia*, that the Defendants failed to pay wages due under the NYLL, the FLSA, and the New York Home Care Worker Wage Parity Law ("Wage Parity Law"), and sought recovery of unpaid

_____

[1]        For avoidance of doubt, the Class includes all individuals who have opted-in to this action under the Fair Labor Standards and who are members of the conditionally certified collective.

wages, benefits, wage supplements, liquidated damages, pre-judgment interest, and attorneys' fees and costs, as well as injunctive and declaratory relief; and

WHEREAS, Defendants have denied and continued to deny all of the material allegations contained in the Complaint, and any and all prior complaints filed in the Lawsuit, and have denied and continue to deny that they are liable or owe damages to the Named Plaintiff or the Class Members with respect to the alleged facts or causes of action asserted in the Complaint, and any and all prior complaints filed in the Lawsuit; and

WHEREAS, in order to facilitate discussions of the possible settlement of the Lawsuit, HCS provided to counsel for the Named Plaintiff ("Class Counsel") voluminous business and payroll records relating to the hours worked by and amounts paid to the Named Plaintiff and the Class Members during their employment with HCS; and

WHEREAS, HCS and the Named Plaintiff, through her counsel, each analyzed HCS' business and payroll records relating to the Named Plaintiff's and Class Members' claims asserted in the Complaint; and

WHEREAS, on the basis of the aforementioned business and payroll records, and its analysis thereof, Class Counsel is satisfied that he has a sufficient basis to properly value the claims as alleged in the Complaint; and

WHEREAS, the Parties have engaged in extensive discussions and negotiations in an effort to reach a resolution of Named Plaintiffs' and the Class Members' claims in order to avoid prolonged and expensive litigation; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Complaint, as well as the impact of this Agreement on the Named Plaintiff and the Class Members; and

WHEREAS, based upon Class Counsel's analysis of the payroll data and related information and documents produced by HCS relating to the approximately 10,612 individuals (reflective of the turnover at the employer) who performed services for HCS during the period to which the claims relate, and the applicable law, and recognizing the risks of continued litigation, including the risk that the Named Plaintiff and Class Members might obtain a recovery less favorable than, and/or comparable to, the recovery embodied in this Agreement, and that any recovery may not be obtained for several years if at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Named Plaintiff and the Class Members; and

WHEREAS, without admitting or conceding any liability, the Parties hereto have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, risks, and uncertainty of proceeding with litigation;

NOW, THEREFORE, in exchange for and in accordance with the mutual covenants set forth below, it is hereby agreed as follows:

1.      **Total Settlement Amount**

a.      HCS shall pay a total amount of $4,000,000.00 (the "<u>Total Settlement Amount</u>") to fully and finally resolve and satisfy (i) any and all claims alleged in the Complaint and all other wage-and-hour, recordkeeping, notice, pay statement, benefits-related, wage parity, and compensation-related claims that were or could have been alleged in the Lawsuit, (ii) any and all attorneys' fees, litigation costs (including the cost of a Claims Administrator), and expenses incurred by Class Counsel, including expenses incurred by Class Counsel relating to the application to the Court for approval of this Agreement, and (iii) any Court-approved Service Award to the Named Plaintiff; and (iv) the Named Plaintiff Settlement Payment payable to Named Plaintiff. HCS will not be required to pay more than the gross total of $4,000,000.00 under the terms of this Agreement. Individual Defendant will not pay, and is not obligated to pay, any part of the Total Settlement Amount.

b.      The Total Settlement Amount will be paid in seven (7) installments in the amount of $571,428.57. The first installment payment will be made no later than 14 calendar days after the Effective Date (as defined in paragraph 10 herein). The second through seventh installment payments will be made no later than the first, second, third, fourth, fifth, and sixth calendar-year anniversary dates, respectively, of the date that the first installment payment was paid. Failure to make any payment when due after a 10 day notice to cure shall cause (a) all remaining amounts then due to become immediately due and payable, less any amounts paid up to and including the date of default and (b) an additional amount of $560,000 to become immediately due. Furthermore, HCS agrees to pay all costs, including reasonable attorneys' fees, of Plaintiff or a third party beneficiary related to the efforts of Plaintiff or a third party beneficiary to obtain payment under this agreement.

c.      The settlement payment installments will be distributed as described in this agreement in the allocation and distribution section below. HCS may pay all or part of the second, third, fourth, fifth, sixth, and/or seventh installments early. If it does so, the early payment will reduce all remaining payments pro-rata.

d.      HCS will transfer the funds necessary to make each installment payment to the Claims Administrator in advance of the above payment deadlines. If any installment of the Total Settlement Amount is not timely paid, Class Counsel will provide written notice to HCS by the method established in paragraph 16. HCS will have ten (10) days after the effective date of the notice to cure the payment default by paying the installment amount due to the Claims Administrator.

e.      **Security.** Individual Defendant agrees to pledge or cause to be pledged as security for the settlement payments owed by HCS under this agreement the properties located at 86 Gaylord Dr. South, Brooklyn, New York 11234, and 2748 East 65th St.,

- 3 -

Brooklyn New York 11234 (the "Properties"), represents that there are currently no mortgages or liens on the Properties, and agrees not to subject the Properties to any mortgages or liens or borrow money secured by the Properties in a manner that would impair security for the payment obligations owed under this Agreement. Individual Defendant agrees to execute or cause to be executed, all documents necessary for the Class to perfect and file its lien against the Properties, including but not limited to, a mortgage on the Properties in favor of the Class.  Individual Defendant may  sell, finance, refinance, pledge, encumber and/or permit to be sold, financed, refinanced, pledged and/or encumbered either or both of the Properties (and/or any substitutes thereof), so long as (a) the remaining equity in the properties that will continue to secure the Total Settlement Amount  is sufficient to guarantee any then outstanding  balance of same, or (b) Individual Defendant pledges, or caused to be pledged, a new property(ies) with equity sufficient to guarantee any then outstanding balance of the Total Settlement Amount, either singly or collectively with the properties that will continue to secure the Total Settlement Amount.  In addition, Class Counsel will cooperate with defense counsel to take whatever steps are necessary to file a partial or complete satisfaction of any mortgage or release of lien, as applicable, for any property not necessary to secure the Total Settlement Amount.

2.     **Claims Administrator**

a.     Administrator will be Simpluris, Inc., which was jointly selected by Class Counsel and Defendants' counsel.  The Claims Administrator shall establish, maintain, and administer a Qualified Settlement Fund ("QSF") for the purpose of effectuating the terms of this settlement.  The Administrator will be responsible for locating Class Members; mailing the Notices of Settlement to Class Members in accordance with the Court's preliminary approval order; responding to Class Members inquiries; calculating Class Members Individual Payment amounts in accordance with this Agreement and the Court's final approval order; reporting on the state of the settlement to counsel for the Parties; distributing the Individual Payments, the Service Award, and calculating all payroll tax and withholding each Class Member's share of taxes, as appropriate; remitting such withheld funds to the appropriate taxing authorities; preparing and filing appropriate tax reporting forms for such withheld funds; the claims administration process; coordinating collection and compilation of the settlement checks for filing with the Court; providing copies of the settlement checks to counsel for the Defendants; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct, as are specified in this Agreement, or that are ancillary or related to claims administration matters.  The Claims Administrator's fees shall be paid out of the Total Settlement Amount proportionately at the time of each settlement distribution.

b.     The Settlement Administrator will be paid a fee of $69,340 from the first distribution and a fee of $29,557 from each subsequent distribution that is completed by the Settlement Administrator.

c.     Class Counsel and counsel for the Defendants will have equal access to the Claims Administrator and all information related to the administration of the

- 4 -

settlement.  The Claims Administrator will provide regular reports to Class Counsel and counsel for the Defendants regarding the status of the mailing of the Notices of Settlement to Class Members, the claims administration process, and distribution of the settlement checks.

        d.     HCS agrees to cooperate with the Claims Administrator, provide relevant information to the extent reasonably available and necessary to calculate the Individual Payments, and assist the Claims Administrator in locating Class Members.

### 3.    <u>Motion for Preliminary Approval of this Agreement</u>

        a.     Promptly after the execution of this Settlement, the Parties will work cooperatively to file a joint Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement ("Motion for Preliminary Approval").  If the Parties cannot agree on the papers, they may submit separate papers.

        b.     The Parties agree that the Motion for Preliminary Approval will include a proposed "Notice of Class and Collective Action Settlement and Settlement Fairness Hearing" in the form attached hereto as Exhibit "A" ("<u>Notice of Settlement</u>"), and a proposed Order Preliminarily Approving the Settlement attached hereto as Exhibit B.  The Motion for Preliminary Approval, *inter alia*, will seek (i) conditional certification of a class, pursuant to Fed. R. Civ. P. Rule 23, against the Defendants, consisting of all individuals who were employed by HCS as home health aides on or between June 24, 2010 and May 1, 2018 (the "<u>Class Period</u>"), (ii) preliminary approval of the settlement, this Agreement, and of the Notice of Settlement to be mailed to the Class Members, and setting the dates by which Class Members may opt-out of the Class or assert objections to the settlement; and (iii) setting a date for a fairness hearing for the final approval of this settlement ("Fairness Hearing").  The Defendants will not oppose this motion.

        c.     Defense Counsel shall, within ten (10) business days of the Order Preliminarily Approving the Settlement, provide the notice required by the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715(b).

### 4.    <u>Notices to Class Members; Court Approval; Opt-Outs; Objections.</u>

        a.     Within ten (10) days following the Court's Order preliminarily approving the settlement and this Agreement, HCS shall provide to the Claims Administrator and to Class Counsel, in electronic form, for all Class Members, as of the date of the Preliminary Approval Order, the following information: name, Social Security Number, last known addresses, last known personal email addresses, if any, dates of employment, and other data necessary to calculate the Individual Payments, as that information exists on file with HCS (the "<u>Class Contact List</u>").

        b.     Within thirty (30) days following the Court's Order preliminarily approving the Settlement and this Agreement (or within an alternate period set by the Court), the

Claims Administrator shall mail, via First Class United States mail, postage prepaid, to each Class Member, the Notice of Settlement, in the form approved by the Court, using the addresses set forth in the Class Contact List.

c. Unless otherwise ordered by the Court, the Notice of Settlement will be in the form attached as Exhibit A.

d. If any Notices of Settlement mailings are returned as undeliverable, the Claims Administrator will take reasonable steps to endeavor to ascertain a current address, and mail the Notice of Settlement to a current address for each such Class Member. The Claims Administrator shall maintain an updated Class Contact List which will be provided by the Claims Administrator to Class Counsel and counsel for the Defendants periodically and as reasonably requested by counsel.

e. The Claims Administrator will mail, along with the Notice of Settlement, a blank IRS Form W-4, to be completed and returned to counsel for the Defendants; any such Class Member who fails to provide the Claims Administrator with a signed IRS Form W-4 form shall be deemed to have elected one withholding exemption.

f. In addition to the Notice of Settlement approved by the Court, HCS agrees to post the Notice of Settlement in the workplace in the location in which notices to employees are typically posted, during the period running from the date ten days after the preliminary approval of the Settlement to the date 45 days thereafter, and shall provide a copy of the Notice of Settlement to any employee or former employee who makes an inquiry to HCS about the proposed settlement.

g. The Claims Administrator also agrees to cause a notice about the settlement to be published in the legal notices section of one issue of the New York Times in substantially the form attached as Exhibit C.

h. Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and state, "I opt out of the HCS wage and hour settlement" ("Opt-Out Statement"). To be effective, such Opt-Out Statement must be sent to the Claims Administrator via First Class United States Mail, postage prepaid, and must be postmarked by a date certain to be specified on the Notice of Settlement, which date will be thirty (30) days after the Claims Administrator mails the Notice of Settlement.

i. Class Members whose first mailing was returned to the Claims Administrator as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Court's Order preliminarily approving the settlement and this Agreement. The Claims Administrator shall not

attempt more than two (2) mailings of the Notice of Settlement to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

          j.    The Claims Administrator shall keep accurate records of the dates on which it sends Notices of Settlement to Class Members.

          k.    The Claims Administrator will stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and counsel for the Defendants no later than five (5) days after receipt thereof.  The Claims Administrator will also, within five (5) days of the end of the opt-out period, file with the Clerk of the Court, stamped copies of any Out-Out Statements.  The Claims Administrator will, within twenty-four (24) hours of the end of the out-out period, send a final list of all Opt-Out Statements to Class Counsel and counsel for the Defendants by both email and overnight delivery.  The Claims Administrator will retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

          l.    Any Class Member who does not properly submit a timely Opt-Out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement and will be eligible for payment hereunder, as provided for herein.  Any Class Member who opts out will not receive any payment of any amount.

          m.    Any Class Member who does not opt out of the Settlement and who wishes to present objections to the proposed settlement at the Fairness Hearing must first set them forth in a written statement and mail it to the Claims Administrator ("Written Objection"). A Written Objection must be postmarked by a date certain to be specified on the Notice of Settlement, which date will be thirty (30) days after the Claims Administrator mails the Notice of Settlement.  The Written Objection must include: (1) the words, "I object to the HCS wage-and-hour settlement"; (2) all reasons for the objection (any reasons not included in the Written Objection will not be considered); and (3) the name, job title, address, and telephone numbers for the Class Member making the objection.  An objection will not be valid or considered by the Court if it does not specifically comply with all of the requirements listed herein.  The Claims Administrator will stamp the date received on the original and send copies of each Written Objection to Class Counsel and counsel for the Defendants by email and overnight delivery no later than three (3) days after receipt thereof.  The Claims Administrator will also file the date-stamped originals of any and all Written Objections with the Court no later than fifteen (15) calendar days before the Fairness Hearing.

          n.    An objector also has the right to appear at the Fairness Hearing either in person or through his or her counsel, if his or her Written Objection so states.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her Written Objection at the time he or she submits his or her Written Objection.  An objector may withdraw his or her objections at any time.  No Class Member may

appear at the Fairness Hearing unless he or she filed a timely Written Objection that complies with the procedures required under this Agreement. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her Written Objection. Any Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement or speak at the Fairness Hearing.

    o. Class Counsel and/or counsel for the Defendants may file with the Court a written response to any filed Written Objections no later than three (3) calendar days before the Fairness Hearing.

    p. Sufficiently in advance of the Fairness Hearing, Class Counsel will submit to counsel for the Defendants a draft Motion for Judgment and Final Approval of the settlement and this Agreement. Class Counsel will allow counsel for the Defendants eight (8) calendar days to review and comment on the terms of such papers, and agrees to work cooperatively with counsel for the Defendants to ensure the language of such motion is acceptable to counsel for the Defendants.

    q. Unless otherwise ordered by the Court, not later than fourteen (14) calendar days before the Fairness Hearing, Class Counsel shall file a joint Motion for Judgment and Final Approval of the settlement and this Agreement requesting that the Court shall, among other things, (i) finally certify the Class for purposes of settlement, (ii) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out in accordance with this Agreement, (iii) approve and incorporate the terms of the release for the Class Members and the terms of the release for the Named Plaintiff, described in paragraph 12; (iv) enter an order permanently enjoining all Class Members who have not timely opted out from pursuing and or seeking to reopen claims that have been released by this Agreement; and (v) enter final judgment in accordance with this Agreement and dismiss the Lawsuit with prejudice, retaining jurisdiction over the settlement. The Defendants shall join the motion or shall file their own separate papers but may not oppose the motion. The parties agree to request that the Court approve a final approval order and judgement in the form of Exhibit D.

    r. At the Fairness Hearing, the Parties will request that the Court issue all of the relief set forth in the Motion for Judgment and Final Approval.

    **5.**  <u>**Allocation and Distribution of the Net Total Settlement Amount.**</u>

    a. The "Net Settlement Amount" is defined as the Total Settlement Amount less the following amounts as approved by the Court: (i) Service Award to the Named Plaintiff; (ii) the Named Plaintiff Settlement Payment payable to Named Plaintiff; (iii) Class Counsel's attorneys' fees and litigation costs and expenses; and (iv) the cost of the Claims Administrator.

    b. Each Class Member who does not timely opt out of the Class shall receive an individual payment ("<u>Individual Payment</u>"), in an amount equal to the Net Settlement

Amount multiplied by that Class Member's Percentage Allocation Number.  The methodology that the Claims Administrator will use to calculate each Class Member's Percentage Allocation Number is detailed on Exhibit "E".

         c.     Within twenty (20) days of the Court's final approval of this Agreement, the Claims Administrator shall deliver to Class Counsel and counsel for the Defendants a schedule of each Class Members' Individual Payment.  Notwithstanding anything to the contrary, such calculation of the Individual Payments shall be final and binding on each Class Member and the Defendants.

         d.     Within twenty (20) days following the Effective Date (as defined in paragraph 10 below) the Claims Administrator shall: (i) distribute to Class Counsel its full reimbursement of expenses; (ii) distribute to Class Counsel its proportionate fee amount; (iii) distribute to Named Plaintiff her proportionate Service Award and proportionate Named Plaintiff Settlement Payment; (iv) distribute to the Claims Administrator its Administrator Fee; and (v) distribute, to each Class Member who has not timely opted-out of the Class, the first installment of his or her Individual Payment, less applicable withholding taxes as appropriate.

         e.     Within twenty (20) days of receipt by the Claims Administrator of each subsequent installment payment provided for in paragraph 1 of this Agreement, the Claims Administrator shall: (i) distribute to Class Counsel's its proportionate fee amount; (ii) distribute to Named Plaintiff her proportionate Service Award and proportionate Named Plaintiff Settlement Payment; (iii) distribute to the Claims Administrator its Administrator Fee; and (iv) distribute, to each Class Member who has not timely opted-out of the Class, each such subsequent installment of his or her Individual Payment, less applicable withholding taxes as appropriate.

         f.     Each installment of each Individual Payment will be made sent by the Claims Administrator by mailing a check to each Class Member at his or her address as listed on the Class Contact List, as maintained and updated by the Claims Administrator.  The Claims Administrator shall provide information related to the amount of each settlement check and to whom it is payable and to whom it was mailed and the date of mailing, to Class Counsel and counsel for the Defendants.

         g.     If a check is returned to the Claims Administrator by the post office with a forwarding address, the Claims Administrator shall re-mail the check to the forwarding address and provide Class Counsel and counsel for the Defendants with proof of such mailing.  If a check is returned to the Claims Administrator without a forwarding address, the Claims Administrator shall use reasonable efforts to attempt to find a new address, and if a new address is found, the Claims Administrator shall re-mail the check to said new address.

         h.     If the Notice of Settlement was not returned, but if payments to the Class Members are not cashed within 120 days, or if the Claims Administrator is unable to locate an address for a Class Member whose settlement check was returned, the following procedure

shall apply:  First, if the address of such Class Member becomes known before the next installment of the Class Member's Individual Payment is paid, the appropriate amounts attributable to that Class Member will be included with the next installment, if any, of the Total Settlement Amount to such Class Member.  Second, if the address of such Class Member is not known before the final payment of the Total Settlement Amount is paid, or if the final installment payment to a Class Member is not cashed within 120 days, the appropriate amounts attributable to that Class Member will be deposited by the Claims Administrator with the New York State Comptroller's Office – Office of Unclaimed Funds.

### 6.    Service Award and Named Plaintiff Recovery

a.    Class Counsel shall seek approval for an incentive payment of $5,000.00 for services Named Plaintiff rendered on behalf of the Class Members (the "Service Award").  The Defendants shall take no position with respect to, and shall not object to, this request.  In addition, Plaintiff Allison Hypolite will be paid $30,000 as settlement of her individual claims in this suit ("Named Plaintiff Settlement Amount").  These amounts will be paid proportionately at the same time as the class payments.

b.    The substance of the above-referenced Named Plaintiff's application for the Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit.  The outcome of the Court's ruling on the application for the Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.  Any Service Award not approved by the Court becomes part of the Net Settlement Fund.  The Service Award will not be paid if the Defendants void this Agreement as permitted by paragraph 11 or if this Agreement does not receive final court approval.

c.    The Service Award and Named Plaintiff Settlement Amount will be less applicable withholdings and the Named Plaintiff will receive an IRS Form W-2 for the Service Award and Named Plaintiff Settlement Amount.

### 7.    Attorneys' Fees; Litigation Expenses.

a.    Class Counsel shall seek approval for an award of attorneys' fees in an amount of thirty (30%) percent of the Total Settlement Amount, or One Million, Two-Hundred Thousand dollars ($1,200,000).  Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses which shall not exceed Ten Thousand dollars ($10,000.00) (not including the Administrator's fees), to be deducted from the Total Settlement Amount.  Defendants shall take no position with respect to, and shall not oppose, such attorneys' fees and costs/expenses applications.

b.      Any attorneys' fees or litigation costs and expenses not approved by the Court become part of the Net Settlement Fund, and the Defendants will not have any additional liability for Class Counsel's attorneys' fees and costs beyond that which is approved by the Court.  No attorneys' fees or litigation costs and expenses will be paid if the Defendants void this Agreement as permitted by paragraph 11 or if this Agreement does not receive final court approval.

c.      The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for final approval.

d.      All attorneys' fees and litigation expenses and costs approved by the Court shall be paid without withholding and reported to the IRS on Form 1099 as appropriate.

## 8.      Payroll Taxes and Withholdings

a.      The Individual Payments shall be allocated fifty (50%) percent to alleged back wages and fifty (50%) percent to alleged interest and/or liquidated damages.

b.      All Individual Payments to Class Members shall be paid by the Claims Administrator as follows:

1.      The amounts that are allocable to unpaid wages shall be subject to applicable payroll and withholding taxes (including, but not limited to, federal, state, and local income tax withholding and the employee share of FICA tax).  HCS shall be responsible for, and shall pay, any and all applicable employer tax contributions associated with the fifty (50%) of the Individual Payments allocated to back wage payments, including the employer share of FICA, all of which shall be in addition to, and not be paid out of, the Total Settlement Amount.

2.      The amounts that are allocable to liquidated damages and/or interest shall be paid by a separate check from which payroll and withholding taxes shall not be deducted.

c.      As appropriate, the Claims Administrator will issue an IRS Form W-2 to Class Members for the portions of their Individual Payments which constitute back wages, and an IRS Form 1099 to Class Members for the portion of their Individual Payments that represent liquidated damages and/or interest.

d.      The Named Plaintiff and each Class Member acknowledges and agrees that each will be solely responsible for all taxes, interest, and penalties due to be paid by

such Class Member with respect to any payment received pursuant to this Agreement (other than the employer's share of FICA tax and any unemployment tax due) and will indemnify, defend, and hold HCS, the other Releasees, and the Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees, and other costs imposed on HCS, any other Releasee, or the Claims Administrator as a result of the Named Plaintiff's and/or a Class Member's failure to timely pay such taxes.

       e.     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a settlement check.

       **9.**     **Settlement Checks**

       A Class Member who does not timely return an Opt-Out Statement will be issued a settlement check by the Claims Administrator in accordance with this Agreement and the Order by the Court granting final approval of the settlement and this Agreement.

       **10.**     **Effective Date**

       a.     This Agreement shall become effective upon its execution.

       b.     The Effective Date shall be the later of (1) thirty-three (33) days after entry of an order and/or final judgment by the Court ("the "Order") granting final approval of this Agreement and dismissing the case with prejudice, if no appeal of such final approval is then pending, or (2) if an appeal of such final approval is then pending, the day after the Order is affirmed on appeal.

       c.     If the Court does not enter an Order granting final approval of the settlement and this Agreement, or such Order does not become final, the Parties shall return to their positions prior to the filing of the motion for preliminary approval of this Agreement unless the Parties jointly agree to (1) seek reconsideration or appellate review of the decision denying entry of the Order, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not reached or not approved:

       1.     The Lawsuit will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and the Defendants may assert all potentially applicable defenses in connection with the Lawsuit (e.g., contest whether the Lawsuit should be maintained as a class action or collective action, contest the merits of the claims being asserted in the Lawsuit, etc.).  In such case, the Parties will negotiate and submit for Court approval a revised case management schedule.

       2.     The Claims Administrator will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Claims

Administrator via first class mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Settlement.

      3.  If the Class Settlement does not become Effective, the Plaintiff and the Defendants agree to share the Claims Administrator's costs related to the settlement and to the notice to the class that the settlement was proposed for approval and not approved.

## 11.  <u>Voidability of Settlement</u>

    If either (a) 30 or more Class Members; or (b) any number of Class Members whose cumulative claims the Defendants reasonably value at $400,000 or more, timely opt out of the Class as provided in this Agreement, the Defendants may, but are not obligated to, void this Agreement on or before the date 10 days after the Opt-Out Deadline by giving written notice to the Court and the Class Counsel and must subsequently provide notice to the Class.  If the Defendants revoke this Agreement, the Lawsuit will proceed as if there was no attempt at settlement and the Parties will return to their positions prior to the filing of the motion for preliminary approval of this Agreement.  In that event, the class certified for purposes of settlement shall be decertified, and the Defendants may assert all potentially applicable defenses in connection with the Lawsuit (e.g., contest whether the Lawsuit should be maintained as a class action or collective action, contest the merits of the claims being asserted in the Lawsuit, etc.). The Defendants agree that if they void the settlement under this paragraph, they will agree to pay for the Administrator's costs related to the Settlement and to the mailing to the Class of a notice of the voiding of the Settlement.

## 12.  <u>Release</u>

    By operation of the entry of an Order by the Court granting final approval of the settlement and this Agreement, and except as to such rights or claims as may be created by this Agreement:

      a.  Each individual Class Member, on behalf of him/herself and his/her heirs, successors, executors, administrators, and assigns ("Releasors"), fully and finally releases and discharges the Defendants, and their respective owners, parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, current and former employees, attorneys, insurers, and assigns (collectively, "Releasees"), of and from any and all claims, causes of action, obligations, damages, liabilities, and expenses (inclusive of attorneys' fees and costs) of any kind or nature whatsoever: (i) alleged in the Lawsuit,  arising out of, or related to the factual allegations in the Lawsuit, including but not limited to, all claims under the Fair Labor Standards Act, the New York Labor Law, and the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 NYCRR Part 142, and all claims for breach of any contract claims (including third-party beneficiary claims) relating to compensation or benefits covered under Public Health Law § 3614-c or N.Y. City Admin. Code § 6-109; or (ii) arising under any federal, New York, local wage and hour or compensation-related laws, and

- 13 -

which arose or accrued on or before May 1, 2018 (collectively "Released Claims").  Without limitation, the Released Claims include all claims relating to minimum wages, overtime compensation, regular wages, spread-of-hours pay, travel time pay, wage parity, employee benefits, supplemental wages, wage notice, pay statement, record-keeping violations, liquidated damages, interest, attorneys' fees or costs, or other wages or similar amounts, whether pursuant to any written or oral contract, promise, or other understanding, including any claims asserted as alleged third party beneficiary of any contract, or pursuant to any federal, state, or local rule, regulation or law, including, but not limited to (all as amended), any claim arising under the FLSA, NYLL, NY Public Health Law § 3614-c, 12 NYCRR Part 142; and N.Y. City Admin. Code § 6-109.

b.      In addition to the release provided under the preceding paragraph, Named Plaintiff, on behalf of herself and her heirs, successors, executors, administrators, and assigns ("Plaintiff Releasor"), hereby releases all Releasees, of and from any and all claims, complaints, demands, actions, causes of action, suits, rights, debts, obligations, judgments, damages, entitlements, liabilities, and expenses (inclusive of attorneys' fees) of any kind or nature whatsoever that Plaintiff now has or ever had against any Releasee, whether known or unknown, that Plaintiff has possessed, or which have accrued, at any time up to the date Plaintiff executes this Agreement.  For the avoidance of doubt, and without limiting the broad nature of the claims released, the immediately preceding sentence releases each of the Releasees from any and all claims: (1) related to Plaintiff's employment with Defendants or any other Releasee, or the termination of such employment; (2) arising under any law relating to employment, including, but not limited to (all as amended), the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Equal Pay Act of 1963, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the Genetic Information Nondiscrimination Act of 2008, the Immigration Reform and Control Act of 1986, the Worker Adjustment and Retraining Notification Act, the Civil Rights Act of 1866 (42 U.S.C. §§ 1981–1988), the Employee Retirement and Income Security Act of 1974, Articles 5, 6, 7, and 19 of the New York Labor Law (N.Y. Labor Law §§ 160 to 219-c, 650 to 665), Public Health Law § 3614-c, Sections 120 and 241 of the New York Workers' Compensation Law, the New York Human Rights Law (N.Y. Executive Law §§ 290 to 301), Article 23-A of the New York State Corrections Law, the New York Worker Adjustment and Retraining Notification Act, the New York City Human Rights Law (N.Y. City Admin. Code §§ 8-101 to 8-1103), the New York City Earned Sick Time Act (N.Y. City Admin. Code §§ 20-911 to 20-924) and N.Y. City Admin. Code § 6-109; (3) for wages as well as any other amounts allegedly owed under federal, state, or local law; (4) arising under any employee benefit plan, policy, or practice; (5) arising under tort, contract, or quasi-contract law, including but not limited to claims of negligence, breach of an expressed or implied contract, retaliation, violation of public policy, fraud, defamation, slander, libel, or negligent or intentional infliction of emotional distress; (6) for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, compensatory or punitive damages, liquidated damages, experts' fees, medical fees or expenses,

- 14 -

costs, or disbursements; and (7) arising under any other federal, state, or local law, rule, regulation, order, common law, ordinance, or court decision.

        c.      Except as provided in this Agreement, Class Counsel and the Named Plaintiff, on behalf of the Class Members and each individual Class Member, hereby forever and finally release and discharge any claim that he, she, or they may have against any Releasee for attorneys' fees or litigation expenses or costs associated with Class Counsel's representation of the Class Members and the Named Plaintiff.  Class Counsel further understands and agrees that any attorneys' fees and litigation costs approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Lawsuit, except for any fees that Class Counsel incurs if HCS breaches this Agreement, and Class Counsel must take action to enforce this Agreement.

        d.      This releases set forth in this section shall not apply to Class Members who timely opt-out pursuant to this Agreement or to class members who have reached separate written settlement agreements with HCS.  This release shall also not apply to compromise any right to workers compensation benefits or any claim for discrimination or retaliation. Regardless of the amounts attributed to any particular claim under the allocation formula herein, each individual class member is subject to the full release

        e.      In addition to the foregoing release provisions, amounts paid to each Class Member shall be deemed full satisfaction of such Class Member's Released Claims, regardless of the amount attributed to any particular claim under the allocation formula set forth herein.

## 13.   **Miscellaneous**

        a.      The Defendants will not retaliate in any manner against the Named Plaintiff or any current or former employee(s) of HCS who (i) participated in the Lawsuit, or (ii) participates in the settlement provided for in this Agreement.

        b.      Nothing contained in this Agreement shall be deemed an admission by the Defendants of liability for the claims asserted in the Lawsuit.  Defendants expressly deny all wrongdoing alleged in the complaint or otherwise.

        c.      The Parties have negotiated all the terms and conditions of this Agreement at arm's length.

        d.      The Parties have jointly drafted this Agreement through their respective counsel and, as such, this Agreement shall not be construed for or against any party by virtue of draftsmanship.  The captions or headings of the paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

e.       All of the terms and conditions of this Agreement in the exact form set forth herein are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

f.       This is a binding agreement, subject to approval by the Court, and may not be modified except by a writing executed by all of the Parties hereto.  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

g.       The Parties shall cooperate fully with each other and work together diligently and in good faith to obtain preliminary and final approval of this Agreement by the Court.  Each of the Parties, upon the request of the other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions and intent of this Agreement, including acts of complying with the Court's orders regarding the form and method of notice to the Class.

h.       Class Counsel and the Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

i.       This Agreement arises from Class Members' employment within the State of New York and, as such, shall be interpreted, construed, and governed by and in accordance with, the laws of the State of New York without regard to New York's choice of law principles.

j.       Following the final approval of this Agreement, the Court shall retain jurisdiction to enforce this Agreement and to resolve any disputes arising thereunder.

k.       This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

l.       The Parties agree that they will respond to any press inquiries with the response that "the parties have resolved their differences to their mutual satisfaction" or

words to that effect.  The Named Plaintiff, Class Counsel, Defendants, and Defense Counsel shall issue no press release regarding this Agreement or the settlement and shall make no statements regarding this Agreement or this settlement on the internet, websites or social media for a period of 6 months following final approval of this Agreement.

### 14.    Procedures in the Event of Breach.

The Parties acknowledge that a breach of any provision of this Agreement can cause damage and injury to the non-breaching party.  If a court of competent jurisdiction determines that a party hereto has breached any of the terms of this Agreement, the Parties agree that, in addition to any remedies available to the non-breaching party in law or equity for a breach of this Agreement, the non-breaching party shall be entitled to all of their reasonable costs and expenses, including reasonable attorneys' fees, incurred in enforcing the terms of this Agreement and/or defending any action(s).

### 15.    Severability.

Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction, the Parties agree that said court has the full discretion to interpret or modify all such provisions to render them enforceable.  If such interpretation or modification is not possible, such provision immediately shall become null and void, leaving the remainder of this Agreement in full force and effect, which then shall be interpreted to bar any and all claims that any Class Member may have against any Releasee.

### 16.    Notice.

Any notices required to be given under this Agreement shall be given either by overnight delivery (such as FedEx) or by certified first class mail, return receipt requested, postage prepaid.  If notice is given by overnight delivery, it will be deemed effective on the delivery date, as confirmed by the courier.  If notice is given by certified first class mail, it will be deemed effective three days after it is sent.  Notice shall be given to the following:

If to HCS and/or the Individual Defendant:

To:    Agnes Shemia
       HCS of New York, Inc.
       6520 New Utrecht Avenue
       Brooklyn, NY 11219

With a copy to:
       Peter C. Godfrey, Esq.
       Hodgson Russ LLP
       605 Third Avenue
       New York, New York 10158

- 17 -

If to Named Plaintiff or Class:

To:     William Coudert Rand, Esq.
        501 Fifth Avenue, 15th Floor
        New York, New York 100173

17.     **Execution.**

        This Agreement may be executed in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.  Any party may execute this Agreement by signing, or causing its counsel to sign, on the designated signature block below and transmitting that signature page via facsimile or email to the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile or email. Class Counsel and the Class Administrator shall be agreed to be third party beneficiaries of this Agreement.

Dated: _June 5_ , 2018

                                        _Allison Hypolite_
                                        Allison Hypolite

Dated: _Jun 5_ , 2018

                                        LAW OFFICE OF WILLIAM COUDERT RAND
                                        By: _WC. R_
                                        William C. Rand, Esq.

Dated: _6 5_ , 2018

                                        Home Health Care Services of New York Inc.

                                        By: _____
                                        Agnes Shenna
                                        Title:

Dated: _6 5_ , 2018

                                        _____
                                        Agnes Shenna

- 18 -

Exhibit "A"
**[Notice of Class Action Lawsuit, Settlement and Fairness Hearing]**

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,

Plaintiffs,

v.                                                    Case No. 1:16-cv-04922
                                                      (JGK) (JLC)

HOME HEALTH CARE SERVICES OF NEW YORK
INC. d/b/a "HCS Healthcare", AGNES SHEMIA, and
JOHN DOES #1-10,

Defendants.
_____

**NOTICE OF CLASS AND COLLECTIVE ACTION
SETTLEMENT AND SETTLEMENT FAIRNESS HEARING**

TO:   ALL INDIVIDUALS EMPLOYED BY HOME HEALTH
      CARE SERVICES OF NEW YORK INC. ("HCS" OR
      "DEFENDANT") AS HOME HEALTH AIDES FROM
      JUNE 24, 2010 THROUGH MAY 1, 2018 ("CLASS
      MEMBERS" OR "CLASS").

**IF YOU NEED THIS DOCUMENT TRANSLATED INTO SPANISH, RUSSIAN, OR CHINESE, CALL
212-286-1425**

SI NECESITA ESTE DOCUMENTO TRADUCIDO EN ESPAÑOL LLAME AL 212-286-1425

ЕСЛИ ВАМ НУЖЕН ЭТОТ ДОКУМЕНТ, ПЕРЕВОДНЫЙ В ИСПАНСКИЙ, РОССИЙСКИЙ ИЛИ КИТАЙСКИЙ, ЗВОНОК 212-286-1425

如果您需要将此文档翻译成中文，请致电212-286-1425

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS MAY BE AFFECTED BY THE PROCEEDINGS IN THIS LITIGATION.

**EXCLUSION DEADLINE:**  ANY REQUESTS FOR EXCLUSION MUST BE MAILED TO THE CLAIMS ADMINISTRATOR IN THE MANNER DESCRIBED BELOW, POSTMARKED ON OR BEFORE **[INSERT DATE]** *[30 days after mailing of this notice by the administrator]*.

**OBJECTION DEADLINE:**  ANY NOTICES OF OBJECTIONS AND/OR INTENTIONS TO APPEAR AND BE HEARD ORALLY AT THE SETTLEMENT FAIRNESS HEARING MUST BE MAILED TO THE CLAIMS ADMINISTRATOR IN THE MANNER DESCRIBED BELOW, POSTMARKED ON OR BEFORE **[INSERT DATE]** *[30 days after mailing of this notice by the administrator]*

## I.    PURPOSE OF THIS NOTICE

This Notice is given pursuant to Federal Rule of Civil Procedure 23, the Fair Labor Standards Act, and an Order entered by the United States District Court for the Southern District of New York (the "Court"), dated _____ (the "Preliminary Order").  The above-captioned action (the "Action") is now pending before the Court as a class action, conditionally certified for purposes of settlement only.  The Action seeks damages against HCS for unpaid overtime and related remedies.

This Notice informs you of the pendency of the Action and the existence of a proposed settlement (the "Settlement") that will affect the rights of all Class Members.

You may be a Class Member.  This Notice describes rights that Class Members have under the proposed Settlement and the steps Class Members must take in relation to the Action.

This Notice is not an expression of any opinion by the Court as to the merits of any claims or any defenses asserted by any party in the Action or the fairness or adequacy of the proposed Settlement.

## II.   SUMMARY OF PROPOSED SETTLEMENT

### A.   Proposed Monetary Terms

Pursuant to the Settlement, HCS has agreed to pay a total of $4 million dollars (the "Total Settlement Amount") to fully and finally resolve the Action and to satisfy all claims of Class Members.

After deducting (1) attorneys' fees and expenses of Class Counsel, (2) fees of the Claims Administrator, and (3) payments to the Named Plaintiff, the Claims Administrator will distribute all remaining amounts (the "Net Settlement Fund") to Class Members based on the allocation formula set forth below in the section entitled "Distribution and Allocation of Settlement Proceeds."

HCS will pay the Total Settlement Amount in seven equal installments of $571,428.57. Accordingly, the Net Settlement Fund will be distributed to Class Members in seven installments. The Claims Administrator will make the first distribution of the Net Settlement Fund to Class Members no later than 53 days after the Court issues an order granting final approval of the Settlement if no appeal is filed or if an appeal is filed within 21 days after the order denying the appeal. The Claims Administrator will make the six remaining distributions on an annual basis over a six-year period.

### B.   Attorneys' Fees and Costs Sought

"Plaintiffs' Counsel" or "Class Counsel" means the law firm of William Coudert Rand, 501 Fifth Ave., 15th Floor, New York, N.Y. 10017.

HCS has agreed to pay to pay Class Counsel's fees in the amount of One Million and Two Hundred Thousand Dollars ($1,200,000.00) and expenses not to exceed $10,000.00. All expenses will be paid out of HCS's first installment payment and fees will be paid proportionately out of each installment payment if the Court approves the fairness of the Settlement and fee arrangement. Class Counsel will not make any further application to the Court for any additional fees, costs and/or expenses.

### C.   Awards Sought for the Named Plaintiff

HCS has agreed to pay the Named Plaintiff the sum of $5,000.00 as a service award and $30,000.00 for her individual claims. These amounts will be paid out proportionately over the seven settlement installment payments.

## III.   NOTICE OF SETTLEMENT FAIRNESS HEARING

NOTICE IS HEREBY GIVEN, pursuant to Federal Rule of Civil Procedure 23 and the Preliminary Order, that a hearing will be held before the Honorable _____., in Courtroom _____ of the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007-1312, at 10:00 a.m.,

- 21 -

on _____, 2018 (the "Settlement Fairness Hearing") to: (i) determine whether a class should be certified for settlement purposes; (ii) determine whether the Settlement Agreement dated _____ (the "Settlement Agreement") should be approved by the Court as being fair, reasonable and adequate for the Class Members; (iii) consider the application of Plaintiffs' Counsel for an award of attorneys' fees and expenses, as agreed by HCS; and (iv) consider Class Counsel's request for a service award to the Named Plaintiff for her participation as class representative for participating in this litigation.

The Court, in the Preliminary Order, has conditionally certified, for settlement purposes only, a Class consisting of all individuals who were employed by HCS as home health aides from June 24, 2010 through May 1, 2018,

## IV.    BACKGROUND OF THE ACTION

On June 24, 2016, Named Plaintiff Allison Hypolite brought this lawsuit against HCS and Agnes Shemia on behalf of herself and all others similarly situated ("Plaintiffs"). A collective action under the Fair Labor Standards Act ("FLSA") was conditionally certified on June 23, 2017, and after the mailing of notice, certain health aides filed notices of consent to opt-in and join this lawsuit.

Specifically, Plaintiffs allege, among other things, that they are owed (a) overtime pay at the rate of one and one-half times their regular wage rate under the FLSA and the New York Labor Law ("NYLL") for work in excess of forty (40) hours per workweek on and after January 1, 2018, (b) wages for the 11 hours deducted from their 24-hour shifts for 3 hours of meal breaks and 8 hours of sleep, (c) spread of hours wages for hours worked a spread of more than 10 hours in a day, (d) minimum wages under the Wage Parity Act, and (e) statutory damages for violations of the notice provisions of the New York Wage Theft Prevention Act. Plaintiffs also sought liquidated damages, together with prejudgment interest and attorneys' fees and costs.

Defendant has denied any wrongdoing or liability and is vigorously contesting all claims that have been asserted.

## V.    BACKGROUND TO THE SETTLEMENT

Before entering into the Settlement, Plaintiffs' counsel conducted an investigation relating to the events and transactions underlying Plaintiffs' claims. Plaintiffs' Counsel's decision to enter into this Settlement was made with knowledge of the facts and circumstances underlying Plaintiffs' claims and the strengths and weaknesses of those claims. In determining to settle the Action, Plaintiffs' Counsel has analyzed the evidence adduced during pretrial proceedings and settlement negotiations, and has taken into account the substantial expense and length of time necessary to prosecute the litigation through class certification, trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation. The parties negotiated over the course of months to reach

agreement on the terms of the Settlement. Plaintiffs' Counsel believes that the Settlement described herein confers substantial benefits upon the Class Members. Based upon consideration of these factors, and others, Plaintiffs' Counsel has concluded that it is in the best interest of Plaintiffs, and the Class Members, to settle the Action on the terms described herein, and that such Settlement is fair, reasonable and adequate to the Class.

Plaintiffs' Counsel believes that if the Action were not settled, and (1) the Court certified the Action as a class action over HCS's opposition, (2) the Action proceeded to trial, and (3) the individual Named Plaintiff and the Class Members prevailed on every claim and contention asserted, the recovery by judgment could be greater than the recovery under the Settlement. However, Plaintiffs' Counsel considered that there was a substantial risk that, if the Action proceeded, class certification would not be granted, and that, even if certification were granted, Plaintiffs and the Class Members might not have prevailed on any or all of their claims. Plaintiffs' Counsel also considered the likelihood that HCS would appeal any adverse rulings, which would, at a minimum, substantially delay any recovery and present a risk that such rulings would be reversed in HCS's favor. Finally, Plaintiffs' Counsel considered the risk that HCS might file for bankruptcy if Plaintiffs were able to successfully obtain a large judgment after trial.

HCS denies all allegations of wrongdoing or liability whatsoever. It desires to settle and terminate all existing or potential claims against it which were, or could have been, asserted in the Action, without in any way acknowledging any fault or liability, in order to eliminate the expense and uncertainty of protracted litigation. The Settlement is not, and shall not, be construed or be deemed to be, evidence or an admission or a concession on the part of HCS of any fault or liability or damages whatsoever, and HCS does not concede any infirmity in the defenses that it has asserted or could have asserted in the Action.

The amount of damages, if any, which Plaintiffs could prove on behalf of themselves or the Class Members was also a matter of dispute. The Settlement's provisions do not constitute a finding, admission, or concession of the existence, extent, or measure of damages. No determination has been made by the Court as to liability or the amount, if any, of damages incurred by the Class, nor on the proper measure of any such damages. The determination of damages, like the determination of liability, is a complicated and uncertain process. The Settlement herein will provide an immediate and substantial benefit, and avoid the risks that liability or damages might not be proved at trial, as well as the risk that class certification might not be granted.

THE COURT HAS NOT FINALLY DETERMINED THE MERITS OF PLAINTIFFS' CLAIMS OR HCS's DEFENSES THERETO. THIS NOTICE DOES NOT IMPLY THAT THERE HAS BEEN OR WOULD BE ANY FINDING THAT HCS VIOLATED ANY LAW, DUTY, OR OBLIGATION OR THAT CLASS MEMBERS COULD HAVE RECOVERED ANY AMOUNT IF THE ACTION WERE NOT SETTLED.

## VI.    DISTRIBUTION AND ALLOCATION OF SETTLEMENT PROCEEDS

The Effective Date of the Settlement is the later of (1) thirty-three (33) days after entry of an order and final judgment by the Court granting final approval of the this Settlement, if no appeal of such final approval is then pending, or (2) if an appeal of such final approval is then pending, the day after the order and final judgment is affirmed on appeal.

The Claims Administrator will make the first distribution of the Net Settlement Fund to Class Members no later than twenty (20) days after the Effective Date (fifty-three (53) days after the Court issues an order granting final approval of the Settlement). The Claims Administrator will make the six remaining distributions on an annual basis.

### ALLOCATION

The Claims Administrator will divide the Net Settlement Amount among five claims:

1. 40% of the Net Settlement Amount will be allocated to the claims related to the loss of the federal companionship exemption under the FLSA (the "First Claim Allocation");

2. 30% of the Net Settlement Amount will be allocated to the claims related to the alleged unpaid hours for 24-hour, or "live-in," shifts (the "Second Claim Allocation");

3. 10% of the Net Settlement Amount will be allocated to the claims related to the alleged failure to provide Wage Theft Protection Act-compliant new-hire notices and pay statements (the "Third Claim Allocation");

4. 10% of the Net Settlement Amount will be allocated to the claims related to the alleged failure to provide all amounts and/or benefits required under the Wage Parity Law (the "Fourth Claim Allocation"); and

5. 10% of the Net Settlement Amount will be allocated to the claims for other unpaid wages, including minimum wage, travel time, and spreads-of-hours pay (the "Fifth Claim Allocation").

The Claims Administrator will then determine each Class Member's share, if any, of the First Claim Allocation, Second Claim Allocation, Third Claim Allocation, Fourth Claim Allocation, and/or Fifth Claim Allocation as follows:

1. Each Class Member's share of the First Claim Allocation, if any, will be determined by dividing the total number of overtime hours the Class Member worked as a home health aide for HCS from January 1, 2015 through October 13, 2015, by the total number of overtime hours all Class Members worked as home health aides for HCS from January 1, 2015 through October 13, 2015, and then multiplying this quotient by the amount of the First Claim Allocation (the result being the "First Claim Share");

- 24 -

2.      Each Class Member's share of the Second Claim Allocation, if any, will be determined by dividing the total number of "live-in" cases worked by the Class Member as a home health aide for HCS during the Class Period, by the total number of "live-in" cases worked by all Class Members as home health aides for HCS during the Class Period, and then multiplying this quotient by the amount of the Second Claim Allocation (the result being the "Second Claim Share");

3.      Each Class Member's share of the Third Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for HCS from April 9, 2011 through May 1, 2018, by the total number of weeks worked by all Class Members as home health aides for HCS from April 9, 2011 through May 1, 2018, and then multiplying this quotient by the amount of the Third Claim Allocation (the result being the "Third Claim Share");

4.      Each Class Member's share of the Fourth Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for HCS from March 1, 2012 through May 1, 2018, by the total number of weeks worked by all Class Members as home health aides for HCS from March 1, 2012 through May 1, 2018, and then multiplying this quotient by the amount of the Fourth Claim Allocation (the result being the "Fourth Claim Share"); and

5.      Each Class Member's share of the Fifth Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for HCS during the Class Period, by the total number of weeks worked by all Class Members as home health aides for HCS during the Class Period, and then multiplying this quotient by the amount of the Fifth Claim Allocation (the result being the "Fifth Claim Share").

## VII.    **RELEASE OF CLAIMS**

Unless you exclude yourself (or "opt-out") from the Settlement, as describe below, you will be subject to the Court's judgment and will not be permitted in the future to bring any "Released Claims" against HCS, it owners, employees, and affiliated entities, nor will you be permitted to participate as a class or collective member in any other action or lawsuit based on any of the Released Claims, regardless of whether such an action is already pending or may be filed in the future.

Upon entry of an order by the Court granting final approval of the Settlement, each Class Member (including you) who does not timely opt-out, will, on behalf of him/herself and his/her heirs, successors, executors, administrators, and assigns ("Releasors"), fully and finally release and discharge HCS and Agnes Shemia (the "Defendants"), and their respective owners, parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, current and former employees, attorneys, insurers, and assigns (collectively, "Releasees"), of and from any and all claims, causes of action, obligations, damages, liabilities, and expenses (inclusive of attorneys' fees and costs) that arose or accrued

- 25 -

on, or at any time before, May 1, 2018, of any kind or nature whatsoever, and that: (i) were alleged in the Action, or that arise out of, or relate to, the factual allegations in the Action, including but not limited to, all claims under the Fair Labor Standards Act (the "FLSA"), the New York Labor Law (the "NYLL"), and the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 NYCRR Part 142, and all claims for breach of any contract (including third-party beneficiary claims) relating to compensation or benefits covered under Public Health Law § 3614-c or N.Y. City Admin. Code § 6-109; or (ii) arise under any federal, New York, or local wage and hour or compensation-related laws.

The claims released above are referred to the "Released Claims." Without limitation, the Released Claims include all claims relating to minimum wages, overtime compensation, regular wages, spread-of-hours pay, travel time pay, wage parity, employee benefits, supplemental wages, wage notice, pay statement, record-keeping violations, liquidated damages, interest, attorneys' fees or costs, or other wages or similar amounts, whether pursuant to any written or oral contract, promise, or other understanding, including any claims asserted as alleged third party beneficiary of any contract, or pursuant to any federal, state, or local rule, regulation or law, including, but not limited to (all as amended), any claim arising under the FLSA, NYLL, NY Public Health Law § 3614-c, 12 NYCRR Part 142; and N.Y. City Admin. Code § 6-109.

## VIII.   <u>YOUR RIGHTS AS A CLASS MEMBER</u>

You have three options under this Settlement. You may: (A) remain in the Class and receive a payment under this Settlement; (B) exclude yourself from the Class and "opt-out"; or (C) object to the Settlement.

### A.   <u>Option 1: To Receive Money under the Settlement</u>

If you wish to remain in the Class and receive a payment under the Settlement, you are not required to do anything. After the Court has finally approved the Settlement and there are no appeals, you will receive distributions from the Claims Administrator, as described above. If you choose this option, you will be bound by all determinations and judgments in this Action concerning the Settlement, including the Release stated above, whether favorable or unfavorable. This means that you cannot sue, continue to sue, be a party, or be a class member or collective member in any other lawsuit against the Releasees based on the Released Claims or arising out of the issues raised in the Action.

### B.   <u>Option 2:  To Exclude Yourself from the Settlement</u>

If you do not wish to participate in the Settlement, you may exclude yourself (or "opt-out") by sending a letter to the Claims Administrator that says: "My name is _____. My current job title is _____. My current address is _____. My current phone number is _____. I wish to exclude myself and opt-out of the HCS wage and hour

settlement.  I understand that by excluding myself from the Settlement, I will not be entitled to any payments or other relief under the Settlement."

        To be effective, the letter must be sent to the Claims Administrator by First Class Mail, postage prepaid, and must be postmarked by _____ **[INSERT DATE]** *[30 days after mailing*].  The Claims Administrator address to which the letter must be mailed is: **[INSERT CLAIMS ADMINISTRATOR ADDRESS]**

**IF YOU ARE A CLASS MEMBER, AND YOU DO NOT PROPERLY EXCLUDE YOURSELF FROM THE CLASS, YOU WILL BE BOUND BY THE CLASS ACTION SETTLEMENT AND THE FINAL JUDGMENT OF THE COURT.**

**IF YOU EXCLUDE YOURSELF FROM THE CLASS, YOU WILL NOT BE BOUND BY THE SETTLEMENT, OR BY THE FINAL JUDGMENT OF THE COURT, BUT YOU WILL NOT BE ENTITLED TO ANY PAYMENT UNDER THE SETTLEMENT.**

### C.    <u>Option 3: To Object to the Settlement</u>

        If you do not opt-out, you may object to the Settlement.  If you choose to present objections to the proposed Settlement, you must set forth your objections in a written statement and mail it to the Claims Administrator ("<u>Written Objection</u>").

        A Written Objection must be postmarked by **[INSERT DATE 30 DAYS AFTER MAILING OF NOTICE].**  The Written Objection must include: (1) the words, "I object to the HCS wage-and-hour settlement"; (2) all reasons for the objection (any reasons not included in the Written Objection will not be considered); and (3) you name, job title, address, and telephone number.

        If you wish to appear at the Fairness Hearing, you must state your intention to do so in your Written Objection.  You may withdraw your Written Objection at any time.  You may not appear at the Fairness Hearing unless you file a timely Written Objection that complies with the procedures set out in this notice.  You may not present an objection at the Fairness Hearing based on a reason not stated in your Written Objection.

        An objection will not be valid or considered by the Court if it does not specifically comply with all of the requirements listed herein.

### IX.    <u>PROHIBITION AGAINST RETALIATION</u>

        If you are a current employee, you should know that HCS is prohibited by law from retaliating against you for participating in this settlement.  The parties agree that this is a fair settlement and recommend each Class Member to remain in the class and accept the settlement monies.  HCS emphasizes that there will be no retaliation against any Class Member for remaining in the class.

**X.**     <u>**CHANGE OF ADDRESS**</u>

If you change your residence after receiving this Notice, or if the notice was misaddressed, you should supply your name and correct address to counsel listed in this Notice and to the Claims Administrator to ensure that further communications reach you.

**XI.**    <u>**EXAMINATION OF PAPERS AND INQUIRIES**</u>

If you wish to obtain a copy of the Settlement Agreement, or if you have other questions, you may contact the claims administrator at _____, or Class Counsel at _____.

**PLEASE DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE.**

Dated: _____, 2018

**Exhibit "B"**
**[Proposed Order Preliminarily Approving Class Settlement]**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,

                              Plaintiffs,

        v.                                                      Case No. 1:16-cv-04922
                                                                (JGK) (JLC)

HOME HEALTH CARE SERVICES OF NEW YORK
INC. d/b/a "HCS Healthcare", AGNES SHEMIA, and
JOHN DOES #1-10,

                              Defendants.
_____

**ORDER PRELIMINARILY APPROVING
CLASS AND COLLECTIVE ACTION SETTLEMENT AND
PROVIDING FOR NOTICE OF FAIRNESS HEARING**

        **WHEREAS**, the class and collective action, *Allison Hypolite, et al.  v. Home*

*Health Care Services of New York Inc., et al.*, Civil Action Number 16 CV 04922 ("Lawsuit"), is

currently pending before this Court;

        **WHEREAS**, the parties have made an application, pursuant to Federal Rules of

Civil Procedure 23(e) and (g) for an order approving settlement of the claims alleged in the

Lawsuit on a class basis (the "Settlement") and appointing class counsel in accordance with a

Settlement Agreement dated as of June 5, 2018 (the "Agreement"), which, together with the

exhibits annexed thereto, sets forth the terms and conditions for a proposed settlement of the Lawsuit against Defendants and for dismissal of the Lawsuit against Defendants with prejudice upon the terms and conditions set forth therein, and the Court has read and considered the Agreement, the exhibits annexed thereto, and the parties' joint motion for approval; and

**WHEREAS**, all capitalized terms contained and not otherwise defined herein shall have the same meanings set forth in the Agreement.

**IT IS ON THIS ____ DAY OF _____, 2018, HEREBY ORDERED AS FOLLOWS:**

1.      The Court hereby preliminarily approves the Settlement set forth in the Agreement as being fair, just, and reasonable.

2.      For purposes of the Settlement, the Court hereby preliminarily certifies the class as defined in the Agreement (hereinafter, the "Class"); namely, all individuals who were employed by Defendant Home Health Care Services of New York ("HCS") as home health aides between June 24, 2010 and May 1, 2018.  The Court finds, for settlement purposes, that the Class meets all of the requirements of Federal Rule of Civil Procedure 23.

3.      The Court appoints as Class Counsel the Law Office of William Coudert Rand and approves the use of Simpluris Inc. as the Claims Administrator.

4.      The Agreement falls within the range of reasonableness and appears to be presumptively valid, subject only to the objections that may be raised at the final Fairness Hearing.

5.      The Court approves, as to form and content, the Notice of Settlement attached as Exhibit A to the Agreement under Federal Rules of Civil Procedure 23(c) and (e),

and finds that the mailing and distribution of the Notice substantially in the manner and form set forth in the Agreement constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to all persons in the Class, complying fully with the requirements of Federal Rule of Civil Procedure 23, the Fair Labor Standards Act (the "FLSA"), the Constitution of the United States, and any other applicable laws.

6.      A Fairness Hearing shall be held before this Court on _____, 2018, [not less than 90 days from the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715(b) notice mailing date] at the United States District Court, Southern District of New York, U.S. Courthouse,  500 Pearl Street,  New York, N.Y. 10007, to determine finally whether the proposed settlement of the Lawsuit on the terms and conditions provided for in the Agreement is fair, just, reasonable, adequate, and in the best interest of the Class, and should be approved by the Court; and whether entry of Judgment and Final Approval, as provided in the Agreement, should be entered.

7.      Class Counsel, along with the Claims Administrator, are hereby authorized to supervise and administer the notice procedure as more fully set forth below:

A.      On or before _____ [10 days from this Order], HCS shall provide the Claims Administrator and Class Counsel the following information for all Class Members: name, social security number, last known addresses, last known personal email addresses, if any, dates of employment, and other data necessary to calculate the Individual Payments, as that information exists on file with HCS (the "Class Contact List.").

B.      On or before thirty (30) days from this Order (the "Notice Date"), the Claims Administrator shall cause to be mailed, by first-class mail, a copy of the Notice of

- 31 -

Settlement, substantially in the form annexed as Exhibit A to the Agreement, to all putative Class and Collective Action Members who can be identified or located with reasonable effort.

   C. Class Members shall have thirty (30) days from the date that the Notice is mailed to opt-out of the settlement by mailing an Opt-Out Statement to the Claims Administrator, containing the information required by the Agreement.

   D. Class Members shall have thirty (30) days from the date that the notice is mailed to mail a Written Objection to the Claims Administrator, containing the information required by the Agreement.  Any statement of position or objection shall state the objector's name, address, and telephone number and dates of employment with HCS and whether the objector intends to speak at the Fairness Hearing.  Any member of the Class who does not make his or her objection in the manner provided in the Agreement shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as incorporated in the Agreement, the releases provide for in the Agreement, the award of attorneys' fees, costs, and expenses to Class Counsel, and the award of an incentive payment for the Named Plaintiff, unless otherwise ordered by the Court.

   E. Class Counsel and Defense Counsel shall file a Joint Motion for Judgment and Final Approval of the Settlement and the Agreement no later than fourteen (14) days before the Fairness Hearing.

   F. The Court reserves the right to adjourn the date of the Fairness Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement.  Notice of any

adjournment can be obtained from Class Counsel:  William C. Rand, Esq., Law Office of William Coudert Rand, 501 Fifth Ave., 15th Floor, New York, New York 10017 (phone #212-286-1425) (fax #646-688-3078).  The Court may approve the settlement, with such modifications as may be agreed to by Class Counsel and Defense Counsel, if appropriate, without further notice to the Class.

SO ORDERED

_____
United States District Judge

Dated: _____, 2018

- 33 -

**Exhibit "C"**

**Newspaper Publication Notice**

"NOTICE OF (A) CERTIFICATION OF CLASS OF HOME HEALTH AIDES WHO WERE EMPLOYED BY HOME HEALTH CARE SERVICES OF NEW YORK INC. FROM JUNE 24, 2010 TO MAY 1, 2018 and (B) SETLEMENT OF CLASS.  FOR MORE INFORMATION, CALL PLAINTIFF'S ATTORNEY WILLIAM C. RAND ESQ. at 212-286-1425"

**Exhibit "D"**

**Form of Order providing Final Approval of Settlement**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

ALLISON HYPOLITE,
Individually and on Behalf of All Other Persons
Similarly Situated,

                                          Plaintiffs,

          v.                                                          Case No. 1:16-cv-04922
                                                                      (JGK) (JLC)

HOME HEALTH CARE SERVICES OF NEW YORK
INC. d/b/a "HCS Healthcare", AGNES SHEMIA, and
JOHN DOES #1-10,

                                          Defendants.

———————————————————————

**[PROPOSED] ORDER AND FINAL JUDGMENT: (1) CONFIRMING
CERTIFICATION OF CLASS; (2) GRANTING FINAL APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT; AND (3) ENTERING FINAL JUDGMENT
DISMISSING THE ACTION WITH PREJUDICE**

This matter came on for hearing upon the Court's Order of _____, 2018

following preliminary approval of the Settlement in this action ("Preliminary Approval Order").

Due and adequate notice having been given to the Class (as defined below), and the Court having

considered all papers filed and proceedings had herein and all oral and written comments

received regarding the proposed Settlement, and having reviewed the record in the above

captioned matter, and good cause appearing,

- 35 -

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

a.      Except as otherwise specified herein, the Court adopts all defined terms set forth in the parties' Settlement Agreement, dated May __, 2018 (the "Agreement").

b.      The Court has jurisdiction over the subject matter of the above-captioned matter, the Named Plaintiff, Defendants HOME HEALTH CARE SERVICES OF NEW YORK INC. ("HCS") and AGNES SHEMIA (collectively, "Defendants") and all members of the Class, which consists of all individuals employed by HCS as home health aides from June 24, 2010 through May 1, 2018, excluding those persons who validly excluded themselves from the class.

c.      If, for any reason, this Agreement does not become Effective, the parties shall return to their respective positions in the Action as those positions existed immediately before execution of the Agreement.

d.      The Court finds that the distribution by first-class mail of the Notice of Settlement and newspaper publication constituted the best notice practicable and fully met the requirements of due process under the United States Constitution, applicable state law, Federal Rule of Civil Procedure 23, and the Fair Labor Standards Act Based on evidence and other material submitted in conjunction with the Fairness Hearing, the actual notice to Class was adequate.  These papers informed class members of the terms of the Settlement, their right to object to the Settlement, or to elect not to participate in the Settlement and pursue their own remedies, and their right to appear at the Fairness Hearing and be heard regarding approval of the Settlement.  Adequate periods of time were provided by each of these procedures.  No Class Members objected to the Settlement and no Class Members have validly requested exclusion**.[To be modified as necessary]**

e.      The Court finds, for purposes of settlement only, that the class satisfies the applicable standards for certification under Federal Rules of Civil Procedure 23.

Accordingly, solely for purposes of effectuating this Settlement, this Court has certified the Class, as that term is defined above. Because the Rule 23 class is being certified here for settlement purposes only, the Court need not (and does not) address the manageability requirement of Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

f.   The Court approves the Settlement, and each of the releases and other terms set forth in the Agreement, as fair, just, reasonable, and adequate as to the Class, the Named Plaintiff, and Defendants (collectively "Settling Parties") under all applicable law, including but not limited to, Federal Rule of Civil Procedure 23 the Fair Labor Standards Act, and the New York Labor Law  The Settling Parties and the Settlement Administrator are directed to perform in accordance with the terms set forth in the Agreement.

g.   The Court finds that the plan of allocation set forth in the Agreement is fair and reasonable and that distribution of the Net Settlement Fund Settlement to Class Members shall be done in accordance with the terms outlined in the Agreement.

h.   The Court hereby orders the appointment of ALLISON HYPOLITE as Class Representative for the Class for purposes of settlement.

i.   The Court hereby orders the appointment of William Coudert Rand, Law Office of William Coudert Rand as Class Counsel for the Class for purposes of Settlement and the releases and other obligations therein.

j.   HCS has agreed to pay to Class Counsel his reasonable attorneys' fees in the amount of $1,200,000, costs and expenses in the total amount of $10,000.00, and a Service Award the Class Representative in the amount of $5,000.00. Accordingly, the Court hereby awards to Class Counsel $1,200,000 for attorneys' fees and $10,000.00 for costs and expenses. The Service Award to the Class Representative is approved for her service to the Class, including direct

participation in Class Counsels' fact investigation and the settlement negotiations. Defendants are directed to make all of the foregoing payments to Class Counsel and the Class Representatives and the Class Members in accordance with the terms of the Agreement.  Defendants shall not be required to make any additional payments in connection with the Settlement.

k.      By operation of entry of this Order and Final Judgment, all Released Claims are fully, finally, and forever released, relinquished, and discharged pursuant to the terms of the Agreement as to all Class Members, except those who have timely and validly opted-out or to whom Defendants have granted an exclusion.  The Court permanently enjoins all Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, except those Class Members who have timely and validly opted-out or to whom Defendants have granted an exclusion.

l.       The Defendants entered into this Agreement solely for the purpose of compromising and settling disputed claims.  Defendants in no way admit any liability, and all liability is expressly denied.

m.      This action is hereby dismissed on the merits and with prejudice.  The action is closed.  The Court retains exclusive jurisdiction, to the extent necessary, to resolve any disputes under the Agreement or to effectuate the terms of the Agreement.

n.      This document shall constitute a final judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.


IT IS SO ORDERED.

Dated: _____, 2012

                                              _____

                                              The Honorable
                                              United States District Judge

**Exhibit "E"**

**Allocation of Settlement Funds and List of Minimum Settlement Amount To be Paid Each Class Member**

The Claims Administrator will divide the Net Settlement Amount among five claims:

1. 40% of the Net Settlement Amount will be allocated to the claims related to the loss of the federal companionship exemption under the FLSA (the "First Claim Allocation");

2. 30% of the Net Settlement Amount will be allocated to the claims related to the alleged unpaid hours for 24-hour, or "live-in," shifts (the "Second Claim Allocation");

3. 10% of the Net Settlement Amount will be allocated to the claims related to the alleged failure to provide Wage Theft Protection Act-compliant new-hire notices and pay statements (the "Third Claim Allocation");

4. 10% of the Net Settlement Amount will be allocated to the claims related to the alleged failure to provide all amounts and/or benefits required under the Wage Parity Law (the "Fourth Claim Allocation"); and

5. 10% of the Net Settlement Amount will be allocated to the claims for other unpaid wages, including minimum wage, travel time, and spreads-of-hours pay (the "Fifth Claim Allocation").

The Claims Administrator will then determine each Class Member's share, if any, of the First Claim Allocation, Second Claim Allocation, Third Claim Allocation, Fourth Claim Allocation, and/or Fifth Claim Allocation as follows:

1. Each Class Member's share of the First Claim Allocation, if any, will be determined by dividing the total number of overtime hours the Class Member worked as a home health aide for HCS from January 1, 2015 through October 13, 2015, by the total number of overtime hours all Class Members worked as home health aides for HCS from January 1, 2015 through October 13, 2015, and then multiplying this quotient by the amount of the First Claim Allocation (the result being the "First Claim Share");

2. Each Class Member's share of the Second Claim Allocation, if any, will be determined by dividing the total number of "live-in" cases worked by the Class Member as a home health aide for HCS during the Class Period, by the total number of "live-in" cases worked by all Class Members as home health aides for HCS during the Class Period, and then multiplying

this quotient by the amount of the Second Claim Allocation (the result being the "Second Claim Share");

3.  Each Class Member's share of the Third Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for HCS from April 9, 2011 through the last day of the Class Period, by the total number of weeks worked by all Class Members as home health aides for HCS from April 9, 2011 through the end of the Class Period, and then multiplying this quotient by the amount of the Third Claim Allocation (the result being the "Third Claim Share");

4.  Each Class Member's share of the Fourth Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for HCS from March 1, 2012 through the end of the Class Period, by the total number of weeks worked by all Class Members as home health aides for HCS from March 1, 2012 through the end of the Class Period, and then multiplying this quotient by the amount of the Fourth Claim Allocation (the result being the "Fourth Claim Share"); and

5.  Each Class Member's share of the Fifth Claim Allocation, if any, will be determined by dividing the total number of weeks worked by the Class Member as a home health aide for HCS during the Class Period, by the total number of weeks worked by all Class Members as home health aides for HCS during the Class Period, and then multiplying this quotient by the amount of the Fifth Claim Allocation (the result being the "Fifth Claim Share").

The Claims Administrator will then determine each Class Member's "Percentage Allocation Number" by (a) summing that Class Member's First Claim Share, Second Claim Share, Third Claim Share, Fourth Claim Share, and Fifth Claim Share (if any), (b) summing all Class Members' First Claim Shares, Second Claim Shares, Third Claim Shares, Fourth Claim Shares, and Fifth Claim Shares, and (c) dividing the sum calculated in clause (a) by the sum calculated in clause (b). Each Class Member's Percentage Allocation Number will be expressed as a percentage.

17304884v4